UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
EDREWEENE RAYMOND, ADHYL POLANCO,
PEDRO SERRANO, SANDY GONZALEZ,
RITCHIE BAEZ, JULIO DIAZ, FELICIA
WHITELY, ROMAN GORIS, DERICK WALLER,
KAREEM ABDULLAH, OLAYOKUN
OLAGOKE, and WIDMARC PIERRE, individually
and on behalf of a class of all others similarly
situated,

                    Plaintiffs,

       -v-                                           No. 15-CV-6885-LTS-HBP

THE CITY OF NEW YORK, MAYOR OF THE
CITY OF NEW YORK BILL DE BLASIO, in his
individual and official capacity, FORMER POLICE
COMMISSIONER WILLIAM J. BRATTON, in his
individual capacity, POLICE
COMMISSIONER JAMES P. O'NEILL, in
his individual and official capacity, NYPD CHIEF
OF DEPARTMENT CARLOS GOMEZ,
in his individual and official capacity, and
BUREAU CHIEF NYPD COMMANDING
OFFICER OF PATROL SERVICES TERENCE
MONAHAN, in his official capacity,[1]

                    Defendants.
--------------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiffs Edreweene Raymond ("Raymond"), Adhyl Polanco ("Polanco"), Pedro

---

[1]     In light of personnel changes that have occurred since the initiation of the above-captioned matter and the motion practice at issue in this Memorandum Opinion and Order, pursuant to Federal Rule of Civil Procedure 25(d), certain current office holders are substituted as official-capacity parties for the individuals who formerly held these positions within the New York City Police Department ("NYPD"). The former office holders continue to be reflected as individual-capacity defendants. The Clerk of Court is directed to amend the case caption accordingly.

Serrano ("Serrano"), Sandy Gonzalez ("Gonzalez"), Ritchie Baez ("Baez"), Julio Diaz ("Diaz"),

Felicia Whitely ("Whitely"), Roman Goris ("Goris"), Derick Waller ("Waller"), Kareem

Abdullah ("Abdullah"), Olayokun Olagoke ("Olagoke"), and Widmarc Pierre ("Pierre"),

(collectively, "Plaintiffs") bring this civil rights action, individually and on behalf of a class of

all others similarly situated, pursuant to New York Labor Law § 215-a; 42 U.S.C. §§ 1981, 1983,

1985, and 1986; New York Executive Law §§ 290, 296; New York City Local Law 59 of 1986

as amended by Local Rule 39 of 1991, § 8-207; and New York State Constitution Article 1, § 8,

against Defendants the City of New York ("the City"), Mayor of the City of New York Bill de

Blasio ("Mayor de Blasio"), Former Police Commissioner William J. Bratton ("Former

Commissioner Bratton"), Police Commissioner James P. O'Neill ("Commissioner O'Neill"),

NYPD Chief of Department Carlos M. Gomez ("Chief Gomez"), and Bureau Chief NYPD

Commanding Officer of Patrol Services Terence Monahan ("Chief Monahan"), (Mayor de

Blasio, Former Commissioner Bratton, Commissioner O'Neill, Chief Gomez, and Chief

Monahan are, together, referred to herein as the "Individual Defendants") (collectively,

"Defendants").  In a 17-count Amended Complaint, Plaintiffs claim that the NYPD maintains

illegal arrest and citation quotas that are focused disproportionately on areas in which minorities

reside, that minority officers are pressured to meet the quotas, and that minority officers suffer

adverse and retaliatory employment actions when they refuse to enforce or complain about the

quotas as discriminatory.  (Docket Entry No. 31.)  Defendants now move, pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss all of Plaintiffs' claims against them.

(Docket Entry Nos. 32 and 48.)

       The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, and

1367.

