# EXHIBIT "B"



**THE CITY OF NEW YORK**

**LAW DEPARTMENT**

ZACHARY W. CARTER
*Corporation Counsel*

100 CHURCH STREET
NEW YORK, NY 10007

YUVAL RUBINSTEIN
Phone: (212) 356-2467
Fax: (212) 356-2439
Email: yrubinst@law.nyc.gov

June 7, 2019

<u>**Via ECF**</u>
Honorable Henry B. Pitman
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>Raymond v. City of New York, et al.</u>
              No. 15-cv-006885 (LTS)(HBP)

Dear Judge Pitman:

        I am the Assistant Corporation Counsel in the Office of Zachary W. Carter, Corporation Counsel for the City of New York, assigned to represent the defendants in the above-captioned action. Defendants respectfully submit this opposition to plaintiffs' June 2, 2019 pre-motion conference letter concerning plaintiffs' anticipated motion to compel discovery. Dkt. 117.[1]

**A.**    **Plaintiffs' Proposed Email Search Terms Are Unreasonable**

        The parties have a fundamental disagreement regarding email search terms, as plaintiffs note in their pre-motion letter. Plaintiffs insist that the only search term to be applied is the plaintiff's last name. For example, plaintiff Raymond demands all emails between January 2012 and January 2016 with the word "Raymond" that the individual defendants sent or received. Defendants sent plaintiffs a letter on March 1, 2019 explaining why plaintiffs' position was unreasonable. **Exhibit A**, March 1, 2019 Letter. On March 8, defendants sent plaintiffs a

---

[1] Plaintiffs have also filed an accompanying letter requesting an extension of discovery from June 9, 2019 to November 9, 2019. Dkt. 116. Although defendants agreed in general to an extension of discovery, defendants never discussed a four-month extension with plaintiffs' counsel, and do not believe such a lengthy extension is justified. In addition, plaintiffs' representation that defendants will produce outstanding discovery "on or about June 10, 2019" is incorrect, as defendants never agreed to that specific date. However, defendants will produce outstanding discovery in their possession within a reasonable timeframe.

list of proposed search terms drawn from the allegations in the Second Amended Complaint. **Exhibit B**, March 8, 2019 Email.  Plaintiffs rejected defendants' proposed search terms.

Plaintiffs' adamant refusal to agree to *any* search terms beyond their last names is patently unreasonable.  *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006)(criticizing plaintiffs for refusing to utilize search terms for ESI).  It appears that plaintiffs' inflexibility is based on a fundamental misunderstanding of how search terms are used. Plaintiffs complained in an April 5, 2019 letter that the "obvious problem" is that defendants' search terms must "immediately follow" the plaintiff's name, which "will leave out a lot of discoverable emails."  **Exhibit C**, April 5, 2019 Letter.  This assertion is plainly incorrect, as "proximity searches" are commonly used to obtain responsive ESI.  *See Prasad v. George Wash. Univ.*, 323 F.R.D. 88, 93 (D.D.C. 2017)(defendant searched for variations of plaintiff's name within 30 words of search terms).  In sum, the Court should reject plaintiffs' unreasonable and overly broad email search terms that misapprehend how ESI searches are conducted.

**B.      Plaintiffs' Request For An Adverse Inference Instruction Is Baseless**

Plaintiffs request an adverse inference instruction based upon the purported spoliation of plaintiff Serrano's February 7, 2013 memo book, as well as text messages that defendants McCormack and Tsachas supposedly sent concerning the plaintiffs.  With respect to the text messages, plaintiffs are flagrantly disregarding the meet-and-confer requirement imposed by Federal Rule of Civil Procedure 37(a)(1).  On May 28, 2019, plaintiffs served a document request in order to obtain telephone records from the NYPD's provider.  **Exhibit D**, May 28, 2019 Document Request.  Yet *at the very same time*, plaintiffs ask this Court for an adverse inference instruction.  Plaintiffs' service of a document request coupled with a simultaneous request for discovery sanctions is completely inappropriate.  Because plaintiffs have obviously failed to satisfy their meet-and-confer obligation, their request for sanctions should be denied.  *See Myers v. Andzel*, No. 06-14420 (RWS), 2007 U.S. Dist. LEXIS 79157, at *3 (S.D.N.Y. Oct. 11, 2007)(denying motion to compel for failure to satisfy meet-and-confer requirement).  Plaintiffs have also failed to present any evidence that responsive text messages even existed, and plaintiffs' mere speculation is wholly insufficient. *See Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 569 (S.D.N.Y. 2013)(noting that "the spoliation doctrine is predicated on evidence actually existing and being destroyed" and rejecting plaintiff's assertion regarding loss of evidence as "pure speculation")(internal quotation marks and brackets omitted).

