UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDREWEENE RAYMOND, et al.,

                        Plaintiffs,

        against                                    CIVIL ACTION NO.: 15 Civ. 6885 (LTS) (SLC)

                                                   **OPINION & ORDER**

THE CITY OF NEW YORK, et al.,

                        Defendants.

**SARAH L. CAVE,** United States Magistrate Judge.

        Plaintiffs, Latino and African-American Police Officers, allege that their employer, the New

York City Police Department ("NYPD"), violated their rights and discriminated in their

employment based on their race and national origin. (ECF No. 87 ¶ 2). Plaintiffs seek

compensatory damages to redress the alleged deprivation of rights under the United States

Constitution, Federal, New York State, and New York City laws. (Id. ¶ 1).

        On March 5, 2020, the Court issued an Opinion & Order ruling on various motions to

compel and for sanctions (the "Opinion & Order"). (ECF No. 178). Among the rulings in the

Opinion & Order, the Court granted in part Plaintiffs' request for spoliation sanctions against

Defendants, holding that "Plaintiffs are entitled to an inference that there is a likelihood that the

destroyed Memo Book would have supported [Plaintiff Pedro] Serrano's claims of adverse

employment action and retaliation" (the "Adverse Inference"). (Id. at 33). Apparently

misperceiving the Opinion & Order as a Report and Recommendation, Defendants filed an

objection to the Adverse Inference pursuant to Federal Rule of Civil Procedure 72 (ECF No. 186

at 5). The Honorable Laura Taylor Swain construed Defendants' objection as a non-dispositive

motion for reconsideration (the "Motion") and referred the Motion to the undersigned. (ECF No. 189).

For the reasons set forth below, Defendants' Motion is DENIED and the Adverse Inference stands.

## I. BACKGROUND

### A. Factual Background

On June 1, 2012, Serrano made a written complaint to the Equal Employment Opportunity Commission (the "EEOC") alleging racial discrimination by Defendants Inspector Christopher McCormack and "Capt[ain] Materasso." (ECF No. 129 at 6–7). Captain Materasso and Defendant McCormack allegedly found out about Serrano's complaint at a meeting and retaliated against him. (Id. at 7). On February 1, 2013, Serrano filed a discrimination and retaliation charge with the EEOC and told the NYPD that he had "retained an attorney." (ECF No. 128 ¶¶ 2, 4). On February 7, 2013, allegedly as punishment, Serrano was "assigned to a solitary fixed foot post at 339 Exterior Avenue," off his usual patrol assignment, and during that night, five different supervisors went to his post to make sure he was there and to sign his Memo Book. (ECF No. 129 at 7). What the parties and the Court have referred to as the "Memo Book" in fact contains entries beyond the significant February 7, 2013 entry (the "February 7 Entry"). The Memo Book is numbered A928729 and contains entries for the period of December 12, 2012 to February 16, 2013. (ECF No. 128 at 2 ¶ 8). Serrano alleged that he wrote everything down in his memo books, including information regarding the quota, downgrading felonies, a hostile work environment, general corruption, and retaliations against him in the 40th Precinct. (Id. ¶¶ 9–18). On February 16, 2013, Serrano gave the Memo Book, and five other memo books, to "Integrity Control Officer

Gomez," and they were not returned. (Id.) Plaintiffs believe the Memo Book was "confiscated by the NYPD" at Corporation Counsel's request. (ECF No. 129 at 7–8; ECF No. 127-3 at 2).

On November 28, 2018, Plaintiffs requested a copy of the Memo Book. (ECF No. 129 at 7). Defendants first objected to the demand, then agreed to produce it, but later stated that they did not have it. (Id. at 7–8). Plaintiffs alleged that the daily contemporaneous records of Serrano's "assignments, posting, radio runs, activity, and occurrences" recorded in the Memo Book are relevant to Serrano's claims of "adverse employment action and retaliation." (Id. at 13).

