UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDREWEENE RAYMOND, et al.,

                          Plaintiffs,

          -v-

THE CITY OF NEW YORK, et al.,

                          Defendants.

CIVIL ACTION NO.: 15 Civ. 6885 (LTS) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

Before the Court is the motion of Plaintiffs Edreweene Raymond, Pedro Serrano, Sandy

Gonzalez, and Ritchie Baez ("Plaintiffs") asking the Court to impose on Defendants City of New

York (the "City"), William J. Bratton, James P. O'Neill, Christopher McCormack and Constantin

Tsachas ("Defendants") the sanction of an adverse inference ("Plaintiffs' Third Sanctions

Motion") for each of 20 missing New York City Police Department ("NYPD") Monthly Conditions

Impact Reports (the "Monthly Reports").  (ECF Nos. 222–24).  Defendants oppose Plaintiffs' Third

Sanctions Motion and request an award of attorneys' fees for their costs incurred in opposing

the Motion.  (ECF No. 230).

For the reasons set forth below, Plaintiffs' Third Sanctions Motion is DENIED and

Defendants' request for attorneys' fees is also DENIED.

## I.    BACKGROUND

### A.    Factual Background

The factual background of this five-year-old employment discrimination action has been

set forward in detail in the decisions of the Honorable Laura Taylor Swain, granting Defendants'

motion to dismiss the amended complaint (ECF No. 60); granting in part and denying in part Plaintiffs' motion for leave to file a second amended complaint (ECF No. 86); and the decision of the undersigned granting in part and denying in part Plaintiffs' motion to compel and for spoliation sanctions (ECF No. 178) (the "March 5 Order").  Accordingly, the Court includes only the factual and procedural background material to the resolution of Plaintiffs' Third Sanctions Motion.

Plaintiffs seek compensatory damages to redress the alleged deprivation of rights under the United States Constitution, federal, New York State, and New York City laws.  (ECF No. 87 ¶ 1).  Plaintiffs, who are Latino and African-American Police Officers, allege that their employer, the NYPD, violated their rights and discriminated in their employment based on their race and national origin.  (Id. ¶ 2).  Plaintiffs allege that they were:

> under supervisory pressure to comply with the illegal quotas; . . . suffered negative employment consequences as a result of the failure to meet the illegal quotas; . . . racially discriminated against with respect to performance evaluations, the performance monitoring program, and the administration of discipline and punishment[;] . . . expressed [their] opposition to the illegal quotas and [have] been retaliated against[; and] penalized for reporting, opposing[,] and complaining about the illegal quotas and [their] racially discriminatory application . . .

(Id. ¶¶ 18–21).

On August 31, 2015, Plaintiffs filed the original Complaint.  (ECF No. 1).  Following significant motion practice described in Judge Swain's decisions listed above, (ECF Nos. 60, 86), the operative Second Amended Complaint was filed on July 11, 2018 (ECF No. 87).  Amid extensive discovery motion practice, in the March 5 Order, the Court granted, inter alia, Plaintiffs' request for an adverse inference concerning the destruction of Serrano's Memo Book.  (ECF No. 178 at 33).  On July 2, 2020, Judge Swain affirmed the March 5 Order.  (ECF No. 217).

Although Plaintiffs first requested the Monthly Reports in 2018, this dispute was not raised with the Court until 2020, as detailed in the Procedural History below.

### 1. Monthly Reports

The NYPD's Patrol Guide established Monthly Reports as an administrative tool for measuring performance levels of uniformed officers as part of the evaluation process. (See ECF No. 223-2). The procedure set forth in the Patrol Guide calls for officers to document daily their assignment, activities performed, and conditions addressed within the assignment. (Id. at 3). The Patrol Guide directs supervisors to collect the Monthly Reports periodically, review and sign them, and mark whether the officer's "impact on declared conditions" is "effective" or "ineffective," and to provide a justification for the rating. (Id. at 4). Supervisors also prepare Squad Supervisor Recapitulations (the "Recapitulations") using the Quest for Excellence Application. (Id. at 5). The Recapitulations, which are signed by the Squad Supervisor, include officers' numerical scores in 25 categories, including monthly activity measured in total numbers of stops, arrests (by classification of offense), overtime hours and tours on patrol, the officers' quarterly points, and total quarterly points earned to date. (See ECF No. 223-17 at 2). The Recapitulations may also include additional notes, such as the location of enforcement activity (see ECF No. 223-17) or management notes from the squad supervisor. (See ECF No. 208-2 at 2) ("squad has been counseled on the need to consistently address conditions as well as the need to be well rounded and address all types of conditions, including quality of life and traffic conditions.")

In turn, the Recapitulations and the Monthly Reports are submitted up the NYPD command hierarchy for review, and four times annually supervisors inscribe on the reverse side

of the Monthly Reports a Quarterly Performance Review.  (ECF No. 223-2 at 5–6).  The Quarterly

Performance Review is "prepared [in] March, June, September, [and] December[.]"  (ECF No. 223-

13 at 3).  Pursuant to the Quarterly Performance Review, supervisors fill out the reverse side of

the Monthly Reports, which includes a ranking from one (1) (below standards) to three (3) (above

standards) for the following standards:

1.  Officer took initiative in correcting conditions
2.  Officer's enforcement activity addressed declared conditions
3.  Officer took appropriate follow-up steps to properly address conditions
4.  Officer's administrative reports were accurate
5.  Officer related well during community interactions
6.  Officer presented an overall professional image

(See ECF No. 223-13 at 7).  These scores are aggregated in both the "Quarterly Points Total,"

ranging from a minimum score of six points to a maximum of seventeen,[1] and an officer's "Year

to Date Points."  (See ECF No. 223-13 at 7).

Plaintiffs seek spoliation sanctions for Defendants' failure to produce in discovery in this

action the following 20 Monthly Reports:

1.  Plaintiff Pedro Serrano (four): January, August, September, and December 2012;
2.  Plaintiff Ritchie Baez (twelve): February, March, May–December 2013, January and February 2014;
3.  Plaintiff Sandy Gonzalez (three): October 2013, January 2014 and February 2014;
4.  Plaintiff Edwin Raymond (one): May 2015.

(ECF No. 224 at 6–7).

---

[1] The maximum possible score for question six is two, a professional appearance.

