UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIANNE T. O'TOOLE, SOLELY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF PEDRO SERRANO, and SANDY GONZALEZ,<br><br>                              Plaintiffs,<br><br>          -v-<br><br>THE CITY OF NEW YORK, WILLIAM J. BRATTON, and CHRISTOPHER McCORMACK,<br><br>                              Defendants. | CIVIL ACTION NO.: 15 Civ. 6885 (LTS) (SLC)<br><br>**OPINION AND ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is Defendants'[1] letter-motion asking the Court to preclude Plaintiff Pedro Serrano ("Officer Serrano") from discussing at trial the adverse inference imposed following Defendants' failure to preserve a key document in this action.  (ECF No. 334 at 1–2 (the "Motion")).   Plaintiffs[2] opposed the Motion, but subsequently asked the Court to reserve judgment on the Motion pending their submission of a request for leave to amend and for sanctions.  (ECF Nos. 335 (the "Opposition"); 337 (the "Sept. 21 Letter")); see ECF No. 338).  On October 11, 2022, the Court heard argument from the parties, reserved decision on the Motion,

---

[1] Defendants refers to the City of New York (the "City"), former New York City Police Department ("NYPD") Police Commissioner, William J. Bratton ("Bratton"), former Police Commissioner and former Deputy Commissioner, James P. O'Neill ("O'Neill"), Inspector and former Commanding Officer of the 40th Precinct, Christopher McCormack ("C.O. McCormack"), and Deputy Inspector and former Commanding Officer of Transit District 32, Constantin Tsachas ("Tsachas"), all of whom are represented by Corporation Counsel.  (ECF Nos. 322; 334; 341).

[2] Plaintiffs are Officer Serrano and Sandy Gonzalez.  (See ECF No. 322 at 56–57).

set a briefing schedule for Plaintiffs' motion to amend, and denied without prejudice Plaintiffs' request for sanctions.  (ECF Nos. 344–45).  For the reasons set forth below, the Motion is DENIED.

## II. <u>BACKGROUND</u>

### A. <u>Factual Background</u>

The detailed factual background of this action is set forth at length in several prior decisions of the Honorable Laura Taylor Swain and the undersigned, and is incorporated by reference.  <u>See</u> <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (SLC), 2022 WL 2532467 (S.D.N.Y. July 7, 2022) (granting in part and denying in part Defendants' motion for summary judgment) ("<u>Raymond VII</u>"); <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 7055572 (S.D.N.Y. Dec. 2, 2020) (denying Plaintiffs' third sanctions motion and Defendants' request for attorneys' fees) ("<u>Raymond VI</u>"); <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 3619014 (S.D.N.Y. July 2, 2020) (overruling objections to imposition of adverse inference sanction) ("<u>Raymond V</u>"); <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 1847556 (S.D.N.Y. Apr. 13, 2020) (denying Defendants' motion for reconsideration of adverse inference sanction) ("<u>Raymond IV</u>"); <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 1067482 (S.D.N.Y. Mar. 5, 2020) (ruling on several discovery and sanctions motions and granting motion for adverse inference) ("<u>Raymond III</u>"); <u>Raymond v. City of New York</u>, 317 F. Supp. 3d 746 (S.D.N.Y. 2018) (granting in part and denying in part Plaintiffs' motion for leave to file Second Amended Complaint ("SAC")) ("<u>Raymond II</u>"); <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (HBP), 2017 WL 892350 (S.D.N.Y. Mar. 6, 2017) (granting Defendants' motion to dismiss Amended Complaint ("AC")) ("<u>Raymond I</u>").  (<u>See</u> ECF Nos. 60; 86; 178; 193; 217; 245; 322).

The Court summarizes those allegations relevant to Officer Serrano's claims and the Motion.  In 2004, Officer Serrano, who identifies as Hispanic and Puerto Rican, began working for the NYPD in the 40th Precinct, a high-crime area of the Bronx.  See Raymond VII, 2022 WL 2532467, at *6.  (See ECF No. 87 ¶ 102).  During the period relevant to this case, most officers assigned to the 40th Precinct "were Hispanic and/or Black."  Raymond VII, 2022 WL 2532467, at *6.  From September 2011 until April 2014, C.O. McCormack was the commanding officer of the 40th Precinct.  Id.  For the year 2012, "Officer Serrano received an annual evaluation rating of 3.0[.]"  Id.

