SOUTHERN DISTRICT OF NEW YORK

MARIANNE T. O'TOOLE, SOLELY AS CHAPTER 7
TRUSTEE OF THE ESTATE OF PEDRO SERRANO,
and SANDY GONZALEZ,

                              Plaintiffs,

          -v-

THE CITY OF NEW YORK, WILLIAM J. BRATTON,
and CHRISTOPHER McCORMACK,

                              Defendants.

CIVIL ACTION NO.: 15 Civ. 6885 (LTS) (SLC)

**REPORT & RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE LAURA TAYLOR SWAIN**, Chief United States District Judge:

## I. INTRODUCTION

Before the Court is Plaintiffs'[1] letter-motion seeking leave to file a third amended

complaint (the "TAC") to assert claims against and seek additional discovery from the City of New

York (the "City") and former Commissioner of the New York City Police Department ("NYPD")

Raymond Kelly ("Commissioner Kelly").  (ECF No. 346 (the "Motion"); see ECF Nos. 346-1; 354;

354-1).  The impetus for the TAC, seven years into this civil rights action, is Defendants'[2]

disclosure, well after the close of fact discovery and two months after a ruling on Defendants'

---

[1] Plaintiffs are Marianne T. O'Toole, as Chapter 7 Trustee of the Estate of Pedro Serrano ("Officer
Serrano"), and Sandy Gonzalez ("Officer Gonalez").  (See ECF Nos. 330; 322 at 56–57).  Edreweene
Raymond and Ritchie Baez are no longer Plaintiffs in this action.  (See ECF No. 322 at 57).
[2] Defendants are the City, former NYPD Commissioner William J. Bratton ("Bratton"), former
Commissioner and former Deputy Commissioner James P. O'Neill ("O'Neill"), and Inspector and former
Commanding Officer of the 40th Precinct Christopher McCormack ("C.O. McCormack"), all of whom are
represented by Corporation Counsel.  (ECF Nos. 322; 334; 341).  Deputy Inspector and former
Commanding Officer of Transit District 32, Constantin Tsachas was, but no longer is, a Defendant in this
action.  (ECF Nos. 322 at 42, 57; 354-1).

motion for summary judgment, of additional personnel documents highly relevant to Officer Serrano's claims. (ECF Nos. 338; 338-1 at 9–10). Defendants oppose the Motion. (ECF No. 352). For the reasons set forth below, I respectfully recommend that the Motion be GRANTED IN PART and DENIED IN PART.

## II. <u>BACKGROUND</u>

### A. <u>Factual Background</u>

The detailed factual background of this action is set forth at length in several prior decisions of the Honorable Laura Taylor Swain and the undersigned, and is incorporated by reference. <u>See</u> <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (SLC), 2022 WL 2532467 (S.D.N.Y. July 7, 2022) (granting in part and denying in part Defendants' motion for summary judgment) ("<u>Raymond VII</u>"); <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 7055572 (S.D.N.Y. Dec. 2, 2020) (denying Plaintiffs' third sanctions motion and Defendants' request for attorneys' fees) ("<u>Raymond VI</u>"); <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 3619014 (S.D.N.Y. July 2, 2020) (overruling objections to imposition of adverse inference sanction) ("<u>Raymond V</u>"); <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 1847556 (S.D.N.Y. Apr. 13, 2020) (denying Defendants' motion for reconsideration of adverse inference sanction) ("<u>Raymond IV</u>"); <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 1067482 (S.D.N.Y. Mar. 5, 2020) (ruling on several discovery and sanctions motions and granting motion for adverse inference) ("<u>Raymond III</u>"); <u>Raymond v. City of New York</u>, 317 F. Supp. 3d 746 (S.D.N.Y. 2018) (granting in part and denying in part Plaintiffs' motion for leave to file Second Amended Complaint ("SAC")) ("<u>Raymond II</u>"); <u>Raymond v. City of New York</u>, No. 15 Civ. 6885 (LTS) (HBP), 2017 WL 892350 (S.D.N.Y. Mar. 6, 2017) (granting Defendants'

motion to dismiss Amended Complaint ("AC")) ("Raymond I"); see also O'Toole v. City of New York, No. 15 Civ. 6885 (LTS) (SLC), 2022 WL 13826120 (S.D.N.Y. Oct. 21, 2022) ("O'Toole I").[3] (See ECF Nos. 60; 86; 178; 193; 217; 245; 322; 347).

The Court focuses on the allegations relevant to Officer Serrano's claims and the Motion. In 2004, Officer Serrano, who identifies as Hispanic and Puerto Rican, began working for the NYPD in the 40th Precinct, a high-crime area of the Bronx.  See Raymond VII, 2022 WL 2532467, at *6. (See ECF No. 87 ¶ 102).  During the period relevant to this case, most officers assigned to the 40th Precinct "were Hispanic and/or Black."  Raymond VII, 2022 WL 2532467, at *6.  From September 2011 until April 2014, C.O. McCormack was the commanding officer of the 40th Precinct.  Id.  For the year 2012, "Officer Serrano received an annual evaluation rating of 3.0[.]" Id.

"In a complaint dated June 1, 2012, and received by the Equal Employment Opportunity Commission ('EEOC') on August 27, 2012, Officer Serrano charged that he was subject to an 'unfair and unconstitutional' quota, and that he witnessed discriminatory enforcement against minority members of the public" by C.O. McCormack and others.  Raymond VII, 2022 WL 2532467, at *6; see Raymond III, 2020 WL 1067482, at *13.  In March 2013, Officer Serrano testified on behalf of the plaintiffs in "a section 1983 class action lawsuit against the City of New York and others alleging that the NYPD had implemented an official municipal policy of unconstitutional and racially discriminatory stops and frisks."  Raymond VII, 2022 WL 2532467, at *6 (citing Floyd v. City of New York, 959 F. Supp. 2d 540, 604 (S.D.N.Y. 2013) ("Floyd")).

---

[3] Unless otherwise noted, all internal citations and quotation marks are omitted from case citations in this Report and Recommendation.

On January 30, 2013, C.O. McCormack learned that Officer Serrano was going to be a witness in the Floyd action, and two days later, Officer Serrano appeared in the NYPD "trial room"[4] to face "allegations regarding a ticket fixing scandal which he received charges on [sic] a year and a half earlier."  (ECF No. 346-1 ¶¶ 163–64).  Officer Serrano "pled guilty to two incidents involving tickets but asked for mitigation as one involved a complaint of discrimination which resulted in the ticket being rescinded[.]"  (Id. ¶ 165).  An NYPD Administrative Judge (the "ALJ") found Officer Serrano guilty as to only one ticket and recommended that he lose 25 vacation days and one year of "dismissal probation."  (Id. ¶¶ 203–16).

Officer Serrano alleges that because of his testimony in Floyd, beginning on February 7, 2013, C.O. McCormack retaliated against him in violation of the First Amendment.  Raymond VII, 2022 WL 2532467, at *7, *17.  On that date, Officer Serrano "claims to have received multiple text messages reporting that C.O. McCormack was upset with him and talking about retribution, and when he was visited by five high-ranking officials (including C.O. McCormack) during his assignment at a 'strike post' . . . a highly unusual occurrence."  Id. at *17.  "On or around the same day, Officer Serrano called the NYPD's Internal Affairs department to report this incident." Id.  After February 7, 2013, "Officer Serrano continued to experience a series of reportedly unwarranted disciplinary actions and unfavorable assignments, some at the direction of C.O. McCormack."  Id.

---

[4] The NYPD "trial room" refers to the forum in which the NYPD Office of the Deputy Commissioner of Trials conducts "fair and impartial de novo disciplinary trials" involving NYPD officers.  See Trials, NYC NEW YORK CITY POLICE DEPARTMENT, https://www.nyc.gov/site/nypd/bureaus/administrative/trials.page (last visited Dec. 1, 2022); see also Uniformed Fire Officers Ass'n v. DeBlasio, No. 20 Civ. 5441 (KPF), 2020 WL 5640063, at *1 (S.D.N.Y. Aug. 21, 2020) (discussing records of command discipline violations "heard in the Trial Room").

"[O]n April 4, 2013, then-Commissioner Kelly issued a memorandum disciplining Officer Serrano for engaging in 'conduct prejudicial to the good order, efficiency or discipline of the Department' by 'assist[ing] in the prevention of the processing and adjudication of two (2) summonses issued to two (2) motorists' in 2010." Raymond VII, 2022 WL 2532467, at *22.  (See ECF No. 338-1 at 8 (the "Discipline Memo")).  According to the Discipline Memo, Commissioner Kelly imposed "the forfeiture of five (5) suspension days to be served, twenty-five (25) vacation days, a total of thirty (30) penalty days and one (1) year [of] dismissal probation, as a disciplinary penalty."  (ECF No. 338-1 at 8; see ECF No. 346-1 ¶¶ 219–20).  See Raymond VII, 2022 WL 2532467, at *22.