The Court has considered the parties' submissions carefully.  For the following reasons, Defendants' motion is granted and the Amended Complaint is dismissed.  Plaintiffs may make a motion for leave to replead the claims and requests for relief asserted in their Second, Fourth, Fifth, Sixth, Eighth, Tenth, Twelfth, Fourteenth, and Seventeenth Causes of Action.  Any such motion must be filed by **March 27, 2017,** and must be accompanied by a proposed Second Amended Complaint and a memorandum of law.  Failure to make such a timely motion, or denial of the motion as futile, may result in dismissal of the Amended Complaint in its entirety, without further advance notice.

BACKGROUND

The following facts are alleged in the Amended Complaint or drawn from documents annexed thereto.  Plaintiffs are Latino and African-American police officers employed by the NYPD[2] who allege that, as a result of the imposition of illegal quotas and illegal penalties by Defendants that have had disparate effects on Latino and African-American police officers, they have been subject to negative employment actions including negative evaluations; lost compensation, overtime, and vacation days earned; punitive postings and punitive transfers; denial of upgrades, promotions, overtime, and accrued time earned; and discrimination in their employment on the basis of race and national origin.  (Am. Compl. ¶ 2.)

---

[2]    As police officers employed by the NYPD, Plaintiffs are members of the Patrolmen's Benevolent Association (the "Union") and are subject to a collective bargaining agreement.  See Collective Bargaining Agreements between the City of New York and the Union, available at https://www1.nyc.gov/assets/olr/downloads/pdf/collectivebargaining/cbu79-police-patrolmens-benevolent-association-080106-to-073110.pdf (last accessed Feb. 12, 2017) and http://www1.nyc.gov/assets/olr/downloads/pdf/collectivebargaining/2010-2012-PBA-NYC-Impasse-Award.pdf (last accessed Mar. 6, 2017); see also Pls. Opp. Br., Docket Entry No. 38, at 25.

Plaintiffs and the prospective class members allege they "are disproportionately affected by the imposition of illegal quotas and the punitive consequences of the failure to meet the quotas, as opposed to white police officers, because" Plaintiffs, as "minorities working in neighborhoods dominated by minority residents, are unwilling to perform racially discriminatory and unwarranted enforcement actions against the minority community," leading to a "racially unfair and unreasonable performance evaluation system and unfair and unwarranted disciplinary actions and penalties to which the [P]laintiffs are subjected and to which white police officers are not subjected." (Id. at ¶ 23.)

The City is a municipal corporation and is the employer of the named Plaintiffs and the prospective class members, as well as the individually named Defendants. (Id. at ¶ 42.) In his capacity as mayor since January 2014, Defendant Mayor de Blasio "routinely met with the Police Commissioner[,] Deputy Police Commissioners[,] and other high-ranking members of the NYPD to set policy and make recommendations relating to the policies, administration, practices, customs[,] and procedure[s] of the NYPD and relating to the disciplinary system and implementation of penalties within the NYPD." (Id. at ¶ 44.) In his capacity as Commissioner, Bratton was the "principal administrator" of the NYPD, "responsible for the application of the NYPD's enforcement and administrative polic[i]es[,] including its internal investigatory and disciplinary process." (See id. at ¶ 45.)[3] As Chief of Department, O'Neill was "the highest

---

[3] The Court takes judicial notice that Defendant O'Neill is now the Commissioner of the NYPD, Defendant Bratton having resigned the post. At the time of Plaintiffs' pleading and Defendants' motion, Bratton was Police Commissioner. O'Neill succeeded him as Police Commissioner in September 2016. The case caption has been updated to reflect the names of the current officeholders named as official-capacity defendants and to retain Former Commissioner Bratton as a defendant in his individual capacity. See supra n. 1.

ranking non-civilian . . . uniformed police officer" and "in charge of all NYPD operations answering only to the Police Commissioner and the Mayor."[4]  (See id. at ¶ 46.)  As Chief of Patrol, Gomez was the "NYPD's commanding officer of patrol services," including the precincts, and "exercised supervisory control over the plaintiffs at all relevant times and participated in making and executing the policy and practices complained of herein."[5]  (See id. at ¶ 47.)  The Amended Complaint alleges that the Individual Defendants knew or should have known of the customs, practices, and policies described in the Amended Complaint, including but not limited to the maintenance of the illegal quota system by the NYPD and its racially discriminatory effect on the minority community and minority officers including the Plaintiffs and "condoned, ratified and/or authorized" such practices, policies, and conduct.  (See id. at ¶¶ 44-47.)