Serrano's request for spoliation sanctions with respect to his memo book is also baseless.  Serrano must establish that "(1) the party having control over the evidence…had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense."  *Rivera v. UPS*, 325 F.R.D. 542, 548 (S.D.N.Y. 2018)(internal quotation marks omitted).  Serrano bears the "burden of establishing the elements of a spoliation claim by a preponderance of the evidence."  *Dilworth v. Goldberg*, 3 F. Supp. 3d 198, 200 (S.D.N.Y. 2014).

Serrano's request fails at the first step.  "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."  *Fujitsu Ltd. v. Fed. Express*

*Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). This lawsuit was filed on August 31, 2015, more than two years after Serrano's memo book was signed on February 7, 2013. Serrano fails to satisfy his burden of proving that defendants misplaced the memo book, much less that defendants were on notice of this litigation when that occurred. Serrano has also failed to provide any evidence that defendants acted with a "culpable state of mind." Even assuming Serrano established culpability – which he has not – Serrano still fails to present any extrinsic evidence showing that the memo book entry was relevant to Serrano's discrimination and retaliation claims. *See In re Pfizer Inc.*, 288 F.R.D. 297, 315 (S.D.N.Y. 2013)(Pitman, J). Sanctions are also unwarranted because there is no evidence that Serrano was prejudiced. *Id.* at 316 ("a court should never impose spoliation sanctions of any sort unless there has been a showing – inferential or otherwise – that the movant has suffered prejudice")(internal quotation marks omitted). Serrano asserts that five supervisors signed his memo book on February 7, 2013. Second Amended Complaint, ¶110. Even without the memo book, Serrano's own testimony is sufficient should the jury credit his testimony. Accordingly, Serrano is not entitled to an adverse inference instruction.

## C. Plaintiffs Have Still Not Provided Any Compelling Justification For Deposing Commissioner O'Neill And Former Commissioner Bratton

Plaintiffs previously filed a motion seeking to compel the deposition testimony of Commissioner O'Neill and former Commissioner Bratton, which the Court denied without prejudice. Dkt. 112. Plaintiffs now renew their motion, claiming that defendants have not produced any paper discovery regarding the July 20, 2015 visit to the 40th Precinct. Yet plaintiffs are *again* misrepresenting the facts. Plaintiffs claim that defendants have not produced "roll call records, command log records, finest messages, and other documents relating to this event." Dkt. 117 at p. 2. This is incorrect. Defendants have provided three audits from 2015 looking into the classification of crimes in the 40th Precinct. During the parties' May 23, 2019 meet-and-confer discussion, defendants' counsel agreed to produce FINEST messages for July 2015. **Exhibit E**, May 24, 2019 Email, at p. 2.[2] Counsel also indicated that defendants would search for any additional documents that may exist relating to the misclassification of crimes in the 40th Precinct. In sum, plaintiffs' assertion that the depositions are necessary because no documents have been produced is both untrue and contravenes plaintiffs' meet-and-confer obligation under Rule 37(a)(1).

In addition, plaintiffs have again failed to satisfy the demanding standard set forth in *Lederman v. N.Y. City Dep't of Parks & Rec.*, 731 F.3d 199 (2d Cir. 2013). Plaintiffs' letter does not address defendants' previous argument that "plaintiffs can depose other NYPD officials or witnesses who were present at the July 2015 roll call." Dkt. 106 at p. 3. *See Murray v. County of Suffolk*, 212 F.R.D. 108, 110 (E.D.N.Y. 2002)(denying deposition of police commissioner because plaintiff failed to establish that "the information sought from [the

---

[2] Defendants have also produced the 40th Precinct's roll call for the first week of July 2015, which was 283 pages in length, as well as command logs from previous months in 2015. Based on the parties' May 23 discussion, it was unclear whether plaintiffs even sought the roll calls for all of July 2015, as indicated in the May 24 email.

commissioner] is not available from other sources in the…Police Department" through depositions).  In addition, plaintiffs fail to provide any compelling justification for diverting Commissioner O'Neill from his important duties to be deposed.  *Lederman*, 731 F.3d at 203. The Court should therefore deny plaintiffs' renewed motion to depose defendants Bratton and O'Neill.

Defendants thank the Court for its attention to this matter.

Respectfully submitted,

/s/

Yuval Rubinstein
Assistant Corporation Counsel

cc:    Emeka Nwokoro (via ECF)
       John A. Scola (via ECF)