B. **Procedural Background**

On June 2, 2019, Plaintiffs moved for a conference concerning matters including their anticipated motion for sanctions against the City for spoliation of evidence ("Plaintiffs' June 2019 Motion"). (ECF No. 117). Between July 21 and September 3, 2019, the parties briefed Plaintiffs' June 2019 Motion. (ECF Nos. 126–29, 132–33, 136).[1]

In Plaintiffs' June 2019 Motion, Plaintiffs asserted that Defendants were on notice to preserve the Memo Book as of February 7, 2013, as evidenced by "Corporation Counsel['s] request[] [for] Serrano's Memo Books and Monthly Activity Reports with a view to litigation," and again as of October 15, 2013, when "Serrano's memo books were confiscated at the request of Corporation Counsel." (ECF No. 129 at 8; ECF No. 127-3 at 2). Plaintiffs also pointed out that, even earlier, on August 3, 2012 and September 10, 2012, the EEOC had notified the City of New York (the "City") to preserve "all records relating to Serrano's claims of discrimination and

---

[1] As explained further below, of particular relevance to the Motion is Plaintiffs' September 3, 2019 reply to Defendants' opposition to Plaintiffs' June 2019 Motion ("Plaintiffs' September 2019 Reply Memorandum"). (ECF No. 136).

retaliation." (ECF No. 127 ¶¶ 7–8; ECF No. 127-5; ECF No. 127-6; ECF No. 129 at 8; ECF No. 157 at 9). Plaintiffs alleged that Defendants' failure to preserve the Memo Book equates to bad faith or gross negligence. (ECF No. 129 at 13). They argued for an inference that the "City acted with intent to deprive plaintiffs of" the Memo Book because due to 2012 EEOC notices to preserve documents related to Serrano's discrimination claim, the City was "very much aware of its duty to preserve" the Memo Book and secured it as of October 15, 2013 when the Memo Book was confiscated at Corporation Counsel's request. (ECF No. 136 at 9–10). Therefore, Plaintiffs contended, the City's failure to preserve and produce the Memo Book "raises an inference of intent to deprive." (Id. at 10). Plaintiffs sought an adverse inference sanction for spoliation of the Memo Book. (ECF No. 129 at 16).

Defendants argued in opposition to Plaintiffs' June 2019 Motion that a sanction should not be imposed absent a showing of prejudice, which Plaintiffs had not shown. (ECF No. 132 at 19). Defendants contended that they preserved the Memo Book through photographs, including the February 7, 2013 Entry, which Defendants' counsel produced on June 14, 2019. (Id.; ECF No. 133 ¶4; ECF No. 133-3; ECF No. 159 at 9). In addition, during Serrano's deposition, he testified about the February 7, 2013 Entry. (ECF No. 132 at 19–20). Therefore, Defendants claimed, even without the Memo Book, Serrano will be able to "testify at trial about the Memo Book's contents based on his personal knowledge." (Id.)

Plaintiffs replied that Serrano is prejudiced because photographs of the Memo Book are not the same as producing the Memo Book and the photographs omit large portions of the Memo Book. (ECF No. 136 at 8–9). Even though Serrano was able to testify without the Memo Book in front of him, he "is still prejudiced because the [Memo Book] would have served as a

contemporaneous record of the facts recorded, not subject to the vagaries of memory, corroborating the testimony of [] Serrano and rendering such testimony more credible to a trier of fact." (Id. at 9).

On October 2, 2019, the order of reference for general pretrial management of this action was reassigned to the undersigned. On November 25, 2019, the Court held a telephone conference with the parties to resolve outstanding discovery disputes, including those raised in raised in Plaintiffs' June 2019 Motion. (See ECF Nos. 142–43, 145–47, 149). On December 2, 2019, while Plaintiffs' June 2019 Motion was pending and just days after the conference with the Court, Plaintiffs filed motions seeking (1) leave to amend the motion for sanctions or for leave to file a new motion for sanctions (ECF No. 150); and (2) a discovery conference (ECF No. 151), anticipating a second motion to compel and for sanctions on related matters ("December 2019 Motions"). To consolidate all of the pending discovery issues in one motion for more efficient resolution, the Court ordered Plaintiffs to file by December 13, 2019 a new, omnibus motion to compel and for sanctions, encompassing all allegations in Plaintiffs' June 2019 Motion and Plaintiffs' December 2019 Motions (the "Omnibus Motion"), which Plaintiffs purported to do. (See ECF No. 152). The parties then briefed what Plaintiffs represented as their Omnibus Motion, including a sur-reply and sur-sur-reply. (ECF Nos. 155–64).