### 2.  Serrano's EEOC charge of discrimination

On August 3, 2012, approximately three years before Plaintiffs filed this action, an Equal Employment Opportunity Commission ("EEOC") Notice of Charge of Discrimination (the "EEOC Notice") concerning Serrano was sent to the NYPD.  (ECF No. 223-11).  On August 27, 2012, the EEOC's New York State Office received a charge of discrimination from Serrano (the "EEOC Charge").[2]  (ECF No. 223-12).  The EEOC Charge alleged that Serrano was subjected to race-based discrimination at the NYPD, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.:

> I have been subject to unfair intimidation by my commanding officer and forced to racially profile African Americans and Hispanics for arrest or to serve with summons.  I was given a negative evaluation because I had not made enough of this sort of arrest. . . I believe I have been discriminated against based on my race[.]

(ECF No. 223-12).  Serrano attached to the EEOC Charge a three-page memorandum, entitled "Hostile Work Environment," which provided additional detail and anecdotes recounting instances of violating conduct and offensive statements.  (See ECF No. 223-12 at 3–5).

On July 31, 2013, the EEOC issued a Dismissal and Notice of Rights (the "EEOC Dismissal"), closing its file on Serrano's charge because "the EEOC [was] unable to conclude that the information obtained establishes violations of the statutes."  (ECF No. 232-2 at 2).  The EEOC Dismissal advises that "your right to sue based on [the Title VII charge] will be lost" if not filed within 90 days of receipt, (Ex. 232-2 at 2), which was October 29, 2013.  (Id.)  Serrano did not pursue the matter further for close to three years, as noted below.

---

[2] It is not clear why the date on the EEOC Notice precedes the date of the EEOC Charge received by the EEOC's New York State Office, but it is clear that NYPD was on notice of Serrano's EEOC Charge in August 2012.  (ECF No. 178 at 30).

### 3.  Plaintiffs' lawsuits and related preservation notices

On March 2, 2015, Plaintiffs Gonzalez, Baez, and Serrano (but not Raymond) filed a putative class action on behalf of Latino and African-American police officers alleging racial discrimination.  Gonzalez v. City of New York, No. 15 Civ. 1498 (AT) (the "Gonzalez Action").  On April 17, 2015, Richard Lovina, an attorney and Lieutenant in the NYPD, issued a preservation notice pertaining to the Gonzalez Action.[3]  (ECF No. 232-3).  On August 13, 2015, the Gonzalez Action was voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(A)(1)(A)(i).  (See Gonzalez v. City of New York, No. 15 Civ. 1498, ECF No. 12).

This action was filed on August 31, 2015.  (ECF No. 1).  On October 21, 2015, Lieutenant Lovina issued a preservation notice related to this action.  (ECF No. 232-3).

### B.    Procedural History

Plaintiffs first requested the Monthly Reports in late November or early December 2018,[4] in Plaintiff's "First Set of Requests for Production of Documents and Things to Defendant" ("Plaintiff's First Requests").  (See ECF No. 232-4 at 6).  Plaintiffs' First Requests sought the "monthly activity reports submitted by plaintiff Raymond from January 2013 to January 2018" (Request #6); "copies of all Quest for Excellence — Police Officer's Monthly Conditions Impact

---

[3] Defendants have not submitted the preservation notices Lieutenant Lovina issued, but the Lovina Declaration notes that "[i]n 2015, I was assigned to NYPD's Special Litigation Support Unit, which provides assistance to the New York City Law Department in defending the NYPD in large, complex federal class actions."  (ECF No. 232-3 at 2).

[4] Plaintiff's First Discovery Demands are dated November 28, 2018, (see ECF No. 232-4 at 7), but Defendants assert that Plaintiff's First Discovery Demands were not served until December 5, 2018.  (ECF No. 230 at 13).  Notably, in Defendants' January 11, 2019 letter motion for an extension of time to complete discovery, filed with Plaintiffs' consent, Defendants also noted that they were not served with the discovery requests until December 5, 2018.  (ECF No. 101).

Measurement Report[s] submitted by plaintiff Raymond from January 2013 to January 2018"
(Request #7); and Monthly Reports for comparators (Request #10).  (ECF No. 232-4 at 6).

In an email dated May 24, 2019, Defendants' counsel sought to memorialize a meet-and-
confer with Plaintiffs' counsel regarding the demand for the Monthly Reports.  (See ECF No. 232-
5).  As to Request #6, Defendants stated that they had "already produced all monthly activity
reports contained in plaintiffs' files, and defendants will also produce electronic records showing
the total number of arrests and summons plaintiffs made." (ECF No. 232-5 at 2).  Similarly, as to
Request #10, Defendants stated that they would "produce electronic records showing the
number of arrests and summons for plaintiffs' alleged comparators, similar to the documents
that will be produced in response to No. 6." (ECF No. 232-5 at 3).  As to Request #7, Defendants
wrote that they "[would] search for plaintiffs' Quest for Excellence Monthly Conditions Impact
Measurement Reports in their possession" but noted that they "disagree[d] [as] to the applicable
time period, as defendants do not agree with plaintiffs' request for documents going to the
present." (Id. at 2).  In opposition to Plaintiffs' Third Sanctions Motion, Defendants asserted that
the parties agreed that the substitute production of arrest and summons statistics satisfied
Plaintiffs' requests for the Monthly Reports and that "Plaintiffs' counsel raised no objection."
(ECF No. 230 at 13).

Plaintiffs made several subsequent applications to the Court concerning discovery
disputes but did not raise any issue concerning the Monthly Reports until January 30, 2020.  As
the Court has previously observed, "Plaintiffs first raised the issue of Monthly Reports in 2018
and participated in a meet and confer without objecting to Defendants' alternative production
of summons and arrest statistics, but made no mention of the issue again in subsequent meet-

and-confers nor in the discovery conferences with the Court." (ECF No. 178 at 39 (citing ECF Nos. 173 at 1–2; 127-7; 127-12)). Even after the Court in June 2019 permitted Plaintiffs to file a motion for spoliation sanctions, Plaintiffs did not raise the Monthly Reports in their July 21, 2019 Motion to Compel and for Spoliation Sanctions ("Plaintiff's First Sanctions Motion"). (See ECF Nos. 121, 126). Plaintiffs' First Sanctions Motion sought an adverse inference sanction pertaining to Serrano's Memo Book and the destruction of cell phones but made no mention of the Monthly Reports. (See ECF Nos. 126–29).