"In a complaint dated June 1, 2012, and received by the Equal Employment Opportunity Commission ('EEOC') on August 27, 2012, Officer Serrano charged that he was subject to an 'unfair and unconstitutional' quota, and that he witnessed discriminatory enforcement against minority members of the public" by C.O. McCormack and Captain Materasso.  Raymond VII, 2022 WL 2532467, at *6; see Raymond III, 2020 WL 1067482, at *13.  In March 2013, Officer Serrano testified on behalf of the plaintiffs in "a section 1983 class action lawsuit against the City of New York and others alleging that the NYPD had implemented an official municipal policy of unconstitutional and racially discriminatory stops and frisks."  Raymond VII, 2022 WL 2532467, at *6 (citing Floyd v. City of New York, 959 F. Supp. 2d 540, 604 (S.D.N.Y. 2013) ("Floyd")).

Officer Serrano alleges that, beginning on February 7, 2013, C.O. McCormack retaliated against him in several ways in response to testimony in Floyd in violation of the First Amendment.  Raymond VII, 2022 WL 2532467, at *7, 17.  On that date, Officer Serrano "claims to have received multiple text messages reporting that C.O. McCormack was upset with him and talking about retribution, and when he was visited by five high-ranking officials (including C.O. McCormack)

during his assignment at a 'strike post' . . . a highly unusual occurrence." Id. at *17.  "On or around the same day, Officer Serrano called the NYPD's Internal Affairs department to report this incident." Id.  Following February 7, 2013, "Officer Serrano continued to experience a series of reportedly unwarranted disciplinary actions and unfavorable assignments, some at the direction of C.O. McCormack." Id.  On February 16, 2013, Officer Serrano gave six memo books, including the Memo Book (see p. 6), to "Integrity Control Officer Gomez[,]" id. at *18 n.32, but they were never returned to him.  Raymond III, 2020 WL 1067482, at *13.  Officer Serrano contends that "he wrote everything down in his memo books, including information regarding the quota, downgrading felonies, a hostile work environment, general corruption, and retaliations against him in the 40th Precinct." Id.

"[O]n April 4, 2013, then-Commissioner Raymond W. Kelly issued a memorandum disciplining Officer Serrano for engaging in 'conduct prejudicial to the good order, efficiency or discipline of the Department' by 'assist[ing] in the prevention of the processing and adjudication of two (2) summonses issued to two (2) motorists' in 2010." Raymond VII, 2022 WL 2532467, at *22.  (See ECF No. 338-1 at 8 (the "Discipline Memo")).  According to the Discipline Memo, Commissioner Kelly imposed "the forfeiture of five (5) suspension days to be served, twenty-five (25) vacation days, a total of thirty (30) penalty days and one (1) year [of] dismissal probation, as a disciplinary penalty." (ECF No. 338-1 at 8).  See Raymond VII, 2022 WL 2532467, at *22.  Then, on April 10, 2013, Officer Serrano was transferred from the 40th Precinct to the 33d Precinct (the "Transfer").  Raymond VII, 2022 WL 2532467, at *22.  Officer Serrano was not provided a reason for the Transfer.  Id.  Defendants disputed C.O. McCormack's involvement in the Transfer, and

argued that the "but-for" cause of the Transfer was the disciplinary charges described in the Discipline Memo.  Id. at *21.

B.   **Procedural Background**

1.   **The Complaints**

On August 13, 2015, Plaintiffs filed the original complaint, and on December 10, 2015, filed the AC, seeking declaratory and injunctive relief to redress violations of their First, Fifth, and Fourteenth Amendment rights under 42 U.S.C. §§ 1981 and 1983, and the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), among other claims. (ECF No. 1 ¶ 1 (the "Complaint"); 31 ¶ 1).  In the AC, Plaintiffs named as Defendants the City, the NYPD, Mayor Bill de Blasio, Bratton, O'Neill, and NYPD Bureau Chief Carlos M. Gomez. (ECF No. 31 ¶¶ 42–47).  On March 16, 2017, Chief Judge Swain granted Defendants' motion to dismiss the AC and permitted Plaintiffs to seek leave to replead their race discrimination claims under § 1981 and the NYCHRL, First Amendment claims under § 1983, and claim for injunctive relief.  Raymond I, 2017 WL 892350, at *1, *8.  On June 27, 2018, Chief Judge Swain granted in part and denied in part Plaintiffs' motion for leave to file the SAC, as is relevant to the Motion, permitting Officer Serrano to assert a First Amendment retaliation claim against C.O. McCormack. Raymond II, 317 F. Supp. 3d at 783–85.  On July 11, 2018, Plaintiffs filed the SAC.  (ECF No. 87).