Also on April 4, 2013, according to another memo from Commissioner Kelly, Officer Serrano was ordered to be "administrative[ly] transfer[red]" out of the 40th Precinct. (ECF No. 338-1 at 6 (the "Transfer Memo")).  The Transfer Memo stated:

> 1. Police Officer Pedro Serrano [] was recently the subject of Disciplinary Case No. 2011-5852.
> 2.  Separate and apart from the disciplinary process, the Police Commissioner directs that Police Officer Serrano be transferred to a Patrol Borough Manhattan North Precinct enforcement command, subject to the exigencies of the Department.
> 3.  Further, Police Officer Serrano will not be the subject of any future transfer without the explicit approval of the Police Commissioner.
> . . .

(Id.)  First Deputy Commissioner Rafael Pineiro responded to the Transfer Memo as follows:

> . . . Contents noted.  Please note the Police Commissioner's **DIRECTION** to have Police Officer Pedro Serrano [], the subject of Disciplinary Case Nos. 2011-5852, separately and distinctly from the discipline process, immediately transferred to Patrol Borough Manhattan North Precinct Enforcement Command, subject to the exigencies of the Department.  Further, Police Officer Serrano will not be the subject of any future transfer without the explicit approval of the Police Commissioner.  Forwarded for your **NECESSARY ATTENTION**.

(Id. at 7 (the "Endorsement")).  The Endorsement was transmitted to C.O. McCormack and the "Personnel Orders Section[.]"  (Id.)

On or about April 12, 2013, Officer Serrano was transferred from the 40th Precinct to the 33rd Precinct (the "Transfer").  (ECF No. 346-1 ¶ 238; see ECF No. 352-2 at 3 (the "Personnel Order")).[5]  Officer Serrano was not provided a reason for the Transfer, and he did not receive a copy of the Transfer Memo until Defendants produced it on September 19, 2022.  (ECF No. 346-1 ¶¶ 221–22, 238).  Officer Serrano contends that "[a]n administrative transfer is a punitive transfer" under section 320-24 of the NYPD's Administrative Guide, which specifies the procedures a commanding officer must follow when recommending an administrative transfer. (Id. ¶¶ 223–30).

Defendants have disputed C.O. McCormack's involvement in the Transfer, and argued that the "but-for" cause of the Transfer was the disciplinary charges described in the Discipline Memo.  Raymond VII, 2022 WL 2532467, at *21.  The statement in the Transfer Memo, however, that the Transfer was "separate[] and distinct[] from the discipline process," contradicts Defendants' position.  (ECF No. 338-1 at 7).  Informed by the Transfer Memo, Officer Serrano now alleges in the TAC that Commissioner Kelly "was the final authority in all disciplinary matters within the NYPD" and "personally participated, acquiesced[,] condoned, ratified and/or authorized" the unlawful employment practices described in the TAC.  (ECF No. 346-1 ¶ 43).

Following the Transfer, Officer Serrano was listed as "[a]dministratively transferred" on the NYPD Central Personnel Index, signifying that the Transfer was "for poor performance that

---

[5] The Personnel Order states that the Transfer was "effective" April 10, 2013 (ECF No. 352-2 at 3), and in the SAC, Officer Serrano alleged that the Transfer occurred on April 10, 2013.  See Raymond VII, 2022 WL 2532467, at *22.

could not be corrected despite many efforts of the Commanding Officer."  (ECF No. 346-1 ¶¶ 239–40).  Until September 19, 2022, Officer Serrano did not know that "he was barred from any other transfer out of the 33rd Precinct without the explicit approval of the Police Commissioner[.]"  (Id. ¶ 242).  He contends that he "was the only officer in the 40th Precinct that went to the NYPD's Trial Room for allegations of ticket fixing and subsequently received an administrative transfer[,]" which occurred "within two weeks of his testimony in the Floyd matter."  (Id. ¶¶ 243–44).  Officer Serrano alleges that six other officers from the 40th Precinct were similarly situated to him "in every way[,] . . . were each found guilty of fixing multiple tickets without any mitigating factors and received similar penalties[,]" but he "was the only police officer to receive the punitive administrative transfer."  (Id. ¶¶ 288–89; see id. ¶¶ 243–87).  He alleges that his testimony in the Floyd action was "speech protected by the First Amendment[,]" but C.O. McCormack, Commissioner Kelly, and the City caused him to "suffer adverse employment actions" based on his "protected speech."  (Id. ¶¶ 290–94).

In the TAC, Officer Serrano seeks to add Commissioner Kelly and the City to his retaliation claims under the First Amendment, the New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").  (ECF No. 346-1 ¶¶ 304–12).  His First Amendment retaliation claim now alleges that:

> By re-assigning Serrano from his usual patrol assignment to a solitary fixed foot post, inspections by multiple supervisors during a single shift, sending him outside the precinct on details, denying proper leave requests, and punitively transferring Serrano to another precinct where he was assigned to the day tour and lost his night differential pay, all beginning on or about February 7, 2013, defendants McCormack, Kelly and the City of New York, intentionally retaliated against Serrano for protected speech, in violation of Serrano's rights under the 1st Amendment to the United States Constitution.

(Id. ¶ 305).

B. **Procedural Background**

1. **The Prior Complaints**

On August 31, 2015, Plaintiffs filed the original complaint, a purported class action naming as defendants the City, the NYPD, Bratton, O'Neill, and NYPD Bureau Chief Carlos M. Gomez ("Gomez") and seeking declaratory and injunctive relief to redress violations of their First, Fifth, and Fourteenth Amendment rights under 42 U.S.C. §§ 1981 and 1983, and the NYSHRL and NYCHRL, among other claims. (ECF No. 1 at 1–2 (the "Complaint")). In the Complaint, Officer Serrano alleged that he reported to NYPD's Internal Affairs Bureau the "illegal quotas[,]" testified in the Floyd action, and was punished by "low performance evaluations, forced overtime, cancelled time off, threats of termination and punitive postings." (ECF No. 1 ¶¶ 3, 6, 64 (emphasis added)). On December 10, 2015, Plaintiffs filed the AC, the allegations of which were substantively the same as the Complaint. (Compare ECF No. 1 ¶ 1 with ECF No. 30 ¶ 1).

On March 16, 2017, Chief Judge Swain granted Defendants' motion to dismiss the AC and permitted Plaintiffs to seek leave to replead their race discrimination claims under § 1981 and the NYCHRL, First Amendment claims under § 1983, and claim for injunctive relief. Raymond I, 2017 WL 892350, at *1, *8. In their proposed SAC, filed April 7, 2017, Plaintiffs alleged that, on March 20 and 21, 2013, Officer Serrano testified in the Floyd action, and on April 5, 2013, "was ab[]ruptly transferred out of the 40th Precinct without warning, and sent to the 33rd Precinct[,]" the only purposes of which "was to punish Serrano." (ECF No. 66-1 ¶¶ 165–66). On June 27, 2018, Chief Judge Swain granted in part and denied in part Plaintiffs' motion for leave to file the SAC, and as is relevant to the Motion, permitted Officer Serrano to assert a First Amendment retaliation claim against C.O. McCormack based on the "series of retaliatory action[s,]" including

the reassignment to foot patrol, multiple inspections, denied leave requests, threats, and the Transfer.  Raymond II, 317 F. Supp. 3d at 782–84.  On July 11, 2018, Plaintiffs filed the SAC. (ECF No. 87).

Over the course of the next two years, the parties conducted fact discovery, which ended in March 2021.  (ECF No. 268).  Among the documents that Defendants produced in March 2019 was the Personnel Order, which is a six-page list of dozens of NYPD retirements, leaves, deaths, and transfers, including Officer Serrano's Transfer, that reads on the last page, "BY DIRECTION OF THE POLICE COMMISSIONER[,]" and was issued by Arnold S. Wechsler, Deputy Commissioner, Personnel.  (ECF No. 352-2 at 6; see ECF No. 352 at 2).  Defendants also timely produced the Discipline Memo.  (ECF Nos. 338-1 at 8; 352-2).  Defendants assert that Plaintiffs neither made any document requests concerning the Transfer nor asked C.O. McCormack during his deposition any questions about the Transfer.  (ECF No. 352 at 2 (citing ECF Nos. 352-3 – 352-5)).