Plaintiffs allege that, "[o]ver the past decade" and through the present, "the NYPD has pursued an unofficial policy of directing, instructing, compelling and mandating its employees to perform a mandatory number of arrests, issue a mandatory number of summons or write a mandatory number of tickets," or quotas, "over a defined period of time," as a "performance standard" for employees, despite official statements that the NYPD does not maintain such quotas.  Id. at ¶ 3.  Promotion or job security in the NYPD is alleged to depend on

---

[4]     At the time of Plaintiffs' pleading and Defendants' motion, O'Neill was Chief of Department.  Gomez succeeded him as Chief of Department in September 2016, and the case caption has been updated to reflect the names of the current officeholders named as official-capacity defendants.  See supra n. 1.

[5]     At the time of Plaintiffs' pleading and Defendants' motion, Gomez was Chief of Patrol.  Monahan succeeded him as Chief of Patrol in September 2016, and the case caption has been updated to reflect the names of the current officeholders named as official-capacity defendants.  See supra n. 1.

"the number of arrests made or tickets issued" and, "[a]lthough the NYPD has continuously denied the existence of quotas and asserts that it relies only on a set of 'productivity goals,' or 'performance goals,' those phrases are [alleged to be] mere euphemisms for a quota system." Id. at ¶ 4.  Plaintiffs allege that the performance evaluation system "is not evenly applied to all precin[c]ts depending on the location of the precin[c]t," and despite the system's being "neutral on its face," it "is un[]evenly applied in that minority officers are more likely to be charged, investigated and receive more punishment[] than their white counterparts for the same alleged offenses." Id. at ¶¶ 25-26.

First Amendment retaliation claims are asserted on behalf of certain of the individual Plaintiffs, who allege that they filed numerous formal and informal complaints and have spoken publicly about the alleged imposition of illegal quotas.  In some instances, Plaintiffs identify years or settings in which they complained about the alleged illegal quotas internally or to the public, or testified in litigations regarding "stop-and-frisks," but Plaintiffs are not specific about the allegedly retaliatory acts that occurred or when they occurred in relation to the Plaintiffs' alleged complaints.  (See e.g., id. at ¶¶ 48-51 (alleging that Raymond "complained to his superiors about" the quota "after seven months on the job," after joining the force in 2008, was transferred out of a certain unit in 2012, and has been, at unspecified times, "penalized by punitive postings, low performance evaluations, denial of upgrades and promotions, denial of overtime, and denial of time off").)

DISCUSSION

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' Amended Complaint in its entirety for failure to state a claim upon which

relief can be granted.  (<u>See</u> Docket Entry Nos. 32, 48.)  In determining whether a plaintiff has set

forth the "short and plain statement of the claim showing that [she is] entitled to relief" required

by the Federal Rules (<u>see</u> Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in

the complaint establish the "facial plausibility" of the plaintiff's claims.  <u>Ashcroft v. Iqbal</u>, 556

U.S. 662, 678-79 (2009).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

556 (2007)).  Such a showing "must be enough to raise a right to relief above the speculative

level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of

a cause of action."  <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks omitted).  In deciding a

Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the

complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  <u>See</u>

<u>Harris v. Mills</u>, 572 F.3d 66, 71 (2d Cir. 2009).

"In adjudicating a motion to dismiss, a court may consider only the complaint,

any written instrument attached to the complaint as an exhibit, any statements or documents

incorporated in it by reference, and any document upon which the complaint heavily relies."

<u>Geron v. Seyfarth Shaw LLP (In re Thelen LLP)</u>, 736 F.3d 213, 219 (2d Cir. 2013) (citing

<u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153-54 (2d Cir. 2002)).