On January 21, 2020, not two weeks after Plaintiffs' Omnibus Motion was fully briefed, Defendants moved for a discovery conference for a protective order precluding specific discovery material ("Defendants' Motion"). (ECF No. 166). Then, a little over a week later, Plaintiffs moved for a discovery conference for an anticipated motion to compel ("Plaintiffs' January 2020 Motion"). (ECF No. 169). The parties briefed both motions (ECF Nos. 166, 169, 171–74), and the

Court scheduled an in-person status conference for March 10, 2020 (the "March 10 Conference") regarding the Defendants' Motion and Plaintiffs' January 2020 Motion (ECF No. 175). Despite having been ordered to file an omnibus motion encompassing all issues raised in Plaintiffs' June 2019 Motion and Plaintiffs' December 2019 Motions, Plaintiffs presented only some of the matters raised in those docket entries, and Plaintiffs and Defendants did not brief the issues in the Omnibus Motion, but rather referred the Court to their prior briefings at ECF Nos. 126–29, 132–33, and 136.

On March 5, 2020, the Court issued its Opinion & Order ruling on all matters set forth in all of the motions listed above, including the ruling that Plaintiffs are entitled to the Adverse Inference. (ECF No. 178 at 33, 42).

As a result of the COVID-19 pandemic, the March 10 Conference was converted to a telephone conference at which the parties discussed remaining discovery disputes and the Court answered all questions the parties had regarding its Opinion & Order. (See ECF Nos. 181, 183). On March 17, 2020, per the Court's order, the parties filed a joint letter listing further discovery disputes, which the Court resolved with a March 18, 2020 order. (ECF Nos. 184–85).

On March 19, 2020, Defendants filed the Motion. (ECF No. 186). On March 23, 2020, Judge Swain referred the Motion to the undersigned. (ECF No. 189). On March 24, 2020, Plaintiffs filed their opposition (ECF No. 190), and on March 31, 2020, Defendants filed their reply (ECF Nos. 191–92).

## II. **APPLICABLE LEGAL STANDARDS**

### A. **Motion for Reconsideration**

Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b) govern motions for reconsideration. Local Civil Rule 6.3 specifies timing, giving the moving party fourteen days after an entry of judgment to file a motion for reconsideration. Local Civ. R. 6.3. Rule 60(b) provides

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 60(b) affords "'extraordinary judicial relief'" that "can be granted 'only upon a showing of exceptional circumstances.'" Kubicek v. Westchester Cty., No. 08 Civ. 372 (ER), 2014 WL 4898479, at *1 (S.D.N.Y. Sept. 30, 2014) (quoting Nemaizer v. Baker, 793 F.2d 58, 61, (2d Cir. 1986)). The reconsideration standard "is strict," and reconsideration is generally only granted upon a showing of "controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

A motion for reconsideration is not "an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." Associated Press v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). It is not a way to "advance new facts, issues or arguments not previously presented to the Court." Polsby

v. St. Martin's Press, Inc., No. 97 Civ. 960 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (internal citation omitted).  The "moving party bears the burden of proof."  Freedom, N.Y., Inc. v. United States, 438 F. Supp. 2d 457, 462 (S.D.N.Y. 2006).

The decision to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'"  Premium Sports Inc. v. Connell, No. 10 Civ. 3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009)).

**B.  Spoliation and Adverse Inference**

A party is required to produce documents and other tangible objects within the party's "'possession, custody, or control.'"  Coventry Capital US LLC v. EEA Life Settlements Inc., 333 F.R.D. 60, 64 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 34(a)(1)).  Documents and tangible objects "are considered to be under a party's control when that party has the right, authority, or practical ability to obtain" them.  Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 146 (S.D.N.Y. 1997).  Once a "party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation," it has an obligation to preserve that evidence.  Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001); see Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp., Inc., 212 F.R.D. 94, 106 (E.D.N.Y. 2002) (finding that the duty to preserve arose when the problems that led to filing of the lawsuit first surfaced).  The filing of a charge of discrimination with the EEOC can trigger a duty to preserve evidence.  See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).  This is so because "[t]he duty to preserve arises, not when litigation is certain, but rather when it is 'reasonably foreseeable.'"  Alter v. Rocky Point School Dist., No. 13 Civ. 1100 (JS) (AKT), 2014 WL 4966119, at *8 (E.D.N.Y. Sept. 30, 2014) (citing Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d

Cir. 2001), superseded on other grounds by Szewczyk v. Saakian, 774 F. App'x 37 (2d Cir. 2019)).

To fulfill its obligation to preserve evidence "a litigant must take affirmative steps to prevent

inadvertent spoliation." R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 24 (S.D.N.Y. 2010). Discovery from

"key players" in the litigation should be preserved. See Alter, 2014 WL 4966119, at *9 (key

players included individuals mentioned in the complaint as present during critical events and to

whom plaintiff reported discriminatory behavior).