On November 2, 2019, after the parties had briefed Plaintiffs' First Sanctions Motion, (see ECF Nos. 126–29,132–33, 136), Plaintiffs requested the Monthly Reports in a supplementary document request. (See ECF No. 197-3). In response to Plaintiffs' letter-motion for a discovery conference anticipating a second motion to compel and for sanctions (see ECF No. 151), the Court ordered Plaintiffs to file a new motion to compel encompassing all of the allegations laid out in various prior filings and terminated Plaintiff's First Sanctions Motion as moot. (ECF No. 152). Plaintiffs' subsequent motion to compel and for sanctions ("Plaintiffs' Second Sanctions Motion") again failed to raise any dispute concerning the Monthly Reports. (See ECF Nos. 155–58).

Not until January 30, 2020, in Plaintiffs' letter-motion for a discovery conference did they raise the Monthly Reports ("Plaintiff's January 2020 Motion"). (See ECF No. 169).

In the March 5 Order, the Court resolved Plaintiffs' Second Sanctions Motion and Plaintiff's January 2020 Motion. (ECF No. 178). With respect to the Monthly Reports, the Court ordered that "[t]o the extent that the Monthly Reports are in fact performance evaluations, Plaintiffs are entitled to their production as limited by the claims permitted by Judge Swain's

2018 Order." (Id. at 40).  The March 5 Order required Defendants to produce the Monthly

Reports related to:

> "Gonzalez's, Baez's, and Serrano's federal discrimination claims relating to
> negative performance evaluations against McCormack, limiting production for
> Serrano to Monthly Reports relative to his 2012 performance rating" and
>
> "Raymond's claim against Tsachas, limited to his 2015 performance evaluation."

(ECF No. 178 at 41).  Also in the March 5 Order, the Court explained that, based on Serrano's

filing of the EEOC complaint in August 2012, "as of August 2012, the City had a duty to preserve

[Serrano's] Memo Book."  (ECF No. 178 at 30).  At a telephone conference held on March 10,

2020, the Court ordered Defendants to produce these Monthly Reports by no later than April 10,

2020 ("March 10 Order").  (ECF No. 181).

On April 10, 2020, Defendants produced certain Monthly Reports to Plaintiffs pursuant to

the Court's March 5 and March 10 Orders and noted where responsive documents had been

previously produced.  (ECF No. 223-1).  Defendants' letter accompanying the production noted

that:

> For Plaintiff Serrano, the Monthly Reports for January, September and December
> 2012 were not produced because they "were not scanned in for Serrano's squad for
> these months, but the monthly information collected was preserved."
>
> For Plaintiff Baez, other than the January and April 2013 Reports, the Monthly Reports
> for "were not scanned in for Baez's squad" although "the monthly information
> collected in the Reports was preserved."
>
> For Plaintiff Gonzalez, Defendants previously produced Gonzalez' 2013 Monthly
> Reports.
>
> For Plaintiff Raymond, Defendants noted that the Monthly Reports for July through
> November 2015 had been previously produced; produced reports for January through
> June 2015, except for May, which was "not located," and noted that Raymond was
> "not assigned to a Transit District 32 Squad" in December 2015.

(ECF No. 223-1 at 3).  Defendants subsequently produced Serrano's January 2012 report, which Defendants located in their review pursuant to a court order issued in Floyd v. City of New York, No. 08 Civ. 1034 (AT).  (ECF No. 233).

On May 18, 2020, following Plaintiff's Letter-Motion for a Discovery Conference (ECF No. 197) ("Plaintiff's May 2020 Motion"), the Court ordered Defendants to make a reasonable search and produce Monthly Reports for Serrano (January–December 2012); Gonzalez (January 2013–March 2014); and Baez (January 2013–March 2014).  (ECF No. 205).

On June 8, 2020, Plaintiffs filed another Letter-Motion concerning the Monthly Reports ("Plaintiffs' June 2020 Motion") (ECF No. 208), noting that Defendants produced the Recapitulations (also known as the "Squad Sergeant Reports") "for the missing Monthly Reports," which Plaintiffs described as "consist[ing] of raw information related to the Plaintiffs but possess[ing] no comments."  (ECF No. 208 at 1–2).  Defendants responded on June 17, 2020 (ECF No. 211) and Plaintiffs replied the following day.  (ECF No. 212).  On June 23, 2020, the Court directed the parties to complete fact discovery before briefing a spoliation sanctions motion stemming from Plaintiffs' June 2020 Motion.  (ECF No. 216).

On July 27, 2020, Plaintiffs filed the Third Sanctions Motion.  (ECF Nos. 222–24). Defendants filed their opposition on August 12, 2020, (ECF Nos. 230, 232) and on August 14, 2020 Defendants filed a supplemental letter concerning Serrano's January 2012 Monthly Report.  (ECF No. 233).  On August 19, 2020, Plaintiffs filed their reply.  (ECF No. 234).

C.       **Outstanding Monthly Reports**

Although Plaintiffs' Third Sanctions Motion initially addressed 20 Monthly Reports, following briefing and Defendants' subsequent productions, only 18 Monthly Reports remain outstanding:

1. Plaintiff Pedro Serrano (three Reports): August, September, December 2012;
2. Plaintiff Ritchie Baez (twelve Reports): February, March, May–December 2013, January and February 2014;
3. Plaintiff Sandy Gonzalez (two Reports): January 2014 and February 2014;
4. Plaintiff Edwin Raymond (one Report): May 2015.

## II.       DISCUSSION

A.       **Legal Standards for Spoliation**

The Federal Rules of Civil Procedure require a party to produce documents and other tangible objects within the party's "'possession, custody, or control.'"  Coventry Capital US LLC v. EEA Life Settlements Inc., 333 F.R.D. 60, 64 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 34(a)(1)). Documents and tangible objects "are considered to be under a party's control when that party has the right, authority, or practical ability to obtain" them.  Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 146 (S.D.N.Y. 1997).  Once a "party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation," it has an obligation to preserve that evidence.  Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001); see Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp., Inc., 212

F.R.D. 94, 106 (E.D.N.Y. 2002) (finding that the duty to preserve arose when the problems that led to filing of the lawsuit first surfaced).

Relevance is construed broadly, and the requested discovery must be more than a mere "fishing expedition." Alter v. Rocky Point School Dist., No. 13 Civ. 1100 (JS) (AKT), 2014 WL 4966119, at *4–5 (E.D.N.Y. Sept. 30, 2014). Although

> a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (internal citations omitted).