2.   **The Adverse Inference**

Fact discovery in this action was contentious and required considerable judicial oversight. See Raymond III, 2020 WL 1067482, at *1–3 (summarizing history of discovery disputes).  At the end of 2019, the parties raised numerous discovery disputes for the Court's attention, including, as is relevant here, Plaintiffs' motion for spoliation sanctions based on Defendants' failure to

preserve and produce Officer Serrano's February 17, 2013 Memo Book (the "Memo Book"). (ECF Nos. 155–58 (the "Spoliation Motion")).[3] See Raymond III, 2020 WL 1067482, at *1.  In the Spoliation Motion, Plaintiffs asked the Court to strike Defendants' answer, or, in the alternative, grant an adverse inference.  (ECF No. 155 at 1 (requesting an adverse inference "for spoliation of evidence related to the willful and/or grossly negligent destruction of favorable evidence to the Plaintiffs"); see ECF No. 126 at 1 (requesting "an adverse inference sanction against the City of New York for spoliation of relevant evidence")).

On March 5, 2020, the Court granted in part and denied in part the Spoliation Motion. See Raymond III, 2020 WL 1067482.  The Court first held that "the City had a duty to preserve the Memo Book" as of August 2012, when Defendants' counsel became aware that Officer Serrano had filed the EEOC complaint and had commenced or would soon commence litigation.  Id. at *14.  The Court then found that "Defendants['] fail[ure]" to preserve the Memo Book, "a fundamental record[,]" rose "to the level of grossly negligent spoliation."  Id.  The Court next found that "the Memo Book, containing [Officer] Serrano's contemporaneous observations of the facts giving rise to his claims of adverse employment action and retaliation, is relevant" to Officer Serrano's claims.  Id.  Finally, the Court concluded that "the same evidence" in the Memo Book was "not available from another source[,]" and therefore, Officer Serrano was prejudiced by Defendants' failure to preserve it.  Id. at *15. The Court rejected Defendants' argument that Officer Serrano's ability "to testify at his deposition about the contents of the Memo Book [] mitigate[d] the prejudice from the absence of the document itself" because "[t]he incomplete

---

[3] Plaintiffs sought spoliation sanctions on July 13, 2019 and again on December 2, 2019 (ECF Nos. 126; 150; 151), but the Court terminated those motions and directed Plaintiffs to file a single, omnibus motion raising all pending discovery disputes.  (ECF Nos. 152; 155).

set of photographs and [his] testimony as to his recollections concerning [a] few pages [was] insufficient to replace the Memo Book itself[.]"  Id.  The Court thus concluded that "Plaintiffs are entitled to an inference that there is a likelihood that the destroyed Memo Book would have supported [Officer] Serrano's claim of adverse employment action and retaliation [the 'Adverse Inference']."  Id.

The Court subsequently denied Defendants' motion for reconsideration of the Adverse Inference, see Raymond IV, 2020 WL 1847556, at *11, and Chief Judge Swain overruled Defendants' objections and allowed the Adverse Inference to "stand."  Raymond V, 2020 WL 3619014, at *3.