### 2.  Summary Judgment

Defendants moved for summary judgment dismissing Plaintiffs' claims in the SAC. (ECF No. 275).  As to Officer Serrano's employment discrimination claim based on his 2012 3.0 rating, Chief Judge Swain granted summary judgment for Defendants on the ground that "Officer Serrano has failed to show that his 3.0 annual evaluation constitute[d] a materially adverse employment action[.]"  Raymond VII, 2022 WL 2532467, at *11.  Chief Judge Swain also granted summary judgment for Defendants as to Officer Serrano's Equal Protection retaliation claim against C.O. McCormack based on the EEOC complaint for failure to show that C.O. McCormack knew about that complaint or any "causal connection between that complaint and the proffered retaliatory actions beginning in February 2013."  Id. at *17–19.  As to Officer Serrano's First

9

Amendment retaliation claim against C.O. McCormack, however, Chief Judge Swain concluded that "the record before the Court would permit a reasonable jury to conclude that C.O. McCormack was personally involved in adverse actions against Officer Serrano for which the 'but-for' cause was retaliation in response to Officer Serrano's testimony in <u>Floyd</u>."  <u>Id.</u> at *21. Specifically, Chief Judge Swain found that Defendants had "not met their burden to proffer evidence in support of the proposition that Officer Serrano's [Transfer] was a necessary result of the punishment imposed by Commissioner Kelly or that it would have occurred regardless of his testimony in <u>Floyd</u>."  <u>Id.</u> at *22.

### 3.  <u>Preparation for Trial</u>

As the parties prepared for trial, on September 14, 2022, Defendants filed a motion <u>in limine</u> and a motion to preclude Officer Serrano from discussing at trial the adverse inference (the "Adverse Inference") the Court imposed following Defendants' failure to preserve a key document in this action.  (ECF Nos. 331; 334 (the "AI Motion")).  <u>See also</u> <u>Raymond V</u>, 2020 WL 3619014, at *1 (overruling Defendants' objections to Adverse Inference); <u>Raymond IV</u>, 2020 WL 1847556, at *1 (denying Defendants' motion to reconsider Adverse Inference); <u>Raymond III</u>, 2020 WL 1067482, at *15 (imposing the Adverse Inference).

On September 19, 2022, 18 months after the close of fact discovery and after the deadline for the parties to meet and confer about trial exhibits and file motions <u>in limine</u>, Defendants' counsel informed Plaintiffs that, pursuant to a search of the NYPD Personnel Orders Section conducted after <u>Raymond VII</u>, they had located eight pages of additional documents relating to Officer Serrano's Transfer (the "Additional Documents")).  (ECF No. 338-1 at 9–10).  Included in the Additional Documents were the Transfer Memo and the Endorsement.  (<u>Id.</u> at 6–7).  After

receiving the Additional Documents, on September 21, 2022, Plaintiffs asked the Court to reserve judgment on the AI Motion until they could "put all issues before the Court." (ECF No. 337 at 1).

On September 26, 2022, Plaintiffs filed a letter-motion requesting a pre-motion conference or to set a briefing schedule for a motion for leave to amend "to add facts and parties to this action, for sanctions against the Defendants and to preclude Defendants from offering" the Additional Documents as evidence. (ECF No. 338 at 1 (the "Letter-Motion")). On September 29, 2022, Defendants responded to the Letter-Motion, opposing Plaintiffs' request for leave to amend and arguing against the imposition of sanctions. (ECF No. 341). On October 11, 2022, the Court heard argument from the parties, reserved decision on the AI Motion, set a briefing schedule for Plaintiffs' motion for leave to amend, and denied without prejudice Plaintiffs' request for sanctions. (ECF Nos. 344–45; 349–50). Pending resolution of the Motion and the Letter-Motion, Chief Judge Swain adjourned the parties' pretrial submission deadlines and the final pretrial conference. (ECF No. 340).

On October 21, 2022, the Court denied the AI Motion. O'Toole I, 2022 WL 13826120, at *7. (See ECF No. 347 at 12–15). The same day, Plaintiffs filed the Motion, and the next day, asked the Court, if it denied the Motion, to preclude Defendants from relying on the Additional Documents. (ECF Nos. 347; 348 (the "Preclusion Motion")). On October 24, 2022, the Court denied the Preclusion Motion without prejudice, pending resolution of the Motion. (ECF No. 351). On October 26, 2022, Defendants opposed the Motion, (ECF Nos. 352 – 352-7), and on November 4, 2022, Plaintiffs filed a reply. (ECF No. 354). At the Court's direction, Plaintiffs subsequently provided a redlined version of the TAC. (ECF Nos. 356; 356-1; 357).

On November 14, 2022, the Court heard oral argument on the Motion.  (ECF Nos. 355; ECF min. entry Nov. 14, 2022).  Following argument, the Court instructed Plaintiffs to advise Defendants whether they intended to continue to assert claims under the NYSHRL and NYCHRL, and Defendants to advise the Court whether they would consent to the TAC and limited related discovery.  (ECF No. 358; see ECF No. 361).  On November 17, 2022, Defendants notified the Court that they continued to oppose the Motion, and that Plaintiffs planned to continue to assert the NYSHRL and NYCHRL claims.  (ECF No. 360).

### III. DISCUSSION

#### A. Legal Standard

##### 1. Rule 15(a)(2)

Determining whether a motion to amend is governed by Federal Rule of Civil Procedure 15(a)(2) or by Federal Rule of Civil Procedure 16 turns on whether "the motion is timely filed under [the] scheduling order in place in th[e] action.  If it is timely filed, only Rule 15's liberal standard governs; if it is not, [the moving party] must also show good cause for the amendment under Rule 16."  Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (requiring motion to amend filed after court-ordered deadline to meet requirements of both Rule 15(a)(2) and Rule 16(b)(4)); see Pilkington N. Am., Inc v. Mitsui Sumitomo Ins. Co. of Am., No. 18 Civ. 8152 (JFK), 2021 WL 4991422, at *5 (S.D.N.Y. Oct. 27, 2021) ("[T]he Second Circuit [has] recognized that 'the Rule 16(b) good cause standard, rather than the more lenient standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings.'") (quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)).  Thus, "[t]he period of 'liberal' amendment [under Rule 15] ends if the

district court issues a scheduling order setting a date after which <u>no amendment</u> will be permitted." <u>Sacerdote v. New York Univ.</u>, 9 F.4th 95, 115 (2d Cir. 2021) (emphasis added), <u>cert. denied,</u> 142 S. Ct. 1112 (2022).

Defendants do not point to, nor does the docket reflect, any Court order setting a deadline to amend, <u>i.e.</u>, a "date after which all amendments were prohibited, which would have triggered the stricter Rule 16(b)(4) 'good cause' standard thereafter." <u>Sacerdote</u>, 9 F.4th at 115. (<u>See</u> <u>generally</u> ECF No. 352).   Accordingly, the Court concludes that only the standard in Rule 15(a)(2) applies to the analysis of the TAC.  <u>See</u> <u>Cherotti v. Exphand, Inc.</u>, No. 20 Civ. 11102 (SLC), 2022 WL 2108604, at *6 (S.D.N.Y. June 10, 2022) (where case management plan set no deadline for amending pleadings, holding that only Rule 15(a)(2) applied to proposed amendments).

Rule 15(a)(2) provides that a court "should freely give leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities." <u>Monahan v. N.Y.C. Dep't of Corr.</u>, 214 F.3d 275, 283 (2d Cir. 2000).  The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." <u>Friedl v. City of New York</u>, 210 F.3d 79, 87 (2d Cir. 2000); <u>see</u> <u>also</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.").  "Consistent with the liberal principles underlying Rule 15(a)(2), the party opposing the amendment has the burden of establishing that leave to amend would be unduly prejudicial or futile." <u>Pilkington</u>, 2021 WL

4991422, at *5 (citing Ho Myung Moolsan Co. v. Manitou Min. Water, Inc., 665 F. Supp. 2d 239, 250 (S.D.N.Y. 2009)).

"An amendment is futile if the new claim could not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Case v. Clivilles, No. 12 Civ. 8122 (TPG), 2016 WL 5818577, at *4 (S.D.N.Y. Oct. 4, 2016) (citing Polanco v. NCO Portfolio Mgmt., Inc., 23 F. Supp. 3d 363, 369 (S.D.N.Y. 2014)).  Pursuant to Rule 12(b)(6), a pleading fails to state a claim if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In deciding whether Plaintiffs' amendments state a plausible claim, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." Polanco, 23 F. Supp. 3d at 369.  "The Court need not accept as true conclusory statements or allegations, which are insufficient to defeat a motion to dismiss." Case, 2016 WL 5818577, at *5.

### 2. Rule 21

Federal Rule of Civil Procedure 21 governs misjoinder and joinder of parties, and authorizes a court, "at any time, on just terms, [to] add or drop a party." Fed. R. Civ. P. 21.  "The same liberal standard for amending pleadings under Rule 15(a) applies to the joinder of parties under Rule 21[,]" but "a motion to join additional parties is subject to the 'good cause' requirement of Rule 16([b]) if the time to join additional parties has expired." Kleeberg v. Eber, 331 F.R.D. 302, 315 (S.D.N.Y. 2019).  "In exercising its discretion under Rule 21, the court must consider principles of fundamental fairness and judicial efficiency.  As part of this inquiry, the court should consider whether an order under Rule 21 would prejudice any party, or would result

in undue delay."  In re Merrill Lynch & Co., Rsch. Reps. Sec. Litig., 214 F.R.D. 152, 155 (S.D.N.Y. 2003).