*New York Labor Law § 215-a (First and Sixteenth Causes of Action)*

Plaintiffs seek damages and declaratory relief for Defendants' alleged

maintenance of quotas, and imposition of discipline for violating such quotas, in violation of

New York Labor Law § 215-a.  (Am. Compl. ¶¶ 92-96.)  Defendants seek dismissal of this

claim, asserting that the Court lacks subject matter jurisdiction because Plaintiffs failed to
exhaust their administrative remedies, and that there is no private right of action under the
statute.

New York Labor Law § 215-a(1) provides, in relevant part:

> No employer or his or her duly authorized agent shall transfer or in
> any other manner penalize or threaten, expressly or impliedly, an
> employee who is a police officer as to his or her employment in a
> manner, including, but not limited to, a reassignment, a scheduling
> change, an adverse evaluation, a constructive dismissal, the denial
> of a promotion, or the denial of overtime based in whole or in part
> on such employee's failure to meet a quota, established by his or
> her employer or his or her duly authorized agent, of (a) tickets or
> summonses issued within a specified period of time of provisions
> of law for which a ticket or summons is authorized by any general,
> special or local law; or (b) arrests made within a specified period
> of time for violations of provisions of law for which such arrest is
> authorized by any general, special or local law; or (c) stops of
> individuals suspected of criminal activity within a specified period
> of time. Any employee so transferred or otherwise penalized may
> cause to be instituted a grievance proceeding pursuant to the
> provisions of a collective bargaining agreement, if any, or pursuant
> to the provisions of section seventy-five-a of the civil service law
> if no collective bargaining agreement exists. . . .

Plaintiffs do not allege that they have instituted grievance proceedings regarding
the alleged violations, and they concede that the statute does not provide expressly for a private
right of action.  (See Pls. Opp. Br., at 25.)  Plaintiffs acknowledge that their union, "on behalf of
all police officers, entered into a Collective Bargaining Agreement containing a grievance and
arbitration procedure."  Id.  Plaintiffs also concede that "[o]rdinarily, this would be the end of the
discussion pursuant to Healy v. City of New York Department of Sanitation, 04-CV-7344, 2006
U.S. Dist. LEXIS 86344 (S.D.N.Y. 2006), and other cases cited by [] [D]efendant[s]," because
plaintiffs covered by a grievance procedure "may not seek judicial relief prior to filing a
grievance and exhausting all administrative remedies."  Id.  Plaintiffs nonetheless argue that the

Court should "imply a private right of action" as "the only reasonable way to achieve the stated purpose of Section 215-a," because the provision is "being grossly and wantonly violated by [D]efendants on a daily basis and the grievance procedures available to individual police officers have proven wholly inadequate as a means to remedy those violations." Id.

"In New York, when a statute does not provide an express private right of action, a court must consider three factors in implying one: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." Hollins v. City of New York, 2014 WL 836950, at *12 (S.D.N.Y. Mar. 3, 2014) (internal quotation marks and citation omitted). Assuming the truth of the facts asserted in the Amended Complaint and drawing all reasonable inferences from those facts in favor of Plaintiffs, it is clear that Plaintiffs are members of the class for whose particular benefit the statute was enacted–police officers at risk of being transferred or penalized for failure to meet a quota. By providing for use of a grievance procedure in the text of the statute, however, the legislature indicated an intention that alleged violations of Section 215-a involving union-represented personnel should be addressed, at least in the first instance, in the collective bargaining context, not by courts in direct private actions. Implication of a private right of action, circumventing the statutorily prescribed collective bargaining grievance procedure, would neither promote the legislative purpose nor be consistent with the legislative scheme. Consideration of the Hollins factors thus does not counsel in favor of implying a private right of action.

As Section 215-a does not provide for a private right of action and Plaintiffs have not identified any other proper basis for adjudication by this court of Defendants' compliance

with the provisions of Section 215-a, Plaintiffs' First and Sixteenth Causes of Action will be dismissed.