The Second Circuit has defined spoliation as "the destruction or significant alteration of

evidence, or the failure to preserve property for another's use as evidence in pending or

reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d

Cir. 1999). Spoliation sanctions are not warranted where "the information was preserved in

other locations." GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc., 282 F.R.D. 346, 359 (S.D.N.Y.

2012); see Paluch v. Dawson, No. 06 Civ. 01751, 2009 WL 3287395, at *3 (E.D. Pa. Oct. 13, 2019)

(plaintiff not prejudiced by absence of videotape where plaintiff "has a number of other

resources" to prove his claim, including his own and other witnesses' testimony). "In situations

where sanctions are warranted, district courts have broad discretion in 'crafting an appropriate

sanction for spoliation.'" Alter, 2014 WL 4966119, at *5 (quoting West, 167 F.3d at 779).

Where spoliation has occurred, a court may impose the sanction of an adverse inference,

which is "an inference that the evidence would have been unfavorable to the party responsible

for its destruction." Zubulake, 220 F.R.D. at 216. A party seeking an adverse inference sanction

for spoliation must establish:

> (1) that the party having control over the evidence had an obligation to preserve
> it at the time it was destroyed; (2) that the records were destroyed with a
> "culpable state of mind"; and (3) that the missing evidence is "relevant" to the

party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002).

The mental culpability element requires that the party breached a discovery obligation knowingly in bad faith, through gross negligence, or through ordinary negligence. Residential Funding Corp., 306 F.3d at 108, 113. "In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." In re Pfizer Inc. Sec. Litig., 288 F.R.D. 297, 314 (S.D.N.Y. 2013) (internal quotation omitted). Failing to institute a litigation hold is not gross negligence per se, but a factor the court should consider, along with "whether the party implemented good document or evidence preservation practices." Alter, 2014 WL 4966119, at *11. While gross negligence on its own warrants sanctions for spoliation, ordinary negligence must be coupled with relevance to justify spoliation sanctions. In re Pfizer Inc. Sec. Litig., 288 F.R.D. at 314–16; see Harkabi v. SanDisk Corp., 275 F.R.D. 414, 419–20 (S.D.N.Y. 2010).

Relevance is construed broadly, and the requested discovery must be more than a mere "fishing expedition." Alter, 2014 WL 4966119, at *5. Although

a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.

Zubulake, 220 F.R.D. at 217 (internal quotation omitted).

To prevail on their request for sanctions, then, Plaintiffs here were required to:

set forth with any degree of specificity, the materials which would have been helpful in prosecuting [their] claims. Relevance cannot be established solely on the basis of conjecture. Nor can a finding of relevance be grounded solely on the

> basis that <u>some</u> evidence in the custody of key witnesses no longer exists. Plaintiff[s] ha[ve] the burden of articulating what that evidence is with some degree of factual detail.

<u>Alter</u>, 2014 WL 4966119, at *12.  Plaintiffs bore the burden of adducing "sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." <u>Chan v. Triple 8 Palace</u>, No. 03 Civ. 6048 (GEL) (JCF), 2005 WL 1925579, at *7 (S.D.N.Y. Aug. 11, 2005) (citing <u>Residential Funding Corp.</u>, 306 F.3d at 108–09).

Finally, "a court should never impose spoliation sanctions of any sort unless there has been a showing—inferential or otherwise—that the movant has suffered prejudice." <u>In re Pfizer Inc. Sec. Litig.</u>, 288 F.R.D. at 316 (internal quotation omitted).  This is so because an adverse inference instruction is "an extreme sanction and should not be imposed lightly." <u>Treppel v. Biovail Corp.</u>, 249 F.R.D. 111, 120 (S.D.N.Y. 2008).  "The noncompliant party bears the burden to demonstrate that the other parties did not suffer any prejudice from spoliation." <u>R.F.M.A.S., Inc.</u>, 271 F.R.D. at 24–25.  "Where the discovery violation involves spoliation or withholding of evidence, the absence of prejudice can be shown by demonstrating, for example, that the other parties were able to obtain the same evidence from another source, or that during discovery they never asked for the evidence later shown to have been spoliated. <u>Id.</u> at 25.  The adverse inference is meant to restore a prejudiced party to the "position he would have been in absent the wrongful destruction of evidence by the opposing party." <u>Kronisch v. United States</u>, 150 F.3d 112, 126 (2d Cir. 1998).