The filing of a charge of discrimination with the EEOC may trigger a duty to preserve evidence. See Zubulake, 220 F.R.D. at 216. This is so because "[t]he duty to preserve arises, not when litigation is certain, but rather when it is 'reasonably foreseeable.'" Alter, 2014 WL 4966119, at *8 (citing Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d Cir. 2001), superseded on other grounds by, Szewczyk v. Saakian, 774 F. App'x 37 (2d Cir. 2019)). To fulfill its obligation to preserve evidence "a litigant must take affirmative steps to prevent inadvertent spoliation." R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 24 (S.D.N.Y. 2010). Discovery from "key players" in the litigation should be preserved. See Alter, 2014 WL 4966119, at *9 (key players included individuals mentioned in the complaint as present during critical events and to whom plaintiff reported discriminatory behavior).

The Second Circuit has defined spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d

Cir. 1999).  Spoliation sanctions are not warranted where "the information was preserved in other locations."  GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc., 282 F.R.D. 346, 359 (S.D.N.Y. 2012); see Paluch v. Dawson, No. 06 Civ. 01751, 2009 WL 3287395, at *3 (E.D. Pa. Oct. 13, 2019) (finding plaintiff was not prejudiced by absence of videotape where he "ha[d] a number of other resources" to prove his claim, including his own and other witnesses' testimony).  "In situations where sanctions are warranted, district courts have broad discretion in 'crafting an appropriate sanction for spoliation.'"  Alter, 2014 WL 4966119, at *5 (quoting West, 167 F.3d at 779).

Where spoliation has occurred, a court may impose the sanction of an adverse inference, which is "an inference that the evidence would have been unfavorable to the party responsible for its destruction."  Zubulake, 220 F.R.D. at 216.  A party seeking an adverse inference sanction for spoliation must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind"; and (3) that the missing evidence is "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002).

The mental culpability element requires that the party breached a discovery obligation knowingly in bad faith, through gross negligence, or through ordinary negligence.  Residential Funding Corp., 306 F.3d at 108, 113.  "In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding."  In re Pfizer Inc. Secs. Litig., 288 F.R.D. 297, 314 (S.D.N.Y. 2013) (internal citations omitted).  Failing to institute a litigation hold is not gross negligence per se, but a factor the court should consider, along with "whether the party

implemented good document or evidence preservation practices."  Alter, 2014 WL 4966119, at

*11 (internal citation omitted).

> To prevail on their request for sanctions, then, Plaintiffs here must

> set forth with any degree of specificity, the materials which would have been helpful in prosecuting [their] claims.  Relevance cannot be established solely on the basis of conjecture.  Nor can a finding of relevance be grounded solely on the basis that some evidence in the custody of key witnesses no longer exists.  Plaintiff[s] ha[ve] the burden of articulating what that evidence is with some degree of factual detail.

Alter, 2014 WL 4966119, at *12.  Plaintiffs bear the burden of adducing "sufficient evidence from

which a reasonable trier of fact could infer that the destroyed or unavailable evidence would

have been of the nature alleged by the party affected by its destruction." Chan v. Triple 8 Palace,

No. 03 Civ. 6048 (GEL) (JCF), 2005 WL 1925579, at *7 (S.D.N.Y. Aug. 11, 2005) (citing Residential

Funding Corp., 306 F.3d at 108–09).

Finally, "a court should never impose spoliation sanctions of any sort unless there has

been a showing—inferential or otherwise—that the movant has suffered prejudice." In re Pfizer

Inc. Secs. Litig., 288 F.R.D. at 316 (internal citation omitted).  This is so because an adverse

inference instruction is "an extreme sanction and should not be imposed lightly." Treppel v.

Biovail Corp., 249 F.R.D. 111, 120 (S.D.N.Y. 2008).  "The noncompliant party bears the burden to

demonstrate that the other parties did not suffer any prejudice from spoliation." R.F.M.A.S., Inc.,

271 F.R.D. at 24–25.  "Where the discovery violation involves spoliation or withholding of

evidence, the absence of prejudice can be shown by demonstrating, for example, that the other

parties were able to obtain the same evidence from another source, or that during discovery they

never asked for the evidence later shown to have been spoliated. Id. at 25. The adverse inference

is meant to restore a prejudiced party to the "position he would have been in absent the wrongful

destruction of evidence by the opposing party." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998).

### B.   The Parties' Arguments

#### 1.   Plaintiffs' arguments

Plaintiffs frame the failure to preserve and produce the Monthly Reports as a deliberate violation of City policy in order to avoid civil liability.  (See ECF No. 224 at 5).

According to Plaintiffs, Serrano's EEOC Charge put Defendant City of New York on notice that it should preserve records for Serrano "as well as for his fellow 40th Precinct minority colleagues" — Plaintiffs Baez and Gonzalez — "from August 3, 2012 forward."  (ECF No. 224 at 21).  Plaintiffs argue that the failure to follow internal municipal policies such as the NYPD Administrative Guide § 320-01 and Operations Order 13 and 44 "can give rise to an inference of spoliation."  (ECF No. 224 at 21–23).[5]

Plaintiffs' argument that the Monthly Reports were "purposefully destroyed" (ECF No. 224 at 5) relies on the affidavit of a retired NYPD employee, Deputy Inspector Edward Carrasco (the "Carrasco Affidavit"), who concludes, based on his experience, that, as opposed to

---

[5] NYPD Administrative Guide 320-01, "Maintenance and transfer of command-level personal records" became effective September 27, 2016, for the purpose of "maintain[ing] readily available personnel data for each member of the command and provid[ing] for the orderly transfer of records to a member's new command."  (ECF No. 223-6 at 2).  Administrative Guide § 320-01 directs that the commanding officer shall maintain personal folders for the members of each command, which include, among other documents, the officers' Monthly Reports.  (Id.)

NYPD Operations Order 13, and 44 are both titled "Destruction of Records" and specify the length of time the NYPD was required to retain various types of documents.  (See ECF Nos. 223-7, 223-8).  Operations Order 44 went into effect on December 18, 2012 and Operations Order 13 was not issued until March 13, 2017.  (Id.)

an administrative oversight, "a more plausible explanation for these missing Reports is they were deliberately not scanned and the hard copies deliberately destroyed." (ECF No. 224 at 24). At a minimum, Plaintiffs argue, the failure to preserve the Monthly Reports was negligence. (ECF No. 224 at 25).

Plaintiffs argue that the missing Monthly Reports are relevant to their claims because Serrano's August and December 2012 Monthly Reports each would have included a quarterly score (ECF No. 224 at 26), as to the veracity of which "Plaintiffs are simply left to wonder." (ECF No. 224 at 26). Plaintiffs also argue that the Monthly Reports are relevant as "the primary medium" by which officers explain their work. (ECF No. 224 at 14, 26–27). For this reason, the Recapitulations are inadequate. (ECF No. 224 at 7). Because the Monthly Reports have not been produced, Plaintiffs argue they have been prejudiced and an adverse inference sanction is warranted.