### 3.  Summary Judgment

The parties completed fact discovery in March 2021.  (ECF No. 268).  Defendants moved for summary judgment dismissing Plaintiffs' remaining claims in the SAC.  (ECF No. 275).  As to Officer Serrano's employment discrimination claim based on his 2012 3.0 rating, Chief Judge Swain granted summary judgment for Defendants on the ground that "Officer Serrano has failed to show that his 3.0 annual evaluation constitute[d] a materially adverse employment action[.]"  Raymond VII, 2022 WL 2532467, at *11.  Chief Judge Swain also granted summary judgment for Defendants as to Officer Serrano's Equal Protection retaliation claim against C.O. McCormack based on the EEOC complaint for failure to show that C.O. McCormack knew about that complaint or any "causal connection between that complaint and the proffered retaliatory actions beginning in February 2013."  Id. at *17–19.  As to Officer Serrano's First Amendment retaliation claim against C.O. McCormack, however, Chief Judge Swain concluded that "the record before the Court would permit a reasonable jury to conclude that C.O. McCormack was personally

involved in adverse actions against Officer Serrano for which the 'but-for' cause was retaliation in response to Officer Serrano's testimony in <u>Floyd</u>." <u>Id.</u> at *21. Specifically, Chief Judge Swain found that Defendants had "not met their burden to proffer evidence in support of the proposition that Officer Serrano's [Transfer] was a necessary result of the punishment imposed by Commissioner Kelly or that it would have occurred regardless of his testimony in <u>Floyd</u>." <u>Id.</u> at *22.

### 4. <u>Preparation for Trial</u>

As the parties proceeded to jury trial, on September 14, 2022, Defendants filed a motion <u>in limine</u> and the Motion. (ECF Nos. 331; 334). On September 16, 2022, Plaintiffs filed the Opposition. (ECF No. 335).

On September 19, 2022, 18 months after the close of fact discovery and after the deadline for the parties to meet and confer on exhibits and file motions <u>in limine</u>, Defendants' counsel informed Plaintiffs that, pursuant to a search of the NYPD Personnel Orders Section conducted after <u>Raymond VII</u>, they had located eight pages of additional documents relating to Officer Serrano's Transfer (the "Additional Documents")). (ECF No. 338-1 at 9–10). Included in the Additional Documents is a memorandum dated April 4, 2013 (the same date as the Disciplinary Memo) from Raymond Spinella, Assistant Chief, Commanding Officer, Police Commissioner's Office, the subject of which was the "Administrative Transfer of a Uniformed Member of the Service[.]" (<u>Id.</u> at 6 (the "Transfer Memo")). The Transfer Memo states:

> 1.    Police Officer Pedro Serrano [] was recently the subject of Disciplinary Case No. 2011-5852.
> 2.    Separate and apart from the disciplinary process, the Police Commissioner directs that Police Officer Serrano be transferred to a Patrol Borough Manhattan North Precinct enforcement command, subject to the exigencies of the Department.

3.      Further, Police Officer Serrano will not be subject of any future transfer without the explicit approval of the Police Commissioner.

. . .

(Id.)  At the bottom of the Transfer Memo, Commissioner Kelly's signature and title appear below the word "APPROVED" and the date, April 4, 2013.  (Id.)  Attached to the Transfer Memo is an endorsement by Rafael Pineiro, First Deputy Commissioner, acknowledging receipt of the Transfer Memo and stating:

> Please note the Police Commissioner's DIRECTION to have Police Officer Pedro Serrano [], the subject of Disciplinary Case Nos. 2011-5852, separately and distinctly from the discipline process, immediately transferred to Patrol Borough Manhattan North Precinct Enforcement Command, subject to the exigencies of the Department.  Further, Police Officer Serrano will not be the subject of any future transfer without the explicit approval of the Police Commissioner . . . .

(Id. at 7 (the "Endorsement")).  In receipt of the Additional Documents, on September 21, 2022, Plaintiffs asked the Court to reserve judgment on the Motion until they could "put all issues before the Court."  (ECF No. 337 at 1).

On September 26, 2022, Plaintiffs filed a letter-motion requesting a pre-motion conference or to set a briefing schedule for a motion to leave to amend "to add facts and parties to this action, for sanctions against the Defendants and to preclude Defendants from offering" the Additional Documents as evidence.  (ECF No. 338 at 1 (the "Sept. 26 Letter-Motion")).  On September 29, 2022, Defendants responded to the Letter-Motion, opposing Plaintiffs' request for leave to amend as well as arguing against the imposition of sanctions.  (ECF No. 341).  On October 11, 2022, the Court heard argument from the parties, reserved decision on the Motion, set a briefing schedule for Plaintiffs' motion for leave to amend, and denied Plaintiffs' request for sanctions without prejudice.  (ECF Nos. 344–45).