### 3.  Rule 15(c)

Under Rule 15(c), an amendment to a pleading may relate back to an earlier pleading for statute of limitations purposes if certain conditions exist.  Fed. R. Civ. P. 15(c).  An amended claim that "arose out of the conduct, transaction, or occurrence set out--or attempted to be set out-- in the original pleading" is timely.  Fed. R. Civ. P. 15(c)(1)(B).  An amendment that seeks to add or change a defendant is timely under Rule 15(c)(1)(C) if the claim "1) satisfies the requirements of Fed. R. Civ. P. 15(c)[(1)(B)], 2) the proposed defendant has received notice within the period required for service of the summons and complaint, 3) the proposed defendant will not be prejudiced, and 4) the proposed defendant knew or should have known that but for a mistake as to the identity of the proper party, he would have been named."  Bond v. Nolan, No. 89 Civ. 0357 (JFK), 1994 WL 132139, at *2 (S.D.N.Y. Apr. 11, 1994); see Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 541 (2010) ("Where an amended pleading changes a party or a party's name, [Rule 15(c)] requires, among other things, that 'the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity'") (quoting Rule 15(c)(1)(C)); Dunham v. City of New York, No. 11 Civ. 1223 (ALC) (HBP), 2014 WL 1760330, at *3 (S.D.N.Y. May 2, 2014) ("Dunham I"); Fed. R. Civ. P. 15(c)(1)(C)(i), (ii).[6]  The Supreme Court has explained "that relation back under Rule

---

[6] Rule 15(c)(1)(C) permits relation back where "the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:  (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should

15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." Krupski, 560 U.S. at 541.

**B.  Application**

Officer Serrano alleges that he did not discover the facts regarding Commissioner Kelly's involvement in the Transfer until September 19, 2022, when Defendants produced the Additional Documents, which included the Transfer Memo and the Endorsement.  (ECF No. 346 at 1).  Having filed the Motion within a month of that date, Officer Serrano argues that amendment is timely, "in the interest of justice," and not prejudicial to Defendants, who have known about Commissioner Kelly's involvement in the Transfer for nine years.  (Id. at 3).  Defendants oppose the Motion on the grounds that (1) the claims against Commissioner Kelly are untimely and do not relate back to the Complaint; (2) Officer Serrano fails to state a viable claim and therefore amendment is futile; and (3) Defendants would be prejudiced by the amendment.  (ECF No. 352 at 3–11).

**1.  Rules 15(a)(2) and 21**

The Court finds that Defendants have not met their burden to show that there is "good reason" to deny the Motion based on bad faith, undue delay, futility, or prejudice.  McCarthy, 482 F.3d at 200; see Cherotti, 2022 WL 2108604, at *7 (citing McCarthy and granting leave to amend); Suarez v. California Nat. Living, Inc., No. 17 Civ. 9847 (VB), 2019 WL 5188952, at *2–3 (S.D.N.Y. Oct. 15, 2019) (combining analysis of proposed amendment under Rules 15(a)(2) and

---

have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).

21).  The Court first considers the interrelated questions of bad faith and undue delay, before turning to Defendants' various futility arguments, and prejudice.

### a. <u>Bad faith and undue delay</u>

Defendants argue that Officer Serrano has not provided a "'valid reason for his neglect and delay' in waiting until the eve of trial to amend."  (ECF No. 352 at 10 (quoting <u>Am. Med. Ass'n v. United Healthcare Corp.</u>, No. 00 Civ. 2800 (LMM), 2006 WL 3833440, at *3 (S.D.N.Y. Dec. 29, 2006))).

 To the contrary, however, Officer Serrano has demonstrated that, until Defendants produced the Additional Documents, which contained the Transfer Memo, he was not aware that Commissioner Kelly <u>personally</u> directed his Transfer.  (ECF No. 338-1 at 6).  Although the Personnel Order also contains the notation, "BY DIRECTION OF THE POLICE COMMISSIONER[,]" it lists Officer Serrano's Transfer as but one of dozens of apparently routine transfers within the NYPD.  (ECF No. 352-2 at 6; <u>see</u> <u>id.</u> at 2–4).  In addition, in contrast to the Transfer Memo, which contains Commissioner Kelly's personal signature and stamp, the Personnel Order was issued by the Deputy Commissioner for Personnel, not Commissioner Kelly, whose signature or stamp do not appear.  (<u>Compare</u> ECF No. 338-1 at 6 <u>with</u> ECF No. 352-2 at 6).  The Personnel Order thus did not give Officer Serrano any reason to think that Commissioner Kelly had any <u>personal</u> involvement in his Transfer as should have spurred him to seek additional discovery or leave to amend sooner.

Defendants also contend that Officer Serrano has a "dilatory motive . . . to forestall the upcoming trial because his First Amendment claim against [C.O.] McCormack based upon his [T]ransfer is unlikely to succeed."  (ECF No. 352 at 11).  Nonsense.  Officer Serrano complained in

the Complaint that the NYPD retaliated against his exercise of his First Amendment rights by subjecting him to, among other things, "punitive postings[,]" (ECF No. 1 ¶ 64), and has specifically complained about the Transfer since the SAC, in April 2017.  (ECF No. 66-1 ¶ 166 ("The only purpose of the [T]ransfer was to punish Serrano.")).  Despite these allegations, Defendants failed to conduct a timely search of an utterly obvious source for documents about the Transfer; it is hard to imagine a more logical place to search for documents about personnel changes than a place called the "Personnel Orders Section[.]"  (ECF No. 338-1 at 6 (Transfer Memo copied to Personnel Orders Section); id. at 9–10 (Defendants' counsel admitting that Personnel Orders Section was not searched until July 2022)).  It takes a certain temerity for Defendants to produce, without apology, 18 months after the end of fact discovery and on the eve of trial, documents so critical to explaining why and how Officer Serrano's Transfer occurred, and yet accuse Plaintiffs of bad faith or dilatory tactics.

Even if the Transfer Memo exonerates C.O. McCormack from any liability with respect to the Transfer, C.O. McCormack allegedly engaged in plenty of other behavior that could support Officer Serrano's First Amendment retaliation claim against him, such as "stalk[ing] him at the precinct when he was testifying" in Floyd, "overs[eeing] the trashing of his locker," among other incidents. (ECF No. 349 at 18–19; see, e.g., ECF No. 356-1 ¶¶ 167–79, 201–02).  Chief Judge Swain recognized that "a reasonable jury [could] conclude that C.O. McCormack was personally involved in adverse actions against Officer Serrano for which the 'but-for' cause was retaliation in response to Officer Serrano's testimony in Floyd."  Raymond VII, 2022 WL 2532467, at *21 (emphasis added).  Thus, even if C.O. McCormack was not responsible for the Transfer, the jury has other plausible grounds to hold him liable on Officer Serrano's First Amendment retaliation

claim, and Defendants have failed to show that Plaintiffs have a "dilatory motive" in proposing the TAC.  (ECF No. 352 at 11).

Defendants' suggestion that Plaintiffs unduly delayed seeking leave to amend requires little additional attention.  Defendants produced the Additional Documents on September 19, 2022, Plaintiffs brought the matter to the Court's attention on September 21, 2022, requested that Chief Judge Swain grant leave to amend on September 26, 2022, and filed the Motion less than two weeks after the Court set a briefing schedule.  (ECF Nos. 338-1 at 9; 337 at 1; 338 at 1; 345; 346).  Am. Med. Ass'n, 2006 WL 3833440, at *4 (finding that plaintiffs did not unreasonably delay seeking to amend based on documents produced in discovery).  That the Motion comes as the parties expected they would be engaged in final preparations for trial is solely the result of Defendants' actions, and is not the result of undue delay by Plaintiffs.

### b.  Futility

"An amendment is futile if the claims plaintiff seeks to assert would not survive a motion to dismiss under Rule 12(b)(6)."  Dunham v. Oliver, No. 11 Civ. 1223 (ALC) (SLC), 2019 WL 5540965, at *4 (S.D.N.Y. Oct. 28, 2019) ("Dunham II") (citing Dunham I, 2014 WL 1760330, at *1). Defendants challenge, both on timeliness grounds as well as on the merits, Officer Serrano's First Amendment retaliation claim against Commissioner Kelly, as well as his request to "revive" his municipal liability claim against the City.  (ECF No. 352 at 6–9).  Defendants also argue that Officer Serrano can no longer allege a plausible First Amendment retaliation claim against C.O. McCormack, and ask the Court to abstain from hearing the NYSHRL and NYCHRL claims.  (Id. at 9–10).  The Court addresses first the timeliness question, before addressing the sufficiency of

Officer Serrano's allegations in the TAC as against each of Commissioner Kelly, the City, and C.O. McCormack.