*42 U.S.C. § 1981 – Civil Rights Act of 1866 (Second Cause of Action)*

Plaintiffs allege that Defendants are liable for depriving Plaintiffs and prospective class members of their civil rights, including the rights and benefits of their employment contractual relationship with the NYPD, on the basis of their race, color, and/or national origin in violation of the Civil Rights Act of 1866, 42 U.S.C § 1981.  (Am. Compl. ¶¶ 97-108.) Defendants assert that the Amended Complaint fails to state a claim for employment discrimination because Plaintiffs fail to plausibly allege purposeful race or national origin discrimination.  (See Def. Opening Br. at 5-11.)

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C.S. § 1981(a) (LexisNexis 2009).  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C.S. § 1981(b) (LexisNexis 2009). Section 1981's protections apply to employment relationships.  See Patterson v. Cty. of Oneida, 375 F.3d 206, 224 (2d Cir. 2004).  However, "[w]hen the defendant is a state actor, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981 . . . [t]hus, claims against . . . [i]ndividual [d]efendants in their official capacity or against the City, must be brought under Section 1983."  Bermudez v. City of New York, 783 F. Supp. 2d 560, 576

(S.D.N.Y. 2011) (citing <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701 (1989)) (additional

citations omitted).  To the extent the Individual Defendants are sued in their individual

capacities, the claims involve official action taken under color of state law and thus are also

properly considered under Section 1983.  The Court, accordingly, deems Plaintiffs' Second

Cause of Action to be an Equal Protection Clause claim brought pursuant to Section 1983.[6]

      "Although 'an employment discrimination plaintiff need not plead a prima facie

case of discrimination' in order to survive a motion to dismiss," a plaintiff "must allege

sufficient facts showing that she is entitled to relief."  <u>Bermudez</u>, 783 F. Supp. 2d at 575

(quoting <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 515 (2002)).  "Purposeful discrimination

requires more than intent as volition or intent as awareness of consequences; it involves a

decisionmaker's undertaking a course of action because of, not merely in spite of, the action's

adverse effects upon an identifiable group."  <u>Iqbal</u>, 556 U.S. at 663 (internal quotation marks,

brackets, and citation omitted).

      The Amended Complaint does not allege that Defendants acted in a purposefully

discriminatory manner.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 663.  Plaintiffs allege that the performance

evaluation system is unevenly applied to all precincts, depending on the precinct's location, and

that, despite the system being "neutral on its face," it is unevenly applied to minority officers,

who are more likely to be charged, investigated, and punished than their white counterparts for

---

[6]     Plaintiffs appear to agree with this reading of their claims.  Despite the fact that
the Amended Complaint does not expressly include a cause of action for an Equal
Protection Clause claim brought pursuant to Section 1983, Plaintiffs argue in their
opposition brief that the Amended Complaint does indeed state a claim for
employment discrimination under the Equal Protection Clause, and rely on
Section 1983 doctrine and the <u>McDonnell Douglas</u> line of cases, in support of
their argument.  (<u>See</u> Pls. Opp. Br., at 9-22.)

the same alleged offenses.  <u>See</u> Am. Compl. at ¶ ¶ 25-26.  Such generalized disparate impact

allegations are insufficient to plead the intentional discrimination that is an essential element of

claims pursuant to Section 1983.  To the extent Plaintiffs intend to assert a claim for intentional

retaliation for complaints of discriminatory discipline, the Amended Complaint fails for the

same reason.  Plaintiffs' conclusory allegations that the Defendants' actions were "willful and

malicious" and "reckless and intentional" are mere formulaic recitations and thus fail to meet the

requirement of plausible factual pleading established by <u>Twombly</u> and <u>Iqbal</u>.

   In their opposition papers, Plaintiffs proffer arguments based on expert reports

and testimony from other lawsuits.  These materials are neither referenced in nor integral to the

Amended Complaint and thus cannot be considered in assessing the sufficiency of the current

pleading.  Plaintiffs will, however, be given an opportunity to propose a further amended

complaint.