## III.    DISCUSSION

Defendants advance four arguments why the Court should reconsider the Adverse Inference:  (1) Serrano only requested the February 7 Entry, photocopies of which Defendants produced, and therefore cannot demonstrate prejudice; (2) Plaintiffs failed to establish that Defendants spoliated evidence; (3) the "extreme sanction" of the Adverse Inference is not justified; and in the alternative, (4) the Court should undertake additional fact-finding.  (ECF No. 186 at 8–16).  These arguments largely re-hash the arguments Defendants previously made and the Court rejected in the Opinion & Order, and for that reason alone are grounds for denial of the Motion.  See Associated Press, 395 F. Supp. 2d at 19 (denying motion for reconsideration that "simply rehashes three arguments previously rejected").  Analyzed independently, none of Defendants' arguments overcomes the hurdle they must surpass to warrant reconsideration under Rule 60(b).

### A.  Serrano's Requests for the Memo Book

Defendants first argue that the Adverse Inference is erroneous, "contrary to the overwhelming weight of authority," extreme, and not justified because "Serrano's December 2018[2] discovery request [("Serrano's 2018 Request")] sought only '[a] copy of plaintiff Pedro Serrano's Memo book from February 7, 2013' and no other entry."  (ECF No. 186 at 5–6) (quoting ECF No. 129 at 7).  Defendants maintain that not until Plaintiffs' September 2019 Reply Memorandum did Serrano argue that Defendants "engaged in spoliation by not producing the entire Memo Book and five other books Serrano turned over to the NYPD in 2013."  (Id. at 6, 8)

---

[2] Serrano's 2018 Request is actually dated November 28, 2018, not December 2018.  (See ECF No. 127-7 at 8).

(citing ECF No. 136 at 5–6).  Defendants argue that Plaintiffs' counsel did not mention any other memo books during their pre-motion meet and confer discussions, and cite a letter from Plaintiffs' counsel only seeking, and arguing that Defendants only failed to preserve, the February 7 Entry.  (Id. at 9) (citing ECF Nos. 117, 128).  Therefore, Defendants argue, because Serrano never requested any other memo books and only sought the February 7 Entry, there can be no finding that Serrano was prejudiced and no sanction.  (Id. at 10).

Plaintiffs argue in response that the Adverse Inference against Defendants for the destruction of "Serrano's memo books" is proper because they did timely request all such documents.  (ECF No. 190 at 5).  Plaintiffs point out that, in addition to Request No. 20 of Serrano's 2018 Request, which sought "Serrano's Memo book from February 7, 2013," Request No. 23 sought a copy of "Serrano's Memo Book that was confiscated by Sergeant Gomez on the orders of defendant [Inspector Christopher] McCormack."  (Id.; ECF No. 127-7 ¶¶ 20, 23).  Plaintiffs argue that they included the separate request (Request No. 20) for the February 7 Entry because of the retaliation that occurred on that date, and also requested the "confiscated memo books" more generally because they contained Serrano's real time documentation of the discrimination and retaliation he allegedly suffered.  (ECF No. 190 at 5–6).  Plaintiffs also point out that Defendants failed to raise this argument previously, and have therefore waived it.  (Id. at 6).  Plaintiffs assert that once Defendants' argument that Plaintiffs failed to request Serrano's "memo books in their entirety" is properly set aside, "Defendants simply set forth the same arguments that they previously made in opposition to Plaintiffs' initial motion."  (Id. at 7).

On reply, Defendants admit that they "inadvertently overlooked" Request No. 23, effectively conceding that the underpinning of their argument is mistaken.  (ECF No. 192 at 6).

Defendants apologize for their oversight and blame Plaintiffs for not pointing it out sooner.  (Id. at 4, 6).  In addition, Defendants argue that when they "filed their opposition memorandum in August 2019, [they] reasonably believed that only the [February 7 Entry] was at issue."  (Id. at 7 n.1).  Defendants ask the Court to review Requests Nos. 20 and 23 together and argue that "Serrano's use of the singular strongly indicates that he was only seeking the Memo Book containing the [February 7 Entry], not the other Memo Books."  (Id. at 7).