### 2.  Defendants' arguments

Defendants counter that sanctions are unwarranted and disproportionate because they have produced Recapitulations corresponding to the 18 missing Monthly Reports, which document Plaintiffs' monthly activity for each month in question, and therefore, Plaintiffs have not been prejudiced. (See ECF No. 230). As further evidence of the lack of prejudice, Defendants describe Plaintiffs' delayed attention to the Monthly Reports, which lagged behind the service of relevant document requests and conferences. (See ECF No. 230 at 13–16).

Defendants also argue that there was no preservation obligation as to Raymond, Baez, and Gonzalez until the filing of this and similar lawsuits in 2015, because, on its face, Serrano's EEOC Charge applied only to him. (ECF No. 230 at 10–12). Defendants maintain that the duty to

preserve as to Serrano ceased on October 29, 2013, the final day he could have instituted litigation following the EEOC Dismissal.  (ECF No. 230 at 20).  Defendants argue that the violation of NYPD's internal record retention policies does not mandate an inference of spoliation.  (ECF No. 230 at 20–21).

**C.**    **Analysis**

      **1.**  **Duty to preserve**

           **a.**  **Serrano**

The Court finds that Serrano's EEOC Charge, which discussed only his own claims, placed Defendants on notice of future litigation involving Serrano and established a duty to preserve relevant evidence as to him.  As noted above, an EEOC charge can trigger the duty to preserve evidence.  See Zubulake, 220 F.R.D. at 216; Hawley v. Mphasis Corp, 302 F.R.D 37, 48 (S.D.N.Y. 2014) (observing that "courts in this Circuit regularly find that an EEOC charge puts an employer on notice that it likely faces future litigation" and collecting cases).  In fact, the Court held in the March 5 Order that "as of August 2012, the City had a duty to preserve [Serrano's] Memo Book" because the NYPD was aware after the filing of the EEOC complaint that Serrano was likely to commence civil litigation.  (ECF No. 178 at 30).  Defendants do not dispute this determination. (See ECF No. 230 at 19).  Accordingly, once Defendants received notice of Serrano's EEOC Charge, they were obligated to preserve relevant evidence as to Serrano's claims, see Hawley, 302 F.R.D. at 50, that is, evidence that they knew, or reasonably should know, "is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."  Zubulake, 220 F.R.D. at 217 (internal citation omitted).  The EEOC Notice pertaining to Serrano's EEOC Charge

was sent to the NYPD on August 3, 2012, (ECF No. 223-11), therefore, as the Court has previously held, Defendants had an obligation to preserve relevant evidence pertaining to Serrano's claims as of that date.  See Zubulake, 220 F.R.D. at 217.

The parties disagree as to the scope of Defendants' preservation obligation.  Plaintiffs argue that "Defendants were ordered to preserve evidence related to other similarly situated officers who may have similar claims," citing the EEOC Notice.  (ECF No. 224 at 20–21). Specifically, the EEOC Notice states that an employer facing a discrimination charge must preserve employment records "relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held . . . by the aggrieved person." (ECF No. 223-11). Accordingly, Plaintiffs submit that Defendants' preservation obligation is not limited just to Serrano but also includes Plaintiffs Baez and Gonzalez, who were also at the 40th Precinct in August 2012. (ECF No. 224 at 21).  Defendants counter that by Plaintiffs' own allegations, Baez and Gonzalez were not aggrieved employees until 2013.  (ECF No. 230 at 18).  In particular, Defendants point to Plaintiffs' Second Amended Complaint, which avers that, "[i]n the 40th Precinct, since January 2013, police officers such as Ritchie Baez are required to meet an enforcement activity target . . ." (ECF No. 87 ¶ 92) (emphasis added).

The Court concludes that the EEOC Charge imposed an obligation on Defendants to preserve evidence only as to Serrano, not the other Plaintiffs.  An EEOC charge that causes a defendant to anticipate litigation by a separate individual or group may result in a duty to preserve as to that separate party as well.  See Adorno v. Port Auth., 258 F.R.D. 217, 228 (S.D.N.Y. 2009).  Thus, in Adorno, an EEOC charge by the Asian Jade Society, an Asian fraternal police organization alleging discrimination by the Port Authority was found to result in a preservation

duty as to Hispanic officers who first filed an EEOC charge several years later alleging discrimination by the Port Authority on the grounds of national origin, race and ethnicity. Adorno, 258 F.R.D. at 226, 228.  Critical to the Court's holding, the Asian Jade Society's EEOC charge gave the Port Authority reason to anticipate litigation on similar grounds, "overlapped" with the Hispanic officers' claims and concerned many of the same documents.  Id. at 228.

In contrast to Adorno, however, Plaintiffs have not established that Defendants were on notice as to claims by Baez, Gonzalez, and Raymond as a result of Serrano's EEOC Charge, which by the language on its face applied only to him rather than to a class of similarity-situated officers. (See ECF No. 223-12).  The EEOC Charge does not name or refer to any other NYPD employee — such as the other Plaintiffs in this action — as being aggrieved victims of discrimination.  (See ECF No. 223-12).  Similarly, the EEOC Notice sent to the NYPD lists only Serrano as the individual who "claims to be aggrieved," rather than as "filing on behalf of other(s)."  (ECF No. 223-11 at 2).

The Court does not find persuasive Plaintiffs' argument that references to "[m]ost of the people in my [precinct] are Black or Hispanic" in the "Hostile Work Environment" memorandum attached to the EEOC Charge (see ECF No. 223-12 at 3–5) encompassed the other Plaintiffs and would impose a duty to preserve as to other African-American or Hispanic officers.  (See ECF No. 224 at 21).  This argument fails to consider the sentence within its context, in which Serrano recounted a supervisor's instruction to arrest more community members.  Serrano alleged in the "Hostile Work Environment" memorandum that:

> I was told by the XO [a nonparty supervisor at the 40th Precinct] that in order for me to get a better evaluation I must arrest, summons, and stop [sic] Question and frisk more people.  I expressed to her that the 40 pct. Is one of the poorest pct. In the Bronx and that they deserve to be warned first before summoning them.  She disagreed and called them animals.  I was insulted because I am Puerto Rican. Most of the people in my pct. are Black or Hispanic. . . She was showing me how

she wanted me to treat the locals . . . I don't believe that just because a person is black or Hispanic, that they deserve to be arrested or summons. I believe they are causing a hostile work environment and <u>race discriminating [sic] against me and the public.</u>

(ECF No. 223-12 at 4–5) (emphasis added).  Accordingly, Plaintiffs have not demonstrated that the EEOC Charge triggered Defendants' preservation obligations as to anyone other than Serrano.