Pending resolution of the Motion and the Letter-Motion, Chief Judge Swain adjourned the parties' pretrial submission deadlines and the final pretrial conference.  (ECF No. 340).

## III. <u>DISCUSSION</u>

### A. <u>Legal Standard</u>

The Court construes the Motion as one for reconsideration of the Adverse Inference that the Court imposed in <u>Raymond III</u>, reaffirmed in <u>Raymond IV</u>, and Chief Judge Swain maintained in <u>Raymond V</u>.  Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b) govern motions for reconsideration.  Local Civil Rule 6.3 specifies timing, giving the moving party fourteen days after an entry of judgment to file a motion for reconsideration.  Local Civ. R. 6.3.  Rule 60(b) provides

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 60(b) affords "'extraordinary judicial relief'" that "can be granted 'only upon a showing of exceptional circumstances.'"  <u>Kubicek v. Westchester Cnty.</u>, No. 08 Civ. 372 (ER), 2014 WL 4898479, at *1 (S.D.N.Y. Sept. 30, 2014) (quoting <u>Nemaizer v. Baker</u>, 793 F.2d 58, 61 (2d Cir. 1986)).

The reconsideration standard "is strict," and reconsideration is generally only granted upon a showing of "controlling decisions or data that the court overlooked—matters, in other

words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

A motion for reconsideration is not "an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." Associated Press v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Nor is a motion for reconsideration a way to "advance new facts, issues or arguments not previously presented to the Court." Polsby v. St. Martin's Press, Inc., No. 97 Civ. 960 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (internal citation omitted). The "moving party bears the burden of proof." Freedom, N.Y., Inc. v. United States, 438 F. Supp. 2d 457, 462 (S.D.N.Y. 2006).

The decision to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" Premium Sports Inc. v. Connell, No. 10 Civ. 3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009)).

B. **Application**

Defendants argue that the Court should reconsider the Adverse Inference for two reasons. First, Defendants maintain that while Officer "Serrano's retaliation claim proceeding to trial is against [D]efendant [C.O.] McCormack only[,]" Plaintiffs' Spoliation Motion requested an adverse inference only against the City. (ECF No. 334 at 1 (quoting ECF No. 126)). Defendants claim that "it would be patently unfair and violate [C.O.] McCormack's constitutional right to due process to apply the adverse inference to [him] as well without any prior notice." (ECF No. 334 at 1). Defendants add that "McCormack had no involvement in the loss of [Officer] Serrano's memo books[.]" (Id.) Second, Defendants argue that Officer "Serrano can no longer establish that he was prejudiced by the loss of his memo books" in light of the decision in Raymond VII,

11

which "cited [Officer] Serrano's deposition testimony regarding [C.O.] McCormack's allegedly threatening actions" in February 2013. (Id. at 2). Absent prejudice, Defendants claim that the "'extreme sanction' of an adverse inference is no longer justified." (Id. (quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2013)).

In the Opposition, Plaintiffs ask the Court to deny Defendants' "fourth bite at the apple[,]" citing the decisions in Raymond III, Raymond IV, and Raymond V. Plaintiffs note that, when the Court granted the Adverse Inference in Raymond III, "the City of New York was not a defendant [as] to [Officer] Serrano for any of his claims." (ECF No. 335 at 2). Because the Court granted the Adverse Inference against Defendants, and C.O. McCormack was the only Defendant against whom Officer Serrano had any claims, "the [A]dverse [I]nference is against [C.O.] McCormack, individually." (Id.) Plaintiffs also note that Corporation Counsel has been defending C.O. McCormack throughout this action, and that the City and McCormack "are joined in interest." (Id.) Plaintiffs point out that the filing in which they stated they were seeking "an adverse inference against the City of New York" was terminated and replaced with the Spoliation Motion, which did "not specify that the sanctions were only against the City[.]" (Id.) Finally, Plaintiffs argue that Officer Serrano has been prejudiced by the loss of the Memo Book, as Chief Judge Swain reaffirmed in Raymond V. (Id. (quoting 2020 WL 3619014, at *3)).