### i.   Timeliness

"Section 1983 actions filed in New York are . . . subject to a three-year statute of limitations[,]" and accrue "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Hogan v. Fischer, 738 F.3d 509, 517–18 (2d Cir. 2013). Because the Transfer occurred on April 4, 2013 (ECF No. 346-1 ¶ 238), the three-year limitations period expired on April 4, 2016, and Officer Serrano's claims against Commissioner Kelly are time-barred unless they relate back to the timely-filed Complaint under Rule 15(c). See Krupski, 560 U.S. at 541 (explaining that Rule 15(c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable limitations period").

As noted above, the TAC will be timely if Officer Serrano's new claims against Commissioner Kelly and the City "'1) satisf[y] the requirements of Fed. R. Civ. P. 15(c)[(1)(B)], 2) the proposed defendant has received notice within the period required for service of the summons and complaint, 3) the proposed defendant will not be prejudiced, and 4) the proposed defendant knew or should have known that but for a mistake as to the identity of the proper party, [he] would have been named.'" Dunham II, 2019 WL 5540965, at *5 (quoting Bond, 1994 WL 132139, at *2). The Court finds that each of these factors is met here.

First, Officer Serrano's First Amendment retaliation claims against Commissioner Kelly and the City "arose out of the conduct[,] transaction or occurrence set forth in the" Complaint. Fed. R. Civ. P. 15(c)(1)(B). In the Complaint, Officer Serrano alleged that, because he reported to

NYPD's Internal Affairs Bureau the "illegal quotas" for arrests, summonses, and tickets, and testified in the <u>Floyd</u> action, he was punished by "low performance evaluations, forced overtime, cancelled time off, threats of termination and <u>punitive postings</u>."  (ECF No. 1 ¶¶ 3, 6, 64 (emphasis added)).  Similarly, in the TAC, Officer Serrano alleges that the Transfer was "punitive" in retaliation for his speaking out about the quotas and <u>Floyd</u> testimony.  (ECF No. 346-1 ¶¶ 38, 289–94, 305).  Although the Transfer was not specifically listed in the Complaint as one of the "punitive postings," the Complaint was sufficient to put Defendants on notice that Officer Serrano was alleging that the transfers to which the NYPD subjected him, including <u>the</u> Transfer, were in retaliation for his reporting of the "illegal quotas" and testimony in the <u>Floyd</u> action and therefore violated his First Amendment rights.  <u>See</u> <u>Triano v. Town of Harrison</u>, 895 F. Supp. 2d 526, 530 n.3 (S.D.N.Y. 2012) (finding Rule 15(c)(1)(B) satisfied where amended pleading shared "common core of operative facts" with original pleading).  Therefore, the First Amendment retaliation claims against Commissioner Kelly and the City "'arose out of the conduct, transaction or occurrence' discussed in the initial pleading[,]" and the first factor is met.  <u>Alston v. Bellerose</u>, No. 12 Civ. 147 (CSH), 2016 WL 554770, at *2 (S.D.N.Y. Feb. 11, 2016).  Because the City was named as a Defendant in the Complaint, Officer Serrano has shown all he needs to show for the claims against the <u>City</u> in the TAC to relate back.  <u>See</u> <u>Dunham II</u>, 2019 WL 5540965, at *6 (where City was named as defendant in original complaint, plaintiff needed to satisfy only Rule 15(c)(1)(B)).

      As to Commissioner Kelly, the Court considers the second and third factors together and finds that Commissioner Kelly had adequate notice of Officer Serrano's First Amendment retaliation claims within the period required for service of the summons and Complaint, and will

not be prejudiced by joining the action now.  As other courts in this District have recognized, where a municipal "defendant will be represented by the same attorney as previously identified [municipal] defendants, notice to the earlier defendants can be imputed to the later defendants where 'the attorney knew or should have known that the additional defendant would be added to the existing suit.'"  Alston, 2016 WL 554770, at *3 (quoting Byrd v. Abate, 964 F. Supp. 140, 146 (S.D.N.Y. 1997)).  Here, Defendants' counsel should have been aware, based on the records in the Personnel Orders Section, that Commissioner Kelly was responsible for one of the "punitive postings" that Officer Serrano was challenging in the Complaint.  Alston, 2016 WL 554770, at *3. (See ECF No. 1 ¶¶ 3, 6, 64).  Commissioner Kelly, having signed the Transfer Memo, certainly knew of his own role in moving Officer Serrano within the NYPD; that he played a role was a fact "particularly within" the purview of Defendants' counsel to ascertain once the Complaint was filed.  Alston, 2016 WL 554770, at *3.  Other courts in this District have been similarly unsympathetic to professions of lack of knowledge by City defendants where, as here, the identity of those defendants "was information uniquely accessible to Corporation Counsel." Byrd, 964 F. Supp. at 147; see Alston, 2016 WL 554770, at *3 (noting that it was "almost an expression of temerity" for City defendants to argue that plaintiff's request to substitute defendants where their identities was uniquely within defendants' knowledge).[7]

---

[7] The Second Circuit's holding in Barrow v. Weatherfield Police Department that "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities" does not govern here for three reasons.  66 F.3d 466, 470 (2d Cir. 1995).  First, Barrow involved a plaintiff seeking to replace "John Doe" defendants with named individuals, which is not the circumstance here.  Id. at 468.  Second, subsequent to Barrow, the Supreme Court has explained that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading[,]" Krupski, 560 U.S. at 541, thus casting doubt on the continued viability of Barrow's holding.  See Smith v. City of New York, 1 F. Supp. 3d 114, 120–21 (S.D.N.Y. 2013) (noting that "District courts in this Circuit have disagreed on the vitality of Barrow in the wake of

Furthermore, Defendants' suggestion that Officer Serrano has not been diligent in pursuing discovery about who ordered the Transfer lacks merit.  (ECF No. 352 at 4–6).  While Defendants cherry-pick from Plaintiffs' document requests and portions of C.O. McCormack's deposition transcript to try to show that Officer Serrano did not diligently ask about his Transfer (see ECF Nos. 352-3 – 352-5), the fact of the matter is that, throughout this litigation, the Transfer and who caused it has been a key disputed issue and Officer Serrano has diligently sought discovery to support his claims.  See Raymond VII, 2022 WL 2532467, at *21 (finding that questions of fact as to Officer Serrano's Transfer precluded summary judgment); Raymond II, 317 F. Supp. 3d at 756 (noting that Plaintiffs' allegations included "punitive postings and punitive transfers"); Raymond I, 2017 WL 892350, at *1 (same).  (See also ECF Nos. 155–58 (Plaintiffs' motions for sanctions against Defendants for wrongful conduct throughout discovery)).  Defendants' counsel "certainly knew that [Commissioner Kelly] would have been named as a defendant well before the limitations period ended, but for [Plaintiffs'] inability to obtain this information from [Defendants'] Counsel itself."  Byrd, 964 F. Supp. at 147.  Similarly, because Commissioner Kelly is being represented by the same counsel who has been representing Defendants throughout this case, the Court has adjourned all pretrial deadlines sine die, and the Court can, and will, circumscribe any remaining necessary discovery, Commissioner Kelly "will

---

Krupski" and agreeing with courts holding that Krupski overruled Barrow).  Third, "[u]nlike the plaintiff in Barrow, [Officer Serrano] did not disobey repeated court orders to identify defendants; he reasonably believed that Defendants were forthcoming with evidence regarding the identities of" the individuals involved in the Transfer, and named other NYPD leadership (Bratton, O'Neill, and Gomez), "rather than simply relying upon Doe placeholders."  Roland v. McMonagle, No. 12 Civ. 6331 (JPO), 2014 WL 2861433, at *4 n.3 (S.D.N.Y. June 24, 2014) (finding that claims against new defendants related back under Rule 15(c)(1)(C) and granting leave to amend).  Finally, even if Barrow remains viable, "courts have fashioned an exception" to its holding in circumstances where information as to defendants' identities "is particularly within the defendant's knowledge" and the plaintiff diligently sought their identities and leave to amend.  Alston, 2016 WL 554770, at *3.

not be unduly prejudiced by allowing the amendment[.]"  Dunham II, 2019 WL 5540965, at *7;
see A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)
("Allegations that an amendment will require the expenditure of additional time, effort, or
money do not constitute 'undue prejudice.'").