   The Amended Complaint is also insufficient because the named Individual

Defendants, all of whom work in supervisory capacities, are not alleged to have been involved

personally in the alleged violations or to have personally approved or authorized the challenged

actions.  "[U]nder Section 1983 and Section 1981 supervisors can be sued individually, without

directly participating in the underlying conduct, only if they promulgated unconstitutional

policies or plans under which action occurred, or otherwise authorized or approved challenged

misconduct. . . . [t]o lay a proper foundation for individual liability, the plaintiff must plead

specific, nonconclusory factual allegations to establish the participation at the necessary mental

state of the individual defendants, or [plaintiffs'] claims against them will be dismissed."

<u>Bermudez</u>, 783 F. Supp. 2d at 602 (citations and quotation marks omitted).  The Individual

Defendants may be "sued individually, without directly participating in the underlying conduct,

only if they promulgated unconstitutional policies or plans under which action occurred, or

otherwise authorized or approved challenged misconduct[,]" and to properly lay a foundation for

such "individual liability, [Plaintiffs] must plead specific, nonconclusory factual allegations to

establish the participation at the necessary mental state of the individual defendants." See id. at

602.

        Insofar as Plaintiffs seek to hold the Individual Defendants liable in their personal

capacities, the Amended Complaint fails to state a claim because Plaintiffs have not proffered

nonconclusory allegations indicative of personal involvement by the Individual Defendants in

the alleged violations of Plaintiffs' rights, nor have Plaintiffs established that the Individual

Defendants devised, promulgated, authorized or approved the alleged intentionally

discriminatory disciplinary practices and policies.  Plaintiffs' allegations that the Individual

Defendants knew "or should have known of the customs, practices, and policies described in [the

Amended] [C]omplaint," including the "the maintenance of the illegal quota system by the

NYPD and its racially discriminatory effect on the minority community and minority officers

including the [P]laintiffs" and "condoned, ratified and/or authorized such practices and policies,"

see Am. Compl. at ¶ ¶ 44-47, are insufficient to allege plausibly the Individual Defendants'

"participation at the necessary mental state."  See Bermudez, 783 F. Supp. at 602.

        Plaintiffs' Second Cause of Action will, accordingly, be dismissed, with an

opportunity to propose a further amended complaint that includes a Section 1983 claim.

*Conspiracy to Deny Plaintiffs of Rights in Violation of 42 U.S.C. §§ 1985, 1986 (Third Cause of Action)*

        Plaintiffs allege that Defendants are engaged in a conspiracy to deny Plaintiffs

and members of their class the rights, privileges and immunities, and equal protection of the laws to which they are entitled under the Constitution and laws of the United States in violation of 42 U.S.C. § 1985, and that all of the Individual Defendants, as public officials, had notice of that conspiracy and their failure and/or refusal to prevent, prohibit and/or ameliorate the conspiracy constitutes a violation of 42 U.S.C. § 1986.  (Am. Compl. ¶ ¶ 109-14.)  Defendants move to dismiss the claims, arguing that (1) the Amended Complaint fails to state a claim under Section 1985 or Section 1986, because the Plaintiffs fail to plead a conspiracy claim adequately under Section 1985(3) and the intracorporate conspiracy doctrine immunizes the Defendants from suit; and (2) because they did not address Defendants' arguments in their opening brief regarding these claims, Plaintiffs have abandoned them.  (See Def. Opening Br. at 11-15; Def. Reply Br. at 8-9.)

Section 1986 creates a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [Section 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed."  42 U.S.C.S. § 1986 (LexisNexis 2009).  In determining whether the City may be held liable under Section 1986, the Court must look to whether Plaintiffs have properly set forth a Section 1985 claim, because the existence of an unlawful conspiracy and subsequent commission of a "wrongful act," as described in Section 1985, are necessary conditions precedent to a Section 1986 action.  See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 419 (2d Cir. 1999) ("[N]o § 1986 claim will lie where there is no valid § 1985 claim.") (citing Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994)).