The Court concludes that Defendants' argument is premised on a misreading of Request No. 20, in which Serrano requests "A copy of plaintiff Pedro Serrano's Memo book from February 7, 2013."  (ECF No. 127-7 ¶ 20).  The request does not specify only the February 7 Entry; it requests the "Memo book."  (Id.)  The Court understood and still understands the inclusion of the date in Request No. 20 to specify that Serrano sought the entire memo book that includes the February 7 Entry.  (See, e.g., ECF No. 178 at 28 ("On February 16, 2013, Serrano gave six memo books, including the Memo Book at issue, to "Integrity Control Officer Gomez" and they were not returned to him.")).  Even if Request No. 20 for the entire Memo Book were ambiguous, Request No. 23 seeks the entire Memo Book again, using an alternative description, "A copy of plaintiff Pedro Serrano's Memo Book that was confiscated by Sergeant Gomez on the orders of defendant McCormack."  (ECF No. 127-7 ¶ 23).  In addition, although neither party mentions it, Request No. 1 seeks "All documents that refer or relate to Plaintiff Pedro Serrano . . ." and thus also encompasses the entire Memo Book.  (Id. at 5 ¶ 1).  Therefore, at least three of the requests in Serrano's 2018 Request cover the Memo Book and required its preservation and production.

In the lengthy motion practice in which the parties have engaged over the Memo Book, Defendants never argued that sanctions were not warranted because Serrano requested only the

February 7 Entry, not the entire Memo Book.  (See ECF No. 178 at 2–6).  Defendants' belated

argument likely indicates that they, like the Court, understood Request No. 20 to seek the entire

Memo Book.  Regardless, Defendants' Motion is not an opportunity to make new arguments or

advance new facts.  Associated Press, 395 F. Supp. 2d at 19; Polsby, 2000 WL 98057, at *1.

Accordingly, because it is simply incorrect that Serrano failed to request the Memo Book in its

entirety, the Court rejects Defendants' argument that he cannot show prejudice to support the

Adverse Inference.

**B.  Serrano Established that Defendants Spoliated Evidence**

Defendants' remaining arguments repeat arguments the Court previously rejected and

therefore do not provide a basis for reconsideration.  See Associated Press, 395 F. Supp. 2d at 19.

**1.  Duty to preserve**

Defendants assert that the Court erred in finding that as of August 2012 they had a duty

to preserve the Memo Book because Plaintiffs' "Second Amended Complaint and Serrano's [2018

Request] focused solely upon the [February 7 Entry]."  (ECF No. 186 at 11).  Plaintiffs argue that

before Defendants lost the Memo Book, Defendants were on notice that Serrano was

commencing a lawsuit and therefore also on notice of their obligation to preserve the Memo

Book.  (ECF No. 190 at 9).

The Court previously found that Defendants' duty to preserve arose as of August 2012,

when Serrano "filed the EEOC Complaint," and continued from that date forward.  (ECF No. 178

at 30) (citing Zubulake, 220 F.R.D. at 216 (finding that the filing of a charge of discrimination with

the EEOC can trigger a duty to preserve evidence)).  Defendants fail to cite "controlling decisions

or data that the [C]ourt overlooked" that would alter the Court's conclusion that as of August

2012, they had an on-going obligation to preserve documents relevant to Serrano's claims, including the Memo Book.  Shrader, 70 F.3d at 257.

### 2.  **Culpable state of mind**

Defendants argue that the Court misinterpreted and misapplied In re Pfizer Inc. Sec. Litig., in finding that Defendants were grossly negligent for failing to preserve the Memo Book by failing to "'conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding.'"  (ECF No. 186 at 11–12) (quoting ECF No. 178 at 30 (quoting In re Pfizer Inc. Sec. Litig., 288 F.R.D. at 314)).  Defendants assert that the Court applied the standard for ordinary negligence, when in fact gross negligence is required and the standard the Court intended to apply.  (Id. at 12)  They contend that Serrano did not establish the type of egregious carelessness or intentional misconduct required to show gross negligence, and point to their decision to photograph the February 7 Entry as compelling evidence that they were "conscientious" and not grossly negligent.  (Id.)

Plaintiffs argue that, at minimum, Defendants acted negligently, which is sufficient for the Court to impose spoliation sanctions.  (ECF No. 190 at 9).  Because Defendants were on notice to preserve Serrano's Memo Book, Plaintiffs contend that its destruction "constitutes gross negligence."  (Id. at 10).