The remaining question is the duration of Defendants' duty to preserve evidence concerning Serrano's claim.  Defendants argue that the duty to preserve as to Serrano terminated on October 29, 2013, "the final day Serrano could have instituted 'litigation relating to the [EEOC] charge[,]'" because "the NYPD could not have reasonably foreseen that Serrano, Baez, and Gonzalez would bring race discrimination claims under different statutes in March 2015, long after the deadline to file a Title VII lawsuit elapsed."  (ECF No. 230 at 20).  Although Defendants are correct that the duty to preserve does not "continue[] indefinitely," <u>Allstate Ins. Co. v. Hamilton Beach/Proctor Silex Inc.</u>, 473 F.3d 450, 458 (2d Cir. 2007), the Court disagrees that the duty to preserve terminated before this action was filed on August 31, 2015 (ECF No. 1) solely because the deadline to file a Title VII lawsuit elapsed.  Plaintiffs timely filed this action, and based on the unresolved nature of Serrano's claim following the EEOC Charge, litigation remained reasonably foreseeable.  <u>Cf.</u>, <u>e.g.</u>, <u>Edwards v. Hearst Commc'ns Inc.</u>, No. 15 Civ. 9279 (AT) (JLC) 2017 WL 6458612, at *4 (S.D.N.Y. Dec. 18, 2017) (finding that duty to preserve ended on dismissal of a lawsuit with prejudice because future litigation was not reasonably foreseeable given the absence of similar lawsuits against defendant); <u>Stinson v. City of New York</u>, No. 10 Civ. 4228 (RWS), 2016 WL 54684, at *8 n.3 (S.D.N.Y. Jan. 5, 2016) (noting that duty of preservation ended once arbitration concluded).

Accordingly, the Court finds that Defendants' duty to preserve evidence as to Serrano commenced in August 2012 and remained in effect at the time this action commenced in August 2015.

### b. Baez, Gonzalez, and Raymond

While the duty to preserve may predate the filing of a complaint, such as by the filing of a notice of claim, Plaintiffs do not provide any facts that would have put Defendants on notice that litigation as to the other Plaintiffs was reasonably foreseeable. See Alter, 2014 WL 4966119 at * 8–9 (duty to preserve arose with filing of Plaintiff's notice of claim and collecting cases in which events predating the commencement of a lawsuit triggered the duty to preserve). As discussed above, Serrano's EEOC Charge did not give rise to an obligation to preserve evidence as to the other Plaintiffs. Accordingly, the Court finds that Defendants' duty to preserve evidence as to Baez, Gonzalez, and Raymond did not arise until the complaints were filed on their behalf. See Edwards, 2017 WL 6458612 at *1. As to Gonzalez and Baez, this was on March 2, 2015, when the Gonzalez Action was filed. (See 15 Civ. 1498 (AT), ECF No. 1). As to Raymond, this was not until August 31, 2015, when this action was filed. (See ECF No. 1).

### c. Effect on Plaintiffs' Motion

The failure to preserve evidence will not be subject to the imposition of an adverse inference unless there was first a duty to preserve that evidence. See Tchatat v. O'Hara, 249 F. Supp. 3d 701, 708 (S.D.N.Y. 2017) (denying spoliation sanctions where "there was no suit filed against the defendants at the time the evidence at issue was allegedly lost"); Smith v. City of New York, 388 F. Supp. 2d 179, 189 (S.D.N.Y. 2005) (denying motion for spoliation sanctions "[b]ecause

plaintiffs cannot show that defendants were under an obligation to preserve the [District Attorney's office files pertaining to plaintiffs] at the time they were purportedly misplaced . . .").

As the Court has explained, Defendants did not have a duty to preserve evidence relating to Baez and Gonzalez until March 2, 2015.  The fourteen Monthly Reports pertaining to Baez and Gonzalez, which are from 2013 and 2014 (see ECF No. 224 at 6), predate the duty to preserve, and therefore, no sanction is warranted.  Likewise, Raymond's one missing Monthly Report, dated May 2015, predated Defendants' duty to preserve, and is therefore also does not warrant sanctions.  Accordingly, the only remaining Monthly Reports for which an adverse inference could potentially be warranted are the three Monthly Reports pertaining to Serrano from August, September, and December 2012.[6]  (See ECF No. 224 at 6).

### 2.  Culpable state of mind

"[T]he party seeking sanctions must show that the party with control over the evidence had a 'culpable state of mind.'"  Adorno v. Port Auth., 258 F.R.D. at 227 (quoting Byrnie, 243 F.3d at 109) (declining to impose spoliation sanctions for lost promotional documents in employment discrimination action).  The Court must take a case-by-case approach to determine if the party has such a culpable state of mind, that is, bad faith, gross negligence, or simple negligence.  Stinson, 2016 WL 54684, at *5. Gross negligence alone may establish that the evidence was unfavorable to the spoliating party.  Id. at *7 (citing Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 267–68 (2d Cir. 1999)).  By contrast, where spoliation is negligent or reckless but not willful,

---

[6] Defendants produced Serrano's January 2012 Monthly Report.  (See ECF No. 233 at 7–8).

the party seeking an adverse inference must demonstrate that the destroyed evidence would have been favorable.  See Zubulake, 220 F.R.D. at 221 (internal citation omitted).

The record before the Court is unclear as to whether the Monthly Reports were destroyed, and if so, how or when they were destroyed; it is clear only that they have not been located and produced.   According to Defendants' April 10, 2020 letter accompanying the production of some of the Monthly Reports, Serrano's three missing Monthly Reports were "not scanned in."  (ECF 223-1 at 3).  Defendants contend now that they "reasonably believe" that the 18 Monthly Reports at issue "were lost because the Squad Supervisors did not scan them (and the Reports of other officers) into the Quest application, although they did preserve the monthly activity in the Recapitulations."  (ECF No. 230 at 21–22).  Plaintiffs counter with the Carrasco Affidavit, which concludes, based on how many Monthly Reports are missing, that "a more plausible explanation. . . is they were deliberately not scanned and the hard copies deliberately destroyed."  (ECF No. 223-27 at 5).