The Court concludes, as it did in Raymond IV, that neither of "Defendants' arguments overcomes the hurdle they must surpass to warrant reconsideration under Rule 60(b)." 2020 WL 1847556, at *6. First, the Court rejects Defendants' argument that C.O. McCormack did not have prior notice of the Adverse Inference. As Plaintiffs correctly note, the Spoliation Motion before the Court in Raymond III asked for an adverse inference against Defendants—plural—and the

Court ruled that "Plaintiffs are entitled to an inference that there is a likelihood that the destroyed Memo Book would have supported [Officer] Serrano's claims of adverse employment action and retaliation."  2020 WL 1067482, at *15.  (See ECF No. 155 at 1).  The only Defendant facing Officer Serrano's retaliation claim at that time was C.O. McCormack.  See id. at *1 n.1 (quoting Raymond II, 317 F. Supp. 3d at 785).  Further, Chief Judge Swain agreed that there was no error in the determination that the Adverse Inference "was warranted to deter the destruction of evidence, place the risk of erroneous judgment on the Defendants (who misplaced the record), and to restore [Officer] Serrano to the position in which he would have been but for Defendants' gross negligence." Raymond V, 2020 WL 3619014, at *2 (emphasis added).  She also agreed with the finding that "Defendants were grossly negligent in failing to preserve the Memo Book because they were aware of an obligation to preserve it and because it was a record of a 'key player' in the litigation." Id. (emphasis added).  The Court's ruling was therefore clear that the Adverse Inference applied to C.O. McCormack, and Defendants' new, eleventh-hour argument does not warrant reconsideration.  See Raymond IV, 2020 WL 1847556, at *7 (rejecting argument that Defendants never made "[i]n the lengthy motion practice in which the parties have engaged over the Memo Book"); cf. Freedom, 438 F. Supp. 2d at 463 (denying motion to reconsider based on supposedly new information); Polsby, 2000 WL 98057, at *1 (denying motion to reconsider based on new factual allegations).

Second, Defendants' argument that Officer Serrano was not prejudiced by the absence of the Memo Book is simply a repetition of old arguments this Court and Chief Judge Swain have rejected.  Defendants raised, and the Court rejected, this argument in opposition to the Spoliation Motion, on reconsideration, and before Chief Judge Swain.  See Raymond V, 2020 WL

3619014, at *2–3 (rejecting Defendants' argument that Officer Serrano was not prejudiced by the absence of the Memo Book); Raymond IV, 2020 WL 1847556, at *6–9 (rejecting Defendants' argument that, because they produced photographs of the February 7, 2013 entries in the Memo Book, Officer Serrano was not prejudiced); Raymond III, 2020 WL 1067482, at *15 (rejecting Defendants' argument that, because they produced photographs of portions of the Memo Book and Officer Serrano was able to testify at his deposition about the contents of the Memo Book, he was not prejudiced).  Chief Judge Swain's finding that Officer Serrano's deposition testimony was sufficient to defeat Defendants' motion for summary judgment does not mean that the Memo Book itself would not have been valuable evidence Officer Serrano should have been able to present to the jury at trial, had it not been spoliated by Defendants.  See Raymond VII, 2022 WL 2532467, at *21.  As the Court found, and Chief Judge Swain agreed, "[g]iven the breadth of information [] and frequency with which [Officer] Serrano wrote in his memo books, the photographs obviously omit large portions of the Memo Book[,]" and, therefore, "the same evidence is not available from another source."  Raymond III, 2020 WL 1067482, at *15 (citing R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 24–25 (S.D.N.Y.)); see Raymond V, 2020 WL 3619014, at *3 (finding no error in conclusion that Officer Serrano was not able to obtain the same evidence from another source).  Because Defendants' arguments concerning prejudice "repeat arguments previously rejected by the Court[,]" they too "are not grounds for reconsideration." Raymond IV, 2020 WL 1847556, at *9 (citing Associated Press, 395 F. Supp. 2d at 19).

## IV. **CONCLUSION**

For the reasons set forth above, Defendants' Motion is DENIED.

The Clerk of the Court is respectfully directed to close ECF Nos. 334 and 337.

Dated:      New York, New York
             October 21, 2022

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**