Fourth and finally, having ordered Officer Serrano's Transfer and written the Transfer
Memo, Commissioner Kelly, "'knew or should have known that but for a mistake as to the identity
of the proper party, [he] would have been named.'"  Dunham II, 2019 WL 5540965, at *5 (quoting
Bond, 1994 WL 132139, at *2).  In the Complaint, Officer Serrano named other NYPD leadership,
but not Commissioner Kelly, who held senior positions at the time of the "punitive postings."
(ECF No. 1 ¶¶ 45–47, 64).  The Complaint therefore "made clear that [Officer Serrano] meant to
sue" the NYPD leaders who were responsible for subjecting him to, among other things, punitive
transfers in retaliation for his exercise of his First Amendment rights, and therefore,
Commissioner Kelly "had 'constructive notice' of [Officer Serrano's] complaint within the
Rule 4(m) period."  Krupski, 560 U.S. at 555.

*     *     *

Accordingly, the Court finds that the First Amendment retaliation claims against
Commissioner Kelly and the City relate back to the Complaint and are therefore timely.

### ii.   Plausibility of Claims Against Commissioner Kelly

Defendants assert that Officer Serrano has failed to allege that Commissioner Kelly was
aware of his Floyd testimony at the time of the Transfer, and that "temporal proximity" is
insufficient to establish but-for causation.  (ECF No. 352 at 8).  Defendants maintain that, because
Officer Serrano testified in the Floyd action before he appeared in the Trial Room on February 1,

2013 and before the ALJ's disciplinary decision on March 4, 2013, "he is unable to plausibly allege a 'but-for' causal connection." (Id.)  Officer Serrano responds that "the punitive actions of Commissioner Kelly occurred just two (2) weeks after [he] engaged in protected activity[,]" i.e., testimony in the Floyd action, while Commissioner Kelly took no punitive action against the other officers from the 40th Precinct. (ECF No. 354 at 3).  He contends that, under Chief Judge Swain's holding in Raymond II, these allegations are sufficient to plead a plausible First Amendment retaliation claim. (Id.)

    A plaintiff alleging First Amendment retaliation claim must plausibly allege that "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).  This "causal connection" requires a plaintiff to show that the adverse action "would not have occurred in the absence of—that is, but for—the defendant's conduct." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 346–47 (2013); see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286–87 (1977) (rejecting "motivating factor" test and requiring but-for causation for First Amendment retaliation claim).

    Plaintiffs' allegations of the temporal proximity between Officer Serrano's Floyd testimony and Commissioner Kelly's decision to order the Transfer are virtually identical to those Chief Judge Swain found sufficient to plead a plausible inference of but-for causation in Raymond II. 317 F. Supp. 3d at 782–83.  In the SAC, which Chief Judge Swain analyzed in Raymond II, Plaintiffs alleged that the Transfer "occurred within a month of Serrano's protected speech," which constituted "'temporal proximity [that was] strong circumstantial evidence of

improper intent.'"  Id. at 783 (quoting Stajic v. City of New York, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016)).  Similarly, in the TAC, Officer Serrano alleges that he testified in the Floyd action on March 20 and 21, 2013, and the Transfer occurred less than two weeks later.  (ECF No. 356-1 ¶¶ 217, 221).  Although "[t]here is no bright line for how close in time the adverse employment action must follow the protected activity in order to sustain the causation element[,]" this two-week period is far more proximate than the five- to six-month period that many courts in the Second Circuit have deemed sufficient.  Anderson v. State of N.Y., Office of Ct. Admin., 614 F. Supp. 2d 404, 430 (S.D.N.Y. 2009) (recognizing "substantial authority holding that a period between five and six months is sufficient").  The temporal proximity between Officer Serrano's testimony and the Transfer remains "strong circumstantial evidence of improper intent[.]"  Stajic, 214 F. Supp. 3d at 235.  Accordingly, the Court finds that Plaintiffs have "alleged facts that could support a reasonable finding of a causal connection between his protected speech and the adverse employment action."  DePace v. Flaherty, 183 F. Supp. 2d 633, 638 (S.D.N.Y. 2002).

Finally, Defendants argue that Officer Serrano is not similarly situated to the other officers in the 40th Precinct who engaged in ticket fixing but were not transferred.  (ECF No. 352 at 8–9). They contend that Officer Serrano cannot allege a plausible retaliation claim because the "'obvious alternative explanation'" for Commissioner Kelly's decision to order the Transfer was that Officer Serrano had a "far worse record" warranting a different disciplinary penalty.  (Id. (quoting Iqbal, 556 U.S. at 682)).  Defendants' argument, however, is contradicted by Commissioner Kelly's own statement in the Transfer Memo that the Transfer was "[s]eparate and apart from the disciplinary process[.]"  (ECF No. 338-1 at 6).  Because the Transfer Memo severs the Transfer from any discipline Commissioner Kelly was seeking to impose on Officer Serrano

for ticket fixing, Defendants have not offered an "obvious alternative explanation" for the Transfer that would undermine Officer Serrano's First Amendment retaliation claim.  Iqbal, 556 U.S. at 682.

Accordingly, the Court finds that Officer Serrano has plausibly alleged a First Amendment retaliation claim against Commissioner Kelly.

### iii.    Plausibility of Claims Against The City

Defendants oppose Officer Serrano's attempt to reassert[8] a municipal liability claim against the City on two grounds:  (i) he fails to meet the due diligence standard for reconsideration under Rule 54(b), and (ii) Commissioner Kelly did not have final policymaking authority and therefore cannot support the City's municipal liability.  (ECF No. 352 at 6–7).  The Court disposes of the first argument easily; even assuming that the Rule 54(b) standard applies and required Officer Serrano to show that he could not have discovered the new evidence on which he bases his claim against the City (the Transfer Memo and the Endorsement) "despite the exercise of due diligence[,]" and that "manifest injustice will result" if the Court does not consider the claim, Officer Serrano has satisfied this standard.  Geo-Grp. Commc'ns, Inc. v. Shah, No. 15 Civ. 1756 (KPF), 2020 WL 5743516, at *10 (S.D.N.Y. Sept. 25, 2020), reconsideration denied, 2020 WL 6729181 (S.D.N.Y. Nov. 16, 2020).  As explained above, the City's failure to timely search the Personnel Orders Section for documents relevant to Officer Serrano's Transfer is inexplicable and beyond his control.  (See § III.B.1.a, supra).  In addition, because the Transfer Memo directly implicates Commissioner Kelly in the Transfer, which was distinguished from any disciplinary

---

[8] Officer Serrano's original claim against the City was dismissed in Raymond I, 2017 WL 892350, at *8, and in Raymond II, Chief Judge Swain permitted him to assert a First Amendment retaliation claim against C.O. McCormack only.  317 F. Supp. 3d at 783.

action for ticket fixing, Officer Serrano has shown "that the new evidence is 'of such importance that it probably would have changed the outcome'" of Chief Judge Swain's consideration of the City's municipal liability for First Amendment retaliation in the first instance.  JP Morgan Chase Bank, N.A. v. Reifler, No. 11 Civ. 4016 (DAB), 2013 WL 12177061, at *3 (S.D.N.Y. Sept. 20, 2013) (quoting Vincent v. Money Store, No. 03 Civ. 2876 (JGK), 2011 WL 4501325, at *9 (S.D.N.Y. Sept. 29, 2011), aff'd in part, vacated in part on other grounds, 736 F.3d 88 (2d Cir. 2013)).

Turning to the merits of Officer Serrano's claim against the City, "[a] municipality may not be held liable under Section 1983 'unless action pursuant to official municipal policy of some nature caused a constitutional tort.'"  Dunham II, 2019 WL 5540965, at *5 (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978)).  "To prevail on a Monell claim against a municipality under Section 1983 based on the acts of a public official, a plaintiff must prove: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.'"  Dunham II, 2019 WL 5540965, at *5 (quoting Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008)).

The purpose of the fifth element of a Monell claim "is to ensure that a municipality is 'not [] held liable under § 1983 solely because it employs a tortfeasor.'"  Dunham II, 2019 WL 5540965, at *5 (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997)).  The plaintiff must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  Kucharczyk v. Westchester Cnty., 95 F. Supp. 3d 529, 538 (S.D.N.Y. 2015).  To establish a policy or custom, the plaintiff must allege:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that

> caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Id. at 538–39 (quoting Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)). In general, "[p]roof of a single incident of constitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy" that "can be attributed to a municipal policymaker." Okla. City v. Tuttle, 471 U.S. 808, 823–24 (1985); see Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) (explaining that "[a] single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation"). The Second Circuit has recognized, however, that a "'single unlawful discharge, if ordered by a person whose edicts or acts may fairly be said to represent official policy,' can, by itself, support a claim against a municipality." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 128 (2d Cir. 2004) (quoting Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983)).