"The intracorporate conspiracy doctrine posits that the officers, agents, and

employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." Dunlop v. City of New York, 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008) (quotation marks and citation omitted).  At least one court in this district has ruled that "[i]t is beyond doubt that" NYPD individual defendants, including the Commissioner, Chief, and various deputy chiefs, "are all employees of a single municipal entity–the City, and, more narrowly, the NYPD–and, therefore, are legally incapable of conspiring with each other." Id. (citation omitted).  Furthermore, "it is well-settled that the doctrine bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single municipal entity," including the City as an entity and the Mayor, "at least where the complaint fails to allege that the various entities were effectively acting as separate entities in carrying out the alleged conspiracy." Id. (citations omitted).  Thus, the intracorporate conspiracy doctrine applies when a complaint "clearly depict[s]" a conspiracy "as the product of a single corporation acting exclusively through its own directors, officers, and employees." Id. at *10 (quotation marks and citation omitted).  There is an exception to the doctrine, however, if the plaintiff sufficiently alleges "that the individual defendants were motivated by an independent personal stake in achieving the corporation's objective rather than merely carrying out the corporation's managerial policy." Id. (internal quotation marks, citations, and brackets omitted).

Here, "[i]t is beyond doubt that" the Individual Defendants "are all employees of a single municipal entity–the City . . . and, therefore, are legally incapable of conspiring with each other." See id. at *9.  Plaintiffs do not allege that the City, the Mayor, and the other Individual Defendants "were effectively acting as separate entities in carrying out the alleged conspiracy." See id.  Thus, the intracorporate conspiracy doctrine bars Plaintiffs' conspiracy

claim, which alleges concerted action by the Defendants, all of whom are either employees

"within a single municipal entity" or the entity itself.  See id.  The Amended Complaint "clearly

depicts" the alleged conspiracy "as the product of a single corporation acting exclusively through

its own directors, officers, and employees."  See id. at *10; see also Am. Compl. ¶¶ 3, 18-20.

Nor have Plaintiffs sufficiently alleged that the Individual Defendants "were motivated by an

independent personal stake in achieving the corporation's objective rather than merely carrying

out the corporation's managerial policy."  Donlop, 2008 WL 1970002, at *10.  The

intracorporate conspiracy doctrine thus bars Plaintiffs' Sections 1985 and 1986 claim.

   Moreover, in their opposition papers to Defendants' initial motion, Plaintiffs

failed to respond to Defendants' Sections 1985 and 1986 arguments.  When a plaintiff fails to

respond to arguments regarding liability when challenging a motion to dismiss, a plaintiff is

deemed to have "effectively abandoned" the claims, and the claims may be "dismissed as a

matter of law."  See Bonilla v. Smithfield Assocs. LLC, 2009 WL 4457304, at *4 (S.D.N.Y.

Dec. 4, 2009).  Plaintiffs' Sections 1985 and 1986 claims are deemed to have been abandoned

and are dismissed.


*New York State and New York City Human Rights Laws (Fourth and Fifth Causes of Action)*

   Plaintiffs assert claims under the New York State and New York City Human

Rights laws that parallel their Section 1981 and 1983 claims.  For substantially the reasons

explained above in connection with Count Two, the Amended Complaint fails to state causes of

action under these anti-discrimination laws.  Plaintiffs will be given the opportunity to move to

replead these claims.

*First Amendment Retaliation Claims by Plaintiffs Raymond, Polanco, Serrano, Waller, and Gonzalez (Sixth, Eighth, Tenth, Twelfth, and Fourteenth Causes of Action)*

Plaintiffs allege that Defendants retaliated against individual Plaintiffs Raymond, Polanco, Serrano, Waller, and Gonzalez for internal and certain external complaints regarding the allegedly discriminatory quota and discipline policies by imposing discriminatory employment measures on them, thereby violating these Plaintiffs' rights under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.  Defendants seek to dismiss these claims for failure to allege plausibly causal relationships between the alleged complaints and the allegedly unfair discipline and, as to the claims against the Defendants in their individual capacities, on the basis of qualified immunity.  In their opposition papers, Plaintiffs proffer additional facts and request leave to augment their pleading.