The court in In re Pfizer Inc. Sec. Litig. explained that, "[a] court may impose sanctions if it finds that the party acted at least negligently in destroying or losing the spoliated material." 288 F.R.D. at 314.  The court went on to explain that, "[i]n the discovery context, ordinary negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." Id. (internal

citation omitted).   The court noted that "[g]ross negligence also satisfies the culpability requirement," and must be analyzed in a "case-by-case approach for the failure to produce relevant evidence, at the discretion of the district court," and gave examples of instances in which courts in this district have found gross negligence, including a failure "to preserve the records of former employees that are in the party's possession, custody, or control." Id. at 314–15 (internal citation omitted).  While gross negligence on its own warrants sanctions for spoliation, ordinary negligence must be coupled with relevance before spoliation sanctions are warranted.  Id. at 316.

In the Opinion & Order, the Court found that in failing to preserve "a fundamental record"—the Memo Book—"from Serrano, a Plaintiff who memorialized the alleged acts at issue in this litigation," Defendants' conduct rose to the level of gross negligence.  (ECF No. 178 at 30–31) (citing In re Pfizer Inc. Sec. Litig., 268 F. Supp. 3d at 314–17 (gross negligence can be found where a party failed to preserve paper records from key players)).  Despite having found that Defendants were grossly negligent, the Court went on to perform the relevance analysis, finding that the Memo Book was relevant to Serrano's claim, such that, even if Defendants' conduct were merely negligent, sanctions were warranted.  (Id. at 31–33).  Defendants cite no "controlling decisions or data that the [C]ourt overlooked" that would alter the Court's conclusion as to their culpable state of mind.  Shrader, 70 F.3d at 257.

Defendants' argument regarding the preservation of the Memo Book through photographs repeats old arguments the Court previously rejected.  Associated Press, 395 F. Supp. 2d at 19.  In any event, the fact that Defendants photographed the Memo Book and then "lost" it, (see ECF No. 129 at 7–8; ECF No. 133-3; ECF No. 186 at 12), is equally supportive of the inference that they were aware of the likelihood that it would go missing.  Accordingly,

Defendants have not shown a basis to reconsider the conclusion that they harbored the requisite culpable state of mind to justify sanctions.

### 3. **Relevance**

Defendants argue that because Serrano created the Memo Book entries and is most aware of which entries are relevant, his failure to request any entries besides the February 7 Entry undermines his assertion that the other entries contain relevant information. (ECF No. 186 at 12–13). Plaintiffs argue in response that relevance need only be "considered when a party is deemed to be simply negligent," but is mooted here because Defendants were grossly negligent." (ECF No. 190 at 10). In any event, Plaintiffs argue, the information Serrano recorded in his Memo Book detailing "discriminatory and retaliatory acts by the Defendants" is relevant. (Id.).

Given the Court's determinations that (1) Request No. 20 sought the entire Memo Book, see supra Section III.A, and (2) Defendants were grossly negligent, see supra Section III.B.2, Defendants' remaining arguments regarding relevance do no more than repeat old arguments previously rejected by the Court. Associated Press, 395 F. Supp. 2d at 19. Therefore, Defendants' arguments concerning relevance do not provide a basis to reconsider the Opinion & Order.

### 4. **Prejudice**

Defendants contend that Serrano cannot show prejudice because he did not request the Memo Book in discovery, and because Defendants produced photographs of the February 7 Entry. (ECF No. 186 at 6, 8–10).

In light of the Court's determination that Request No. 20 sought the entire Memo Book, see supra Section III.A, Defendants' argument fails to offer an exceptional circumstance necessitating reconsideration. See Kubicek, 2014 WL 4898479, at *1. In addition, Defendants'

arguments regarding photographs of the February 7 Entry repeat arguments previously rejected by the Court and are not grounds for reconsideration.  <u>Associated Press</u>, 395 F. Supp. 2d at 19.

### 5. <u>Adverse inference</u>

Defendants argue that the extreme sanction of an adverse inference was not appropriate because the Court failed to explain "why an adverse inference was necessary, as opposed to a lesser sanction or any sanction at all."  (ECF No. 186 at 13).  Defendants argue that an adverse inference:  (1) would not serve a deterrent purpose because Defendants preserved the February 7 Entry with photographs; (2) would not serve a remedial purpose since there is nothing to infer about the February 7 Entry; and (3) Serrano is not prejudiced.  (<u>Id.</u> at 15).  Plaintiffs argue that the Court correctly determined that the Adverse Inference was the appropriate sanction for Defendants' spoliation.  (ECF No. 190 at 11).

Defendants are correct that an adverse inference does not automatically follow once the elements of spoliation are satisfied.  <u>See</u> <u>Chin v. Port Auth. of N.Y. & N.J.</u>, 685 F.3d 135 (2d Cir. 2012).  In <u>Chin</u>, the Second Circuit rejected "the notion that a failure to institute a litigation hold constitutes gross negligence <u>per</u> <u>se</u>," instead finding that the district court should, at its discretion, "consider the failure to adopt good preservation practices as one factor in the determination of whether discovery sanctions should issue."  <u>Id.</u> at 162 (internal citations omitted).  The Second Circuit made clear that the analysis is a "case-by-case" analysis, and affirmed the district court's conclusion that an adverse instruction was "inappropriate in light of the limited role" the destroyed documents played in the case and the plaintiffs' ample other supporting evidence which they were able to use at trial to establish relevant claims.  <u>Id.</u>

The facts in <u>Chin</u> are distinguishable from those in this case, where the Court has found that Defendants had a duty to preserve the entire Memo Book—a document that is relevant to Serrano's claims—failed to do so with a culpable state of mind, and prejudiced Serrano, who has no substitute or alternative to the contemporaneous records listed in the full Memo Book. (<u>See</u> ECF No. 178 at 310–33). The Court has "broad discretion in 'crafting an appropriate sanction for spoliation,'" and it did just that in granting the Adverse Inference against Defendants. <u>Alter</u>, 2014 WL 4966119, at *5 (quoting <u>West</u>, 167 F.3d at 779).

Defendants also contend that the Court improperly relied on <u>Lyondell-Citgo Refining, LP v. Petroleos de Venez., S.A.</u>, which affirmed an adverse inference where defendants consistently refused to produce requested discovery. 02 Civ. No. 795 (CBM), 2005 WL 1026461, at *4 (S.D.N.Y. May 2, 2005). They again rely on the argument that Serrano only requested the February 7 Entry, not the entire Memo Book. (ECF No. 186 at 14 n.1). Given the Court's determination that Request No. 20 sought the entire Memo Book, <u>see</u> <u>supra</u> Section III.A, however, it necessarily follows that Defendants consistently failed to produce it. Thus, Defendants do not cite "controlling decisions or data that the [C]ourt overlooked" that would alter the Court's conclusion. <u>Shrader</u>, 70 F.3d at 257.

Defendants' remaining arguments that the adverse inference does not deter or remediate for the destruction of evidence, and that Plaintiffs are not prejudiced, repeat arguments the Court previously rejected. <u>Associated Press</u>, 395 F. Supp. 2d at 19; <u>see</u> <u>Lyondell-Citgo Refining, LP</u>, 2005 WL 1026461, at *4 (finding that an adverse inference restores the evidentiary balance). Most relevant here, the Adverse Inference places "the risk of an erroneous evaluation of the

content of the destroyed evidence on the party responsible for its destruction," that is, Defendants. See Chin, 685 F.3d at 162.

### 6. Defendants' request for fact-finding

Defendants argue that if the Court determines that "the spoliation analysis extends beyond the" February 7 Entry, they be permitted to submit a "declaration that would further explain the chain of custody between the NYPD and the Law Department concerning the Memo Books." (ECF No. 192 at 9–10). Defendants argue that "[s]uch a declaration would be highly relevant to the culpability analysis and to whether a sanction is justified." (Id. at 10). Plaintiffs argue that they are unable to properly respond to Defendants' "vague request for additional discovery" related to Serrano's Memo Book, and oppose this new argument Defendants failed to raise during the prior briefings. (Id. at 12).

The Court finds that Defendants' request for further fact-finding comes too late. If Defendants had additional "facts" about chain of custody that mitigated their loss of the Memo Book, they had ample opportunity to provide it during the prolonged briefings that led to the Opinion & Order. Tellingly, they offer no insight into what additional "facts" they might tender that would in any way change the Court's analysis. Accordingly, because Defendants waived their request for further fact-finding by failing to raise it earlier, see Associated Press, 395 F. Supp. 2d at 19, and do not offer any facts that the Court overlooked, see Shrader, 70 F.3d at 257, they have not shown that they are entitled to reconsideration.

### IV.    CONCLUSION

For the reasons set forth above, Defendants' motion for reconsideration (ECF No. 186) is DENIED, and the Court's ruling stands that Plaintiffs are entitled to an inference that there is a

likelihood that the destroyed Memo Book would have supported Serrano's claims of adverse employment action and retaliation.

Dated:     New York, New York
           April 13, 2020

_____
SARAH L. CAVE
United States Magistrate Judge