The Court finds that, notwithstanding that 18 Monthly Reports have not been located and produced, Defendants did attempt to comply with their discovery obligations once this action was filed.  Defendants distributed a preservation notice on April 17, 2015, roughly six weeks after the filing of the Gonzalez Action, and on October 21, 2015, a month before this action was filed. (ECF No. 232-3 at 2–3).  At most, Defendants failed to follow through on collecting Monthly Reports following the preservation notice.  See Alter, 2014 WL 4966119, at *11 (declining to

impose an adverse inference and finding the failure to initiate a litigation hold until "well over two years after the Notice of Claim was filed" was a factor that the court should consider).

In addition to distributing the preservation notices, Defendants produced Recapitulations, which contain much of the same information as the Monthly Reports, corresponding to each missing Monthly Report.  As noted, the Recapitulations include fields for officers' monthly activity, measured in total numbers of stops, arrests (by classification of offense), overtime hours and tours on patrol, as well as the officers' quarterly points and quarterly points earned to date.  (See ECF No. 223-17 at 2).

The Court does not find the Carrasco Affidavit persuasive, given that Deputy Inspector Carrasco does not have personal knowledge concerning the failure to preserve or locate these Monthly Reports in this case, and only speculates that "a more plausible explanation" is that the Reports were "deliberately not scanned, and the hard copies deliberately destroyed."  (ECF No. 223-27 at 5).  See Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 217 (S.D.N.Y. 2007) (striking exhibit as inadmissible for lack of personal knowledge of defendant's intent and for lack of relevance).

Similarly, the Court finds unpersuasive Plaintiffs' argument that the apparent failure to adhere to record retention guidelines found in the NYPD's Patrol Guide and Administrative Guide creates an inference of spoliation.  In Byrnie, the Second Circuit explained that "the party seeking the inference must be a member of the general class of persons that the regulatory agency sought to protect in promulgating the rule."  243 F.3d 93, 109 (internal citation omitted and emphasis added).  Consequently, the Second Circuit determined that the violation of an EEOC record-retention regulation could give rise to such an inference.  Id.  By contrast, the NYPD is a

municipal law-enforcement agency, not a regulatory agency, and Plaintiffs do not argue that any regulations by a regulatory agency have been violated. (See ECF Nos. 224, 234). Further, the record is not established that the cited NYPD guidelines were even violated, because it is unclear whether the Monthly Reports were destroyed, and if so, when. Accordingly, the proposed inference of spoliation is not warranted.

Accordingly, the Court finds that the failure to preserve the Monthly Reports was, at most, negligent, but did not rise to the level of gross negligence. See Port Auth. Police Asian Jade Soc'y of N.Y. & N.J. v. Port Auth. of N.Y. & N.J., 601 F. Supp. 2d 566, 569–70 (S.D.N.Y. 2009) (denying motion for an adverse inference in racial discrimination lawsuit, where the loss of 32 personnel folders attributed to defendant's "fail[ure] to take any measures to preserve [their contents] after the institution of the EEOC charge was negligent" not grossly negligent). The failure to preserve the Monthly Reports represents perhaps a sloppily-implemented litigation hold, but this negligent conduct does not rise to the level of intent to destroy evidence. Alter, 2014 WL 4966119, at *11–12 (explaining that failure to implement a litigation hold does not prove willfulness or gross negligence but was, at most, negligence). Therefore, despite the failure to preserve the Monthly Reports, the Court does not find that the City failed to "conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." In re Pfizer Inc. Sec. Litig., 288 F.R.D. at 314 (internal citation and quotation omitted).

The circumstances here are distinguishable from Stinson, where the court found that the totality of the circumstances, including the defendant's unjustified "three-year failure to issue a litigation hold in this action," combined with specific instances of NYPD personnel destroying

relevant documents, including "shredding materials from CompStat meetings" and "throwing away. . . monthly activity reports" amounted to gross negligence that warranted a permissive, not a mandatory, adverse inference.  2016 WL 54684, at *2, 5–6, 8.

### 3.   Relevance to Plaintiffs' claims

As the party seeking spoliation sanctions, Plaintiffs bear the burden of establishing that relevant evidence "actually existed and was destroyed."  GenOn, 282 F.R.D. at 357 (quoting Orbit One Commc'ns Inc. v. Numerex Corp, 271 F.R.D. 429, 441 (S.D.N.Y. 2010)).  Because the Court has found that the spoliation here was, at most, negligent, rather than willful, Plaintiffs must show "not only that [Defendants] destroyed relevant evidence as that term is ordinarily understood, but also that the destroyed evidence would have been favorable to [them]." Zubulake, 220 F.R.D. 212 at 221 (citing Residential Funding, 306 F.3d at 108–09).  "Such a showing can be made on the basis of extrinsic evidence,'" such as deposition testimony.  Rhoda v. Rhoda, No. 14 Civ. 6740 (CM), 2017 WL 4712419, at * 4 (S.D.N.Y. Oct. 3, 2017) (internal citation omitted).

Plaintiffs argue that Serrano's missing Monthly Reports are "directly relevant to Plaintiff Pedro Serrano's 2012 performance evaluation" because the missing reports from August and December 2012 would each reflect a quarterly score.  (ECF No. 224 at 25–26).  Plaintiffs also argue that the Monthly Reports are relevant because they can contain comments by supervisors and "provide a police officer with 'sections where you can put down what you did to help the community, what you did to correct a condition, what you did to help stop some kind of violence . . .'" (Id. at 14, 26–27).  Accordingly, "[a]s a result of this missing evidence, Plaintiffs are simply

left to wonder whether Plaintiff . . . Serrano had [his] quarterly points altered to change [his] annual evaluation score[.]"  (ECF No. 224 at 26).

Serrano's September and December 2012 Monthly Reports were material to the performance evaluation scheme, because each would have included a Quarterly Performance Review.  (See ECF No. 223-13 at 18–19, 23–24).  By contrast, Serrano's August 2012 Monthly Report would not have included a quarterly score or Quarterly Performance Review.  (See ECF No. 223-13 at 16–17).  Accordingly, the Court determines that the September and December 2012 Monthly Reports are relevant.  Plaintiffs do not, however, adequately establish that these two missing Monthly Reports would have been favorable to their case.  That Plaintiffs are "simply left to wonder" whether Serrano's evaluation score had been altered (ECF No. 224 at 26), amounts to conjecture, much like their earlier argument that missing cell phones "may" contain relevant text messages.  (See ECF No. 178 at 27 (quoting Alter, 2014 WL 4966119 at *12)).

Moreover, the Court is not persuaded that any written statements by Plaintiffs on the Monthly Reports, such as their descriptions of how they performed their duties, or any comments by their supervisors would have been favorable to Plaintiffs.  By comparison, any such lost written statements here are similar in significance to the unpreserved "Handwrittens" in Adorno, which were "one-line expressions of interest in promotion," by plaintiffs alleging discriminatory promotion and appointment practices.  258 F.R.D. 217 at 229.  While that information might have had "arguable relevance," the court found that the plaintiffs failed to establish that they would have been unfavorable to the defendants because "[i]t is hard to imagine that these documents, if they existed, would significantly assist plaintiffs, and it is hard to imagine what adverse inference a jury could reasonably draw from the fact they no longer exist."  Id. at 229.  As in Asian

Jade Society, although the lost performance evaluations "were an important part of the promotion process," here "the record is insufficiently developed" to warrant the imposition of an adverse inference against Defendants.  601 F. Supp. 2d at 570.

Accordingly, the Court finds that Plaintiffs have not established that the Monthly Reports would have been favorable to their claims.

### 4.  **Prejudice**

The "extreme sanction" of an adverse inference, Zubulake, 220 F.R.D. at 220, is unwarranted if the opposing party has not suffered prejudice.  See In re Pfizer Inc. Sec. Litig., 288 F.R.D. at 316 (internal quotation omitted).  Here, having reviewed the other related documents and information produced to Plaintiffs in discovery and from Plaintiffs' own failure to seek relief as to the Monthly Reports until 2020, more than a year after first requesting the Monthly Reports, the Court finds that Plaintiffs have not demonstrated that they have been prejudiced.

Discovery produced by Defendants included Recapitulations corresponding to each Monthly Report, which included summons and arrest statistics for Plaintiffs, annual evaluations, deposition testimony, and tape recordings "in which [Plaintiffs] discuss their monthly activity with their supervisors," (ECF No. 230 at 27), as well as roll call records showing each officer's daily tour.  (ECF No. 178 at 36).  As noted above, the Recapitulations encompassed Plaintiffs' monthly activity, with fields for the total numbers of stops, arrests organized by offense classification, overtime hours and tours on patrol, as well as the officers' quarterly points and quarterly points earned to date.  (See ECF No. 223-17 at 2).  In addition, Plaintiffs took the deposition testimony of Lieutenant Andrew Hatki, who described recordkeeping procedures for the Monthly Reports (see ECF No. 223-9 at 2–3), and Deputy Inspector Christopher McCormack, who testified about

the contents of the Monthly Reports.  (See ECF No. 223-10 at 2).  In light of this evidence, the

likelihood of prejudice from the failure to produce the Monthly Reports is, virtually, "a nullity."

Rhoda, 2017 WL 4712419 at *4; see also Chin v. Port Auth. of N.Y. and N.J., 685 F.3d 135, 162 (2d

Cir. 2012) (affirming denial of adverse inference in discrimination lawsuit in light of the "limited

role of the destroyed folders. . . and the plaintiffs' ample evidence regarding their relative

qualifications when compared with the officers who were actually promoted.").  In contrast, in

the March 5 Order, the Court found that the failure to preserve Serrano's Memo Book was

prejudicial because "given the breadth of information that and frequency with which Serrano

wrote in his memo books" — he alleged that he contemporaneously recorded each incidence in

which he was retaliated against, threatened or punished — the incomplete production of only

five pages of the Memo Book, "two of which are blank and one of which has only three lines of

information[,]" "obviously omit[ted] large portions of the Memo Book."  (ECF No. 178 at 31-32).

Consequently, the Court determined that these incomplete pages that were produced were

insufficient to replace the Memo Book, in contrast to cases where "several other resources were

available in the absence of the destroyed evidence."  Id. at 32. Unlike Serrano's Memo Book,

here, in light of the production of Recapitulations and other documents, Plaintiffs have not

suffered prejudice from the failure to produce Serrano's Monthly Reports.

Accordingly, the Court finds that Plaintiffs have not established that they have suffered

prejudice from Defendants' failure to produce the 18 Monthly Reports.

\*         \*         \*

In sum, the Court concludes that Plaintiffs have not shown that the sanction of an adverse

inference is warranted for Defendants' failure to produce the 18 missing Monthly Reports.  The

record is unclear as to whether these Monthly Reports were destroyed or simply cannot be located, which the Court has concluded is due, at most, to negligence.  Fifteen of the missing Monthly Reports – those for Raymond, Baez, and Gonzalez – predate any duty to preserve evidence, and Plaintiffs have not met their burden of establishing that the three missing Monthly Reports for Serrano would have been favorable to them.  Finally, Plaintiffs have not shown that they were prejudiced.

D.    **An Award of Attorney's Fees is Unwarranted**

Defendants request an award of attorneys' fees for reasonable costs incurred in opposing Plaintiffs' Third Sanctions Motion, without citation to any legal authority.  Their request appears to be seeking a fee award based on the Court's inherent powers, which "requires a specific finding that an attorney acted in bad faith.  Moreover, inherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purpose."  Crawford v. City of New London, No. 3-cv-1371 (JBA), 2014 WL 2168430, at *5 (D. Conn. May 23, 2014) (denying defendant's application for attorneys' fees in opposing plaintiff's unsuccessful motion for spoliation sanctions that "was based on weak evidence at best") (quoting Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009)).

Defendants are not entitled to attorneys' fees because they have not established that Plaintiffs' Third Sanctions Motion was entirely baseless and motivated by an improper purpose.  To the contrary, Plaintiffs' Third Sanctions Motion arose from a legitimate dispute concerning Defendants' failure to preserve evidence relevant to Serrano's claims.  Though the Court concludes Plaintiffs are not entitled to spoliation sanctions, their position and legal arguments are not "entirely without color."  Crawford, 2014 WL 2168430 at *5.

Accordingly, Defendants' request for attorneys' fees is DENIED.

### III.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs' Third Sanctions Motion is DENIED, and Defendants' request for an award of attorneys' fees is also DENIED.  The parties are reminded to file a letter on ECF certifying the completion of all discovery by **Monday, December 14, 2020**. (ECF No. 242).

The Clerk of Court is respectfully directed to close ECF No. 222.

Dated:      New York, New York
            December 2, 2020

**SARAH L. CAVE**
**United States Magistrate Judge**