Defendants' challenge to Officer Serrano's Monell claim focuses on the fifth element, i.e., that he has failed to allege a policy or custom and that Commissioner Kelly did not exercise "final policymaking authority" in directing the Transfer. (ECF No. 352 at 7–8 (citing Agosto v. N.Y. City Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020))). Defendants rely on a recent First Amendment retaliation case in which the Honorable Sidney H. Stein noted prior authority that "[t]he [New York City] Charter vests policymaking authority with respect to personnel decisions with the [Department of Citywide Administrative Services Commissioner.]'" Buchanan v. City of New York,

556 F. Supp. 3d 346, 364 n.7 (S.D.N.Y. 2021); see Littlejohn v. City of New York, 795 F.3d 297, 315

(2d Cir. 2015); Soto v. Schembri, 960 F. Supp. 751, 759 (S.D.N.Y. 1997) (for Monell liability,

plaintiffs must demonstrate "that the officials identified in the action have final policymaking

authority such that they can subject the municipality to suit").

Plaintiffs respond by pointing out that, at the time of the Transfer, the City designated

Commissioner Kelly as an employee with "substantial policy discretion[,]" i.e., a "policymaker[.]"

(ECF No. 354 at 3 (citing Substantial Policy Discretion, NYC CONFLICTS OF INTEREST BOARD,

https://www.nyc.gov/site/coib/public-documents/policymaker-lists.page (last visited Dec. 1,

2022)); see ECF No. 354-2 at 93).  Plaintiffs also invoke the Supreme Court's holding in Pembaur

v. City of Cincinnati "that municipal liability may be imposed for a single decision by municipal

policymakers under appropriate circumstances[,]" such as where "the decision to adopt a

particular course of action is directed by those who establish governmental policy[,]" in which

case "the municipality is equally responsible whether that action is to be taken only once or to

be taken repeatedly."  475 U.S. 469, 480–81 (1986).  (ECF No. 354 at 3).

The Court finds that Officer Serrano has adequately alleged a Monell claim against the

City based on Commissioner Kelly's ordering of the Transfer.  First, as Chief Judge Swain has

previously held in this case, an NYPD Commissioner is "the chief policy maker for the NYPD at the

time" of his tenure.  Raymond II, 317 F. Supp. 3d at 782 (holding that Commissioners "Bratton

and O'Neill's implicit instruction to crack down or retaliate against the person thought to be

recording or reporting on others on July 20, 2015, supports a Monell claim against the City for

the retaliatory conduct against Gonzalez").  Second, Officer Serrano has plausibly alleged here

that Commissioner Kelly "possesse[d] final authority to establish municipal policy with respect to

the action ordered[,]" i.e., the Transfer.  Pembaur, 475 U.S. at 481.  Not only did Commissioner

Kelly order the Transfer, but he also stated that "Officer Serrano will not be the subject of any

future transfer without the explicit approval of the Police Commissioner[,]" making it clear that

Commissioner Kelly (and his successors) had final authority as to any future transfer of Officer

Serrano.  (ECF No. 338-1 at 6 (emphasis added)).  He therefore "made a deliberate choice to

follow a course of action that resulted in the constitutional deprivation [Officer Serrano allegedly]

suffered."  Hines v. Albany Police Dep't, 520 F. App'x 5, 8 (2d Cir. 2013) (summary order).  Finally,

Defendants' reliance on other cases holding that DCAS was the relevant policymaking authority

(ECF No. 352 at 7), is misplaced, given the contents of the Transfer Memo and the absence of any

documentary evidence showing that DCAS had anything to do with the Transfer.

 Accordingly, the Court finds that Officer Serrano has plausibly alleged a Monell claim

against the City based on Commissioner Kelly's ordering Officer Serrano's Transfer.

### iv. Plausibility of Claims Against C.O. McCormack

 In the Motion, Plaintiffs state "that it was not [C.O] McCormack who administratively

transferred [Officer] Serrano . . . but it was [Commissioner] Kelly who was responsible for the

punitive transfer of [Officer Serrano] to the 33rd Precinct."  (ECF No. 346 at 2; see ECF No. 349 at

18 (Plaintiffs' counsel stating "if this document [the Transfer Memo] exonerates McCormack as

the [D]efendants claim, and the actual person that's responsible for the First Amendment

retaliation is Commissioner Kelly which it says on this memo, he should be added as a party.")).

Defendants note that, despite this statement, in the TAC Officer Serrano appears to continue to

assert a First Amendment retaliation claim against C.O. McCormack based on the Transfer.

(ECF No. 352 at 9 (citing ECF No. 346-1 ¶ 305)).

Based on Plaintiffs' statements that Commissioner Kelly, not C.O. McCormack, was responsible for the Transfer, the Court agrees with Defendants that Officer Serrano can no longer assert a First Amendment retaliation claim against C.O. McCormack based on the Transfer. See Littlejohn, 795 F.3d at 314 (noting that Section 1983 plaintiff must show that individual defendant's "actions were the proximate cause of the plaintiff's constitutional deprivation"). As explained in detail above (see § II.A, supra), and as reflected in TAC ¶ 305, however, Officer Serrano alleges that C.O. McCormack subjected him to other retaliatory conduct based on his Floyd testimony, and, as Chief Judge Swain has already recognized, "a reasonable jury [could] conclude that C.O. McCormack was personally involved in adverse actions against Officer Serrano for which the 'but-for' cause was retaliation in response to Officer Serrano's testimony in Floyd." Raymond VII, 2022 WL 2532467, at *21 (emphasis added). Thus, although Officer Serrano can no longer press a First Amendment retaliation claim against C.O. McCormack based on the Transfer, he continues to have other grounds that support a plausible claim.

Accordingly, because Officer Serrano's First Amendment retaliation claim against C.O. McCormack only with respect to the Transfer would be futile, I respectfully recommend that Officer Serrano's First Amendment retaliation claim against C.O. McCormack in the TAC based on actions other than the Transfer be allowed to proceed.

### c. Prejudice

Defendants' suggestion that they will be subject to "considerable prejudice" if the Court grants the Motion warrants little remaining attention. (ECF No. 352 at 10–11). As repeatedly noted, the current posture of the case is one of Defendants' own making; had they searched the Personnel Orders Section after receiving the Complaint, as they should have, Officer Serrano

would have been informed long ago that Commissioner Kelly directed the Transfer.  In addition, "[t]he City has been participating in this action since the beginning," so it will not be unduly prejudiced by allowing the TAC now.  Dunham II, 2019 WL 5540965, at *7 (granting leave to assert Monell claim); Mask v. Johnson, No. 96 Civ. 6167 (DC), 1997 WL 662337, at *2 (S.D.N.Y. Oct. 22, 1997) (finding no prejudice where "the City ha[d] been involved in th[e] case essentially since its inception").  While it is true that Plaintiffs now seek additional documentary and deposition discovery (ECF No. 346-2), as set forth below, the Court will place strict parameters around any further discovery to enable the parties complete it expeditiously and return to the path to trial.  see Margel v. E.G.L. Gem Lab Ltd., No. 04 Civ. 1514 (PAC) (HBP), 2010 WL 445192, at *12 (S.D.N.Y. Feb. 8, 2010) (noting court's ability to mitigate through scheduling "[t]he prejudice that would flow from any additional required discovery").  (See ECF No. 361 at 23 (describing "very limited amount" of discovery following amendment)).  In addition, "[a]ll pretrial deadlines have been adjourned sine die, and no trial date has been set[], so the City's [and Commissioner Kelly's] ability to complete [their] defense is not at risk."  Dunham II, 2019 WL 5540965, at *7.  Accordingly the Court finds that this factor weighs in favor of permitting Officer Serrano's amendments to his claims.

*     *     *

Considering the four factors relevant to the Motion, the Court finds that Defendants have failed to show a good reason to deny the Motion.  Under the circumstances, Plaintiffs did not unduly delay seeking leave to amend, or do so in bad faith.  The amendments will not be futile, and any prejudice to Defendants is not preclusive.

## 2.  **NYSHRL and NYCHRL Claims**

In the TAC, Officer Serrano seeks to assert not only Section 1983 First Amendment

retaliation and <u>Monell</u> claims, but also claims under the NYSHRL and NYCHRL.  (ECF No. 346-1

¶¶ 307–12).  Defendants point to Chief Judge Swain's decision in <u>Raymond VII</u>, in which certain

of Plaintiffs' NYSHRL and NYCHRL were dismissed without prejudice, 2022 WL 2532467, at *27–

28, and note that Officer Serrano has since filed an action in Bronx County Supreme Court (the

"State Court Action"), based, in part, on the Transfer.  (See <u>Serrano v. City of New York</u>,

No. 810438/2022E (Sup. Ct. Bronx Cnty.) ECF No. 1 (the "State Court Complaint") ¶¶ 361–69).[9]

In the State Court Action, which includes other plaintiffs and defendants, Serrano asserts NYSHRL

and NYCHRL retaliation claims against C.O. McCormack and the City.  (State Court Complaint

¶¶ 597–604, 621–28, 640–48).  Defendants thus argue that the Court should dismiss the NYSHRL

and NYCHRL claims on abstention grounds.  (ECF No. 352 at 9 (citing <u>Colo. River Water</u>

<u>Conservation Dist. v. U.S.</u>, 424 U.S. 800 (1976) and <u>Abe v. N.Y. Univ.</u>, No. 14 Civ. 9323 (RJS), 2016

WL 1275661, at *7–11 (S.D.N.Y. Mar. 30, 2016)).  Plaintiffs have not responded to Defendants'

argument, other than to inform Defendants' counsel that Officer Serrano "is not withdrawing

his" NYSHRL and NYCHRL claims in the TAC.  (ECF No. 360).

In deciding whether to abstain under <u>Colorado River</u>, courts consider six factors:

(1) whether the controversy involves a res over which one of the courts has
assumed jurisdiction; (2) whether the federal forum is less inconvenient than the
other for the parties; (3) whether staying or dismissing the federal action will avoid
piecemeal litigation; (4) the order in which the actions were filed, and whether
proceedings have advanced more in one forum than in the other; (5) whether

---

[9] The Court properly takes judicial notice of filings in the State Court Action.  <u>See</u> <u>G-I Holdings, Inc. v. Baron</u>
<u>& Budd</u>, No. 01 Civ. 216 (RWS), 2003 WL 193502, at *7 (S.D.N.Y. Jan. 29, 2003) (taking judicial notice of
allegations in state court complaints).

federal law provides the rule of decision; and (6) whether the state procedures
are adequate to protect the plaintiff's federal rights.

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d

Cir. 2012) (quoting Woodford v. Cmty. Action Agency of Greene Cnty., Inc., 239 F.3d 517, 522 (2d

Cir. 2001)).  "As an additional factor, the Supreme Court has 'found considerable merit in the idea

that the vexatious or reactive nature of either the federal or the state litigation may influence

the decision whether to defer to a parallel state litigation under Colorado River.'"  Abe, 2016 WL

1275661, at *6 (quoting Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356, 363 (2d

Cir. 1985)).

   "Before engaging in the six-factor analysis, a court must make a threshold determination

that the federal and state court cases are 'parallel.'"  Dalzell Mgmt. Co. v. Bardonia Plaza, LLC,

923 F. Supp. 2d 590, 597 (S.D.N.Y. 2013) (citing Dittmer v. Cnty. of Suffolk, 146 F.3d 113, 118 (2d

Cir. 1998)).  Federal and state proceedings are "parallel" for abstention purposes "when the two

proceedings are essentially the same; that is, there is an identity of parties, and the issues and

relief sought are the same."  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp, 108 F.3d 17, 22

(2d Cir. 1997).  Here, Officer Serrano's fifth and sixth causes of action "are clearly parallel" to his

pending NYSHRL and NYCHRL claims in the State Court Action, involve C.O. McCormack, and

"center around the same series of events."  Abe, 2016 WL 1275661, at *6.  (See ECF No. 346-1

¶¶ 307–12).

   Turning, then, to the abstention factors, the Court finds that the first factor is

inapplicable because this is not an in rem action.  As to the second factor, "the federal forum is

not any more or less convenient than the state forum for the parties," since both are located in

New York City.  Abe, 2016 WL 1275661, at *7.

As to the third, "most important" factor, see Millennium Drilling Co. v. Prochaska, No. 14 Civ. 1985 (WHP), 2014 WL 6491531, at *4 (S.D.N.Y. Nov. 18, 2014), "the Court finds that there is a significant risk of inconsistent outcomes between" this action and the State Court Action if the Court does not abstain. Abe, 2016 WL 1275661, at *7. A judgment in Defendants' favor in the State Court Action on the NYCHRL claims, which have a "more solicitous standard[,]" could preclude Officer Serrano from recovering under Section 1983 in this action. Gonzalez v. City of New York, 377 F. Supp. 3d 273, 301–02 (S.D.N.Y. 2019); see Raymond VII, 2022 WL 2532467, at *26 (noting that "Plaintiffs' federal claims under section 1983 are subject to a more demanding causation standard than their state and local law counterparts"); Bermudez v. City of New York, 783 F. Supp. 2d 560, 577 (S.D.N.Y. 2011) (noting that NYCHRL claims, "[u]nlike retaliation claims under Section 1983 and NYSHRL . . . 'need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms or conditions of employment[]'"). The "potential for inconsistent and mutually contradictory determinations absent abstention . . . weighs heavily in favor of abstention." Abe, 2016 WL 1275661, at *7.

As to the fourth factor, this action has been pending since 2015, while Officer Serrano did not commence the State Court Action until July 2022, after Raymond VII. (State Court Complaint at 1). This action was poised for trial, until Defendants produced the Additional Documents, leading to the Motion. Accordingly, this factor weighs against abstention.

As to the fifth factor, New York State and City law applies the rule of decision on the NYSHRL and NYCHRL claims if they are litigated in this Court, and therefore, this factor weighs in favor of abstention. See Raymond VII, 2022 WL 2532467, at *26 (observing that "several" of Plaintiffs' state and local law claims "are subject to significantly different standards than their

federal counterparts").  Finally, because Officer Serrano is not asserting any federal claims in the State Court Action, the Court need not be concerned about whether the State Court would adequately protect any federal rights, but, in any event, the Court adheres to "the longstanding 'presumption that state courts are just as able as federal courts to adjudicate'" federal civil rights claims.  Abe, 2016 WL 1275661, at *9 (quoting Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 826 (1990)).

Thus, of the six abstention factors, three are irrelevant or neutral, two (the third and fifth) weigh in favor of abstention, and one (the fourth) weighs against.  Of the two in favor, the third is the most important, such that, on balance, the abstention factors weigh toward abstention with respect to the NYSHRL and NYCHRL claims.  While Chief Judge Swain elected to exercise supplemental jurisdiction over Officer Serrano's NYSHRL and NYCHRL claims to the extent that they "parallel[ed]" his surviving First Amendment retaliation claims, Raymond VII, 2022 WL 2532467, at *28, I respectfully submit that, given the pendency of the State Court Action, abstention is now appropriate.

### 3.  Additional Discovery

Plaintiffs ask that, if the Court grants leave to amend, it also allow additional document requests seeking:  (i) communications between C.O. McCormack, Commissioner Kelly, and Deputy Commissioner Raymond Spinella; (ii) communications between the 40th Precinct, the Commissioner's office, and the Personnel Office; (iii) and the "Department Advocate files" for six officers in the 40th Precinct who were found guilty of ticket fixing but were "punished less severely than" Officer Serrano, i.e., they were not transferred.  (ECF No. 346 at 3; see ECF No. 346-2 (the "14th RFPs"); 361 at 6–7, 23).

The Court agrees that, should the TAC be permitted as set forth above, the additional discovery Plaintiffs request is narrowly tailored to address the amendments, and will not be unduly burdensome for Defendants or excessively delay this case from proceeding to final pretrial preparations.  See  Olaf Sööt Design, LLC v. Daktronics, Inc., 299 F. Supp. 3d 395, 399–400 (S.D.N.Y. 2017) (granting leave to amend, although "later than preferable," where no trial date had been set, and permitting additional discovery pertaining to new claim); Russell v. Hilton Int'l of P.R., Inc., No. 93 Civ. 2552 (KMW), 1995 WL 234886, at *1 (S.D.N.Y. Apr. 20, 1995) (granting leave to amend and permitting "discovery limited to matters raised by the amendment"); see also Qanouni v. D&H Ladies Apparel, LLC, No. 18 Civ. 2763 (GBD) (DF), 2021 WL 9036182, at *10 (S.D.N.Y. Mar. 23, 2021) (granting leave to amend despite likelihood that amendment would necessitate "further discovery on narrow questions" concerning new defendant's role).  I therefore respectfully recommend that, if leave to amend is granted, Plaintiffs be permitted to propound the 14th RFPs, and Plaintiffs be permitted to take a two-hour deposition of Commissioner Kelly limited to the subject of the Transfer, and to reopen the deposition of C.O. McCormack for one hour limited to the subject of the Transfer.

## IV. **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Plaintiffs' Motion be GRANTED IN PART and DENIED IN PART as follows:

(1) Plaintiffs be permitted to file the TAC to assert First Amendment retaliation claims against Commissioner Kelly and the City, and a First Amendment retaliation claim against C.O. McCormack based on actions other than the Transfer;

(2) Officer Serrano's First Amendment retaliation claim against C.O. McCormack based on the Transfer be DISMISSED WITH PREJUDICE;

(3) Officer Serrano's NYSHRL and NYCHRL claims be DISMISSED WITHOUT PREJUDICE on abstention grounds; and

(4) Plaintiffs be permitted to (i) serve the 14th RFPs; (ii) take a two-hour deposition of Commissioner Kelly limited to the subject of the Transfer; and (iii) re-open the deposition of C.O. McCormack for one hour limited to the subject of the Transfer.

Dated:       New York, New York
             December 2, 2022

_____
SARAH L. CAVE
**United States Magistrate Judge**

\*                    \*                    \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Chief Judge Swain.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).