Plaintiffs, who for the most part failed in the Amended Complaint to specify the nature and timing of the alleged complaints and allegedly retaliatory discipline and have not pleaded facts demonstrating the personal involvement of the Individual Defendants, will be given leave to move to replead these First Amendment claims in a further amended complaint. Because Plaintiffs have not yet framed these claims sufficiently, the issue of qualified immunity is premature and will not be addressed at this juncture.

*New York State Constitution Article 1, § 8 Free Speech Retaliation Claims by Plaintiffs Raymond, Polanco, Serrano, Waller, and Gonzalez (Seventh, Ninth, Eleventh, Thirteenth, Fifteenth Causes of Action)*

Plaintiffs assert that, in retaliating against individual Plaintiffs Raymond, Polanco, Serrano, Waller, and Gonzalez for complaining about the alleged quotas and discriminatory discipline, Defendants also violated Article 1, § 8 of the New York State

Constitution.  Defendants assert that these claims should be dismissed because these claims mirror the First Amendment claims that Plaintiffs brought under Section 1983.  (Def. Opening Br. at 22.)  Defendants' point is well taken.

"[I]t is a common view among District Courts in this Circuit that there is no right of action under the New York State Constitution for claims that can be brought under § 1983." Dava v. City of New York, 2016 U.S. Dist. LEXIS 115639, at *30-31 (S.D.N.Y. Aug. 29, 2016) (quotation marks and ellipses omitted) (citing Gounden v. City of New York, 2015 WL 5793625, at *5 n. 3 (E.D.N.Y. Oct. 2, 2015); Flores v. City of Mount Vernon, 41 F. Supp. 2d 439 (S.D.N.Y.1999); and Sherman v. Town of Chester, 2015 WL 1473430, at *14 (S.D.N.Y. Mar. 31, 2015)).  "'New York courts will only imply a private right of action under the state constitution where no alternative remedy is available to the plaintiff.'"  Davis v. City of New York, 959 F. Supp. 2d 324, 368 (S.D.N.Y. 2013) (quoting Felmine v. City of New York, 2012 WL 1999863, at *6 (E.D.N.Y. June 4, 2012)).

Because Plaintiffs are asserting First Amendment retaliation claims pursuant to Section 1983, their state constitutional claims are superfluous and will be dismissed.

*Claim for Injunctive Relief (Cause of Action Seventeen)*

Plaintiffs have asserted a claim for preliminary and permanent injunctive relief barring the City and the NYPD from using arrest or summons statistics as evaluation tools, without specifying the substantive legal or factual basis of this claim for relief.  "A party seeking a preliminary injunction must either show that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest; or he may show irreparable harm

and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." ACLU v. Clapper, 785 F.3d 787, 825 (2d Cir. 2015) (internal citation and quotation marks omitted).  To obtain a permanent injunction, a party seeking such relief must demonstrate, among other things, that "'it has suffered an irreparable injury'." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 160-61 (2d Cir. 2012) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).  Plaintiffs have neither tied this claim for injunctive relief to a sufficient claim on the merits nor pleaded facts indicative of a prospect of irreparable harm.  The Seventeenth Cause of Action will be dismissed, without prejudice to the inclusion of requests for injunctive relief in a proposed Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is granted.  Plaintiffs may make a motion for leave to replead the claims and requests for relief asserted in their Second, Fourth, Fifth, Sixth, Eighth, Tenth, Twelfth, Fourteenth, and Seventeenth Causes of Action.  Any such motion must be filed by **March 27, 2017,** and must be accompanied by a proposed Second Amended Complaint and a memorandum of law.  Failure to

make such a timely motion, or denial of the motion as futile, may result in dismissal of the

Amended Complaint in its entirety, without further advance notice.

This Memorandum Opinion and Order resolves Docket Entry Nos. 32 and 48.

SO ORDERED.

Dated: New York, New York
       March 6, 2017

_/s/  Laura Taylor Swain_
LAURA TAYLOR SWAIN
United